The Honorable Benjamin H. Settle

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

| | |
|---|---|
| THE GEO GROUP, INC., | NO.  3:23-cv-05626-BHS |
| Plaintiff, | DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION |
| v. | |
| JAY R. INSLEE, in his official capacity as Governor of the State of Washington; ROBERT W. FERGUSON, in his official capacity as Attorney General of the State of Washington, | NOTE ON MOTION CALENDAR: AUGUST 11, 2023 [1] |
| Defendants. | |

---

[1] The State has concurrently filed a Motion to Dismiss, Dkt. #17, which notes on September 1, 2023, and respectfully requests the Court consider GEO's PI motion with the State's motion.

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO.  3:23-CV-05626-BHS

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1

**TABLE OF CONTENTS**

2   I.     INTRODUCTION.................................................................................................. 1

3   II.    BACKGROUND.................................................................................................. 2

4   III.   LEGAL STANDARD .......................................................................................... 8

5   IV.    ARGUMENT ...................................................................................................... 8

6          A.    For the Reasons Dismissal Is Appropriate, GEO Is Unlikely
                to Succeed on the Merits of Its Claims ................................................... 8

7          B.    GEO Cannot Show Irreparable Harm Absent an Injunction ................... 10

8          C.    The Balance of Equities and Public Interest in Ensuring Humane
                Detention Weigh Heavily Against GEO's Requested Injunction............... 12

9                1.   Private prisons harm detainee health, safety, and security.............. 12

10                     a.   Private detention increases the risk of physical
                           danger to detainees.................................................. 13

11                     b.   Private detention leads to medical neglect................................. 14

12                     c.   Unsafe and insufficient food are major problems
                           in private detention .................................................. 16

13
14
15                     d.   Private prisons do not provide sufficient hygiene
                           supplies or clean clothes ............................................ 19

16                     e.   Private detention leads to improper use of solitary confinement.............. 20

17                2.   Equity and the public interest favor improved transparency,
                       accountability, and oversight of detention facilities........................ 22

18
19                3.   GEO's asserted interests cannot overcome the State's interests
                       in health, welfare, and transparency............................................ 24

20   V.     CONCLUSION .................................................................................................. 24

21

22

23

24

25

26

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO.  3:23-CV-05626-BHS

i

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*,
559 F.3d 1046 (9th Cir. 2009) ................................................................. 10

*Caribbean Marine Servs. Co., Inc. v. Baldrige*,
844 F.2d 668 (9th Cir. 1988) .................................................................. 11

*City & County of San Francisco v. U.S. Citizenship & Immigr. Servs.*,
981 F.3d 742 (9th Cir. 2020) .................................................................. 13

*Conn. State Police Union v. Rovella*,
494 F. Supp. 3d 210 (D. Conn. 2020) ..................................................... 22

*Drakes Bay Oyster Co. v. Jewell*,
747 F.3d 1073 (9th Cir. 2014) ................................................................ 12

*Energy Rsrvs. Grp., Inc. v. Kansas Power & Light Co.*,
459 U.S. 400 (1983) ................................................................................. 9

*Garcia v. Google, Inc.*,
786 F.3d 733 (9th Cir. 2015) (en banc) .................................................... 9

*Lopez v. Heckler*,
713 F.2d 1432 (9th Cir. 1983) ................................................................ 24

*Maryland v. King*,
567 U.S. 1301 (2012) ............................................................................... 8

*Nat'l Head Start Ass'n v. Dep't of Health & Hum. Servs.*,
297 F. Supp. 2d 242 (D.D.C. 2004) ........................................................ 22

*Poder in Action v. City of Phoenix*,
481 F. Supp. 3d 962 (D. Ariz. 2020) ...................................................... 10

*Pom Wonderful LLC v. Hubbard*,
775 F.3d 1118 (9th Cir. 2014) ................................................................ 10

*Roman v. Wolf*,
977 F.3d 935 (9th Cir. 2020) ............................................................ 12, 13

*Sierra Club v. Trump*,
379 F. Supp. 3d 883 (N.D. Cal. 2019), *aff'd*,
963 F.3d 874 (9th Cir. 2020) .................................................................. 10

*Thomas v. Anchorage Equal Rts. Comm'n*,
220 F.3d 1134 (9th Cir. 2000) (en banc) .................................................. 9

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO.  3:23-CV-05626-BHS

ii

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

*Twitter, Inc. v. Paxton*,
   56 F.4th 1170 (9th Cir. 2022) ................................................................ 9

*United States v. California*,
   921 F.3d 865 (9th Cir. 2019) ........................................................... 9, 13

*United States v. Washington*,
   142 S. Ct. 1976 (2022) ........................................................................ 9

*Valentine v. Collier*,
   978 F.3d 154 (5th Cir. 2020) ............................................................. 22

*Washington v. GEO Grp. Inc.*,
   283 F. Supp. 3d 967 (W.D. Wash. 2017) ......................................... 19

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) .................................................................. 8, 10, 12

**Constitutional Provisions**

U.S. Const. art. I, § 10 ............................................................................. 9

U.S. Const. art. VI ................................................................................. 10

**Statutes**

Engrossed House Bill 1090, 67th Leg. Reg. Sess. (Wash. 2021)
   *enacted as* 2021 Wash. Sess. Laws, ch. 30 ....................................... 6

Engrossed Substitute H.B. 2576, 66th Leg., Reg. Sess. (Wash. 2020)
   *enacted as* 2020 Wash. Sess. Laws, ch. 284 ..................................... 5

Engrossed Substitute S.B. 6442, 66th Leg., Reg. Sess. (Wash. 2020)
   *enacted as* 2020 Wash. Sess. Laws, ch. 318 ..................................... 5

Second Substitute H.B. 1470, 68th Leg., Reg. Sess. (Wash. 2023)
   *enacted as* 2023 Wash. Sess. Laws, ch. 419 ............................... passim

RCW 70.395.010(5) ............................................................................... 22

RCW 72.68.110(1) ................................................................................... 5

730 Ill. Comp. Stat. 141/1-999 ................................................................ 6

Cal. Penal Code §§ 9500-9505 ................................................................ 6

Iowa Code § 904.119 ............................................................................... 6

N.Y. Correct. Law § 121 .......................................................................... 6

Nev. Rev. Stat. § 208.280 ........................................................................ 6

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO.  3:23-CV-05626-BHS

iii

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

## **Regulations**

Exec. Order No. 14,006
  on *Reforming Our Incarceration System to Eliminate the Use of
  Privately Operated Criminal Detention Facilities,*
  86 Fed. Reg. 7483 (Jan. 26, 2021)..................................................................... 5

WAC 246-337-060 ............................................................................................. 7

WAC 246-337-075 ............................................................................................. 7

WAC 246-337-111 ............................................................................................. 7

WAC 246-337-112 ............................................................................................. 7

WAC 246-337-128 ............................................................................................. 7

WAC 246-337-129 ............................................................................................. 7

WAC 246-337-135 ............................................................................................. 7

## **Other Authorities**

Allison Needles, *Hundreds of ICE detainees refusing to eat food provided
  at Tacoma detention center,* Tacoma News Tribune (Oct. 18, 2019),
  https://www.thenewstribune.com/news/local/article236418528.html............................ 4, 19

Angélica Cházaro & Dan Berger, *Guest: What's behind the hunger strike
  at Northwest Detention Center,* The Seattle Times (Mar. 19, 2014),
  https://www.seattletimes.com/opinion/guest-whatrsquos-behind-the-hunger-
  strike-at-northwest-detention-center/..................................................................... 20

Bob Ortega, *Migrants describe hunger and solitary confinement at for-profit
  detention center,* CNN Investigates (July 11, 2018),
  https://www.cnn.com/2018/07/11/us/northwest-immigrant-detention-center-
  geo-group-invs/index.html.................................................................................. 23

Bobbi-Jeanne Misick, *New complaint alleges sex assault, medical neglect, abuse of
  detainee at Louisiana ICE facility,* New Orleans Public Radio (Apr. 10, 2023),
  https://www.wwno.org/immigration/2023-04-10/new-complaint-alleges-sex-
  assault-medical-neglect-abuse-of-detainee-at-louisiana-ice-facility ...................................... 14

Curtis R. Blakely & Vic W. Bumphus, *Private and Public Sector Prisons—
  A Comparison of Select Characteristics,* 68 Fed. Probation J. (June 2004),
  https://www.uscourts.gov/sites/default/files/fed_probation_june_2004.pdf......................... 13

Emily Wu Pearson, *Doctor at South Georgia immigration detention center
  abused women, investigation finds,* WABE (Nov. 16, 2022),
  https://www.wabe.org/doctor-at-south-georgia-immigration-detention-
  center-abused-women-investigation-finds/............................................................. 14

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO.  3:23-CV-05626-BHS

iv

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

Gemini Gnull, *Detainees at Northwest Detention Center launch a hunger strike*,
Fight Back! News (June 22, 2023), http://www.fightbacknews.org/2023/6/22/
detainees-northwest-detention-center-launch-hunger-strike ............................................. 4, 19

Hannah Rappleye et al., *Thousands of Immigrants Suffer in Solitary Confinement
in U.S. Detention Centers*, NBC News (May 20, 2019),
https://www.nbcnews.com/politics/immigration/thousands-immigrants-
suffer-solitary-confinem ent-u-s-detention-centers-n1007881 .................................................. 21

James Austin & Garry Coventry, U.S. DOJ, Off. of Just. Programs, Bureau of
Just. Assistance, *Emerging Issues on Privatized Prisons* (Feb. 2001),
https://www.ojp.gov/pdffiles1/bja/181249.pdf........................................................... 12, 13

Jeffrey L. Metzner & Jamie Fellner, *Solitary Confinement and Mental Illness
in U.S. Prisons: A Challenge for Medical Ethics*,
38 J. of the Am. Acad. of Psychiatry & the Law 104 (Mar. 2010),
http://jaapl.org/content/jaapl/38/1/104.full.pdf................................................................... 20

John Wiesman, Sec. of Health, Wash. State. Dep't of Health, *Report to the
Legislature: Evaluating State and Local Authority and Practices Regarding
Private Detention Facilities* (Nov. 2020) ....................................................................... 5, 6, 12

Ken Klippenstein, *ICE Detainee Deaths Were Preventable: Document*,
TYT (June 3, 2019), https://tyt.com/stories/4vZLCHuQrYE4uKagy0oyMA/
688s1LbTKvQKNCv2E9bu7h .................................................................................................. 15

KUOW Staff, *Hunger strike suspended at Tacoma ICE facility, but objections
remain*, NPR (Feb. 6, 2023), https://www.kuow.org/stories/
hunger-strike-ends-at-ice ..................................................................................................... 4, 19

Letter from Rebecca Merton, National Independent Monitor for CIVIC &
Christina Fialho, Co-Founder/Executive Director for CIVIC, to
Thomas D. Homan, et al., Director for Office of Detention Policy and
Planning, ICE (Apr. 11, 2017), http://www.endisolation.org/wp-
content/uploads/2017/05/CIVIC_SexualAssault_Complaint.pdf........................................ 14

Lomi Kriel, *ICE guards "systematically" sexually assault detainees in an
El Paso detention center, lawyers say*, The Texas Tribune (Aug. 14, 2020,
*updated* Jan. 12, 2021), https://www.texastribune.org/2020/08/14/
texas-immigrant-detention-ice-el-paso-sexual-abuse/ .......................................................... 14

Melissa Hellmann, *Incarcerated and Infirmed: How Northwest Detention
Center Is Failing Sick Inmates*, Seattle Weekly (Oct. 10, 2018),
https://www.seattleweekly.com/news/incarcerated-and-infirmed-how-
northwest-detention-center-is-failing-sick-inmates/............................................................. 16

Mem. from Cameron Quinn & Marc Pachon, DHS Office for Civil Rights
and Civil Liberties, to Ronald Vitiello, Acting Dir. of ICE (Mar. 20, 2019),
https://www.aila.org/infonet/dhs-crcl-memo-ice-inadequate-medical-mental-care.............. 15

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO.  3:23-CV-05626-BHS

v

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

Mem. from Sally Q. Yates, Deputy Att'y Gen., U.S. Dep't of Just., to the
Acting Dir. of the Fed. Bureau of Prisons, *Reducing our Use of Private Prisons*
(Aug. 18 2016), https://www.justice.gov/archives/opa/file/886311/download ................ 4, 12

Michelle Conlin & Kristina Cooke, *$11 toothpaste: Immigrants pay big for*
*basics at private ICE lock-ups*, Reuters (Jan. 18, 2019),
https://www.reuters.com/article/us-usa-immigration-detention-
idUSKCN1PC0DJ ...................................................................................... 18, 19, 20

Mike Carter, *Hunger strike at Tacoma immigration detention center grows*
*to 750, activist says*, The Seattle Times (Apr. 13, 2017),
https://www.seattletimes.com/seattle-news/hunger-strike-at-tacoma-
immigration-detention-center-growing-activist-says/ ...................................... 4, 19

Natalie Delgadillo, *Maggots With a Side of Dirt? What Privatization Does*
*to Prison Food*, Governing.com (Jan. 26, 2018), https://www.governing.com/
archive/gov-private-food-service-prisons-aramark-trinity-ohio-michigan.html ................. 18

Nina Shapiro, *The conflict that has plagued the Northwest Detention Center*
*for almost two months*, Seattle Weekly (May 12, 2014),
https://www.seattleweekly.com/news/the-conflict-that-has-plagued-
the-northwest-detention-center-for-almost-two/............................................... 4, 19

Seattle Univ. School of Law Int'l Human Rights Clinic & OneAmerica,
*Voices from Detention: A Report on Human Rights Violations at the*
*Northwest Detention Center in Tacoma, Washington* (July 2008),
https://www.yumpu.com/en/document/read/48836345/voices-from-
detention-a-report-on-human-rights-oneamerica.......................................... 17, 18

Stuart Grassian, *Psyhciatric Effects of Solitary Confinement*,
22 Wash. U. J. of Law & Policy 325 (Jan. 2006),
https://openscholarship.wustl.edu/cgi/viewcontent.cgi?article=
1362&context=law_journal_law_policy ................................................................ 20

Timothy Williams, *Inside a Private Prison: Blood, Suicide, and Poorly*
*Paid Guards*, The N.Y. Times (Apr. 3, 2018), https://www.nytimes.com/
2018/04/03/us/mississippi-private-prison-abuse.html .......................................... 13

U.S. DHS, Off. of the Inspector Gen., *Capping Report: Observations of*
*Unannounced Inspections of ICE Facilities in 2019* (July 1, 2020),
https://www.oig.dhs.gov/sites/default/files/assets/2020-07/OIG-20-45-Jul20.pdf .............. 23

U.S. DHS, Off. of the Inspector Gen., *Concerns about ICE Detainee*
*Treatment and Care at Four Detention Facilities* (June 3, 2019),
https://www.oig.dhs.gov/sites/default/files/assets/2019-06/
OIG-19-47-Jun19.pdf ...................................................................... 2, 16, 17, 21

U.S. DHS, Off. of the Inspector Gen., *ICE Does Not Fully Use Contracting*
*Tools to Hold Detention Facility Contractors Accountable for Failing*
*to Meet Performance Standards* (Jan. 29, 2019), https://www.oig.dhs.gov/
sites/default/files/assets/2019-02/OIG-19-18-Jan19.pdf ......................................... 2

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 3:23-CV-05626-BHS

vi

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

U.S. DHS, Off. of the Inspector Gen., *ICE Needs to Improve Its Oversight of Segregation Use in Detention Facilities* (Oct. 13, 2021), https://www.oig.dhs.gov/sites/default/files/assets/2021-10/OIG-22-01-Oct21.pdf .............. 21

U.S. DHS, Off. of the Inspector Gen., *ICE's Inspections and Monitoring of Detention Facilities Do Not Lead to Sustained Compliance or Systemic Improvements* (July 26, 2018), https://www.oig.dhs.gov/sites/default/files/assets/2018-06/OIG-18-67-Jun18.pdf ...................................................................... 2, 23

U.S. DHS, Off. of the Inspector Gen., *Management Alert - Immediate Removal of All Detainees from the Torrance County Detention Facility* (Mar. 16, 2022), https://www.oig.dhs.gov/sites/default/files/assets/2022-05/OIG-22-31-Mar22-mgmtalert.pdf.................................................................... 3

U.S. DHS, Off. of the Inspector Gen., *Medical Processes and Communication Protocols Need Improvement at Irwin County Detention Center* (Jan. 3, 2022), https://www.oig.dhs.gov/sites/default/files/assets/2022-01/OIG-22-14-Jan22.pdf................ 3

U.S. DHS, Off. of the Inspector Gen., *Results of an Unannounced Inspection of Northwest ICE Processing Center in Tacoma, Washington* (May 22, 2023), https://www.oig.dhs.gov/sites/default/files/assets/2023-05/OIG-23-26-May23.pdf......... 3, 17

U.S. DHS, Off. of the Inspector Gen., *Violations of ICE Detention Standards at Adams County Correctional Center* (July 14, 2021), https://www.oig.dhs.gov/sites/default/files/assets/2021-07/OIG-21-46-Jul21.pdf ................ 3

U.S. DHS, Off. of the Inspector Gen., *Violations of ICE Detention Standards at Folkston ICE Processing Center and Folkston Annex* (June 30, 2022), https://www.oig.dhs.gov/sites/default/files/assets/2022-07/OIG-22-47-July22.pdf ............... 3

U.S. DHS, Off. of the Inspector Gen., *Violations of ICE Detention Standards at Richwood Correctional Center in Monroe, Louisiana* (Feb. 28, 2023), https://www.oig.dhs.gov/sites/default/files/assets/2023-03/OIG-23-18-Mar23.pdf .............. 3

U.S. DHS, Off. of the Inspector Gen., *Violations of ICE Detention Standards at South Texas ICE Processing Center* (Apr, 22, 2022), https://www.oig.dhs.gov/sites/default/files/assets/2022-04/OIG-22-40-Apr22.pdf................ 3

U.S. DHS, U.S. ICE, Off. of Pro. Resp., Inspections & Det. Oversight Div., *Office of Detention Oversight Compliance Inspection: Tacoma ICE Processing Center* (June 22-25, 2020), https://www.ice.gov/doclib/foia/odo-compliance-inspections/tacomaIceProcessingCntrTacomaWA_Jun22-25_2020.pdf............................... 22

U.S. DOJ, Off. of the Inspector Gen., *Review of the Federal Bureau of Prisons' Monitoring of Contract Prisons* (Aug. 2016), https://www.oversight.gov/sites/default/files/oig-reports/e1606.pdf .................................................. 4, 13, 21

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO.  3:23-CV-05626-BHS

vii

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

U.S. H.R., Comm. on Oversight and Reform and Subcomm. on Civil Rights
and Civil Liberties, *The Trump Administration's Mistreatment of Detained
Immigrants: Deaths and Deficient Medical Care by For-Profit Detentio
Contractors* (Sept. 2020), https://oversightdemocrats.house.gov/sites/
democrats.oversight.house.gov/files/2020-09-24.%20Staff%20Report
%20on%20ICE%20Contractors.pdf .............................................................................. 14, 15

Univ. of Wash. Ctr. for Human Rights, *Calls to nowhere: Reports of
sexual abuse and assault go unanswered at the NWDC* (May 16, 2022),
https://jsis.washington.edu/humanrights/2022/05/16/nwdc-assault-abuse-reporting/ ....... 4, 14

Univ. of Wash. Ctr. for Human Rights, *Human Rights Conditions in the
Northwest Detention Center* (Mar.-Dec. 2020), https://jsis.washington.edu/
humanrights/projects/human-rights-at-home/conditions-at-the-northwest-
detention-center/ ............................................................................................................ passim

Zeba Warsi, *'Immensely Invisible:' Women Fighting ICE's Inaction on
Sexual Abuses*, Futuro Investigates (July 21, 2023),
https://futuroinvestigates.org/investigative-stories/immensely-invisible/
immensely-invisible-women-fighting-ices-inaction-on-sexual-abuses/#
Private%20Prison%20Companies:%20An%20Added%20Setback%20for
%20Accountability ............................................................................................................ 14

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO.  3:23-CV-05626-BHS

viii

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

# I.    INTRODUCTION

GEO seeks the extraordinary equitable remedy of a preliminary injunction blocking application of Washington Second Substitute House Bill 1470 (HB 1470), but GEO's legal claims are meritless and the equities overwhelmingly favor the State. The Court should deny GEO's request.

On the law, GEO claims that HB 1470 directly regulates and discriminates against the federal government. Nonsense. HB 1470 applies only to private detention facilities. Precedent makes clear that a general health and safety law like HB 1470 is not preempted merely because it applies to a company that contracts with the federal government. And HB 1470 does not discriminate. Private, county, and municipal residential treatment facilities in Washington have long been subject to a wide range of minimum standards: HB 1470 simply applies the same sort of standards to private detention facilities. Far from enacting a discriminatory system, it corrected previously inequitable treatment. Precedent also makes clear that HB 1470 creates no conflict with federal law and impairs no contract of GEO's.

GEO's motion also fails on the equities. GEO has shown no irreparable harm because the primary standards it complains about do not even apply to it yet because of its preexisting contract with Immigration & Customs Enforcement (ICE); rather, they apply only to potential future contracts that have not been written. On the other side of the scale, evidence gathered over more than a decade at GEO's Northwest ICE Processing Center (NWIPC) shows that GEO ignores complaints of abuse by detainees, neglects detainees' medical needs, provides unsafe and insufficient food, disregards detainees' need for personal hygiene, and misuses solitary confinement. Conditions at the NWIPC have been so bad, for so long, that the facility has experienced multiple hunger strikes, sometimes including more than a thousand participants. In light of this history, GEO cannot come before the Court and demand permission, in equity, to continue operating its facility without *any* State oversight. GEO's motion should be denied.

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO.  3:23-CV-05626-BHS

1

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

## II.     BACKGROUND

GEO has a long and well documented history of mistreating civil immigration detainees at the NWIPC and across the country. This history is part of a broader pattern of private detention facilities mistreating detainees, a pattern that led the Washington Legislature to enact HB 1470.

Inspections of GEO detention facilities have repeatedly found a multitude of problems. For example, in 2018, the Department of Homeland Security Office of the Inspector General (OIG) conducted unannounced inspections at four private detention locations—three of them operated by GEO.[2] The inspections revealed "significant health and safety risks, including nooses in detainee cells, improper and overly restrictive segregation, and inadequate detainee medical care."[3] OIG also found "significant food safety issues," "detainee bathrooms that were in poor condition, including mold and peeling paint on walls, floors, and showers," and an "absence of recreation" that risked "detainee mental health and welfare[.]"[4] Some conditions were serious enough to constitute "immediate risks or egregious violations of the detention standards[.]"[5] The OIG found these violations flourish because ICE inspections of contract facilities are "too infrequent," "not consistently thorough," and lack "follow up on identified deficiencies," resulting in "deficiencies [that] remain unaddressed for years."[6] A more recent inspection of a GEO facility in Georgia "identified violations that compromised the health, safety, and rights of detainees," including "facilities [that] were unsanitary and dilapidated, with torn mattresses, water leaks and standing water, mold growth and water damage, rundown showers, mold and debris in the ventilation system, insect infestations, lack of access to hot

---

[2] U.S. DHS, Off. of the Inspector Gen., *Concerns about ICE Detainee Treatment and Care at Four Detention Facilities* at 2 (June 3, 2019), https://www.oig.dhs.gov/sites/default/files/assets/2019-06/OIG-19-47-Jun19.pdf.
[3] *Id.* at 3.
[4] *Id.* at 3-4, 7-8.
[5] *Id.* at 3 & n.3.
[6] U.S. DHS, Off. of the Inspector Gen., *ICE's Inspections and Monitoring of Detention Facilities Do Not Lead to Sustained Compliance or Systemic Improvements* at 4, (July 26, 2018), https://www.oig.dhs.gov/sites/default/files/assets/2018-06/OIG-18-67-Jun18.pdf; *accord* U.S. DHS, Off. of the Inspector Gen., *ICE Does Not Fully Use Contracting Tools to Hold Detention Facility Contractors Accountable for Failing to Meet Performance Standards* (Jan. 29, 2019), https://www.oig.dhs.gov/sites/default/files/assets/2019-02/OIG-19-18-Jan19.pdf.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION NO.  3:23-CV-05626-BHS

2

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

showers, inoperable toilets, an inoperable thermometer display on a kitchen freezer, and an absence of hot meals." [7]

Multiple reports have long found the same problems specifically at the NWIPC. For example, the Tacoma-Pierce County Health Department has received "multiple complaints about rotten food and maggots in the food at [the NWIPC]."[8] In its most recent inspection of the NWIPC, DHS OIG found long-expired food on shelves and boxes of meat left open and exposed to the air.[9] The report also revealed issues with facility medical care, including failures to follow guidelines for screening and preventative care.[10] A former GEO kitchen supervisor testified at a trial that the food served at NWIPC was "substandard quality food in cans[ ] . . . [s]ometimes . . . mixed with spiders or grasshoppers."[11] Outside experts have repeatedly documented inadequate medical care, insufficient responses to sexual assault, inadequate hygiene facilities, and

---

[7] U.S. DHS, Off. of the Inspector Gen., *Violations of ICE Detention Standards at Folkston ICE Processing Center and Folkston Annex* at 4 (June 30, 2022), https://www.oig.dhs.gov/sites/default/files/assets/2022-07/OIG-22-47-July22.pdf; *see also, e.g.*, U.S. DHS, Off. of the Inspector Gen., *Violations of ICE Detention Standards at South Texas ICE Processing Center* (Apr, 22, 2022), https://www.oig.dhs.gov/sites/default/files/assets/2022-04/OIG-22-40-Apr22.pdf (report of GEO facility "identif[ying] violations of ICE detention standards that compromised the health, safety, and rights of detainees" including detainee mistreatment by staff, denying rights and privileges to detainees in segregation, and failing to respond to inmate grievances); U.S. DHS, Off. of the Inspector Gen., *Management Alert - Immediate Removal of All Detainees from the Torrance County Detention Facility* (Mar. 16, 2022), https://www.oig.dhs.gov/sites/default/files/assets/2022-05/OIG-22-31-Mar22-mgmtalert.pdf (recommending "immediate relocation of all detainees" from private facility owned by CoreCivic due to "critical staffing shortages" and "unsanitary conditions in detainee housing units"); U.S. DHS, Off. of the Inspector Gen., *Violations of ICE Detention Standards at Richwood Correctional Center in Monroe, Louisiana* (Feb. 28, 2023), https://www.oig.dhs.gov/sites/default/files/assets/2023-03/OIG-23-18-Mar23.pdf; U.S. DHS, Off. of the Inspector Gen., *Medical Processes and Communication Protocols Need Improvement at Irwin County Detention Center* (Jan. 3, 2022), https://www.oig.dhs.gov/sites/default/files/assets/2022-01/OIG-22-14-Jan22.pdf; U.S. DHS, Off. of the Inspector Gen., *Violations of ICE Detention Standards at Adams County Correctional Center* (July 14, 2021), https://www.oig.dhs.gov/sites/default/files/assets/2021-07/OIG-21-46-Jul21.pdf.

[8] Declaration of Marsha Chien, Ex. 1, Univ. of Wash. Ctr. for Human Rights, *Human Rights Conditions in the Northwest Detention Center* at 13 (Mar.-Dec. 2020), https://jsis.washington.edu/humanrights/projects/human-rights-at-home/conditions-at-the-northwest-detention-center/.

[9] U.S. DHS, Off. of the Inspector Gen., *Results of an Unannounced Inspection of Northwest ICE Processing Center in Tacoma, Washington* at 9-12 (May 22, 2023), https://www.oig.dhs.gov/sites/default/files/assets/2023-05/OIG-23-26-May23.pdf.

[10] *Id.* at 12-13

[11] Chien Decl. Ex. 2, Testimony of John Patrick Griffin at 154:2-24 (Oct. 14, 2021).

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION NO.  3:23-CV-05626-BHS

3

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

excessive use of solitary confinement.[12] These issues have led to repeated waves of hunger strikes by detainees at the NWIDC over the last decade.[13]

GEO's mistreatment of detainees is part of a broader problem of private detention facilities failing to properly care for those in their charge, a problem that has prompted both States and the federal government to take action. Most notably, in 2016 the U.S. Department of Justice found private prisons "simply do not provide the same level of correctional services, programs, and resources" as government-operated prisons, and "do not maintain the same level of safety and security."[14] DOJ thus recommended that its Bureau of Prisons cease renewing contracts with private prisons.[15] This conclusion followed a report from the DOJ OIG that found "in most key areas, contract prisons incurred more safety and security incidents per capita than comparable [Bureau of Prisons] institutions[.]"[16] Consistent with these findings, President Biden recently directed that federal prisoners no longer be held in privately operated criminal detention facilities because "profit-based incentives" cause them to "consistently underperform

---

[12] *Human Rights Conditions in the Northwest Detention Center*, *supra* note 8, at 21-27, 35; Chien Decl Ex 3 (¶ 4), Univ. of Wash. Ctr. for Human Rights, *Calls to nowhere: Reports of sexual abuse and assault go unanswered at the NWDC* (May 16, 2022), https://jsis.washington.edu/humanrights/2022/05/16/nwdc-assault-abuse-reporting/.

[13] Nina Shapiro, *The conflict that has plagued the Northwest Detention Center for almost two months*, Seattle Weekly (May 12, 2014), https://www.seattleweekly.com/news/the-conflict-that-has-plagued-the-northwest-detention-center-for-almost-two/; Mike Carter, *Hunger strike at Tacoma immigration detention center grows to 750, activist says*, The Seattle Times (Apr. 13, 2017), https://www.seattletimes.com/seattle-news/hunger-strike-at-tacoma-immigration-detention-center-growing-activist-says/; Allison Needles, *Hundreds of ICE detainees refusing to eat food provided at Tacoma detention center*, Tacoma News Tribune (Oct. 18, 2019), https://www.thenewstribune.com/news/local/article236418528.html; KUOW Staff, *Hunger strike suspended at Tacoma ICE facility, but objections remain*, NPR (Feb. 6, 2023), https://www.kuow.org/stories/hunger-strike-ends-at-ice; Gemini Gnull, *Detainees at Northwest Detention Center launch a hunger strike*, Fight Back! News (June 22, 2023), http://www.fightbacknews.org/2023/6/22/detainees-northwest-detention-center-launch-hunger-strike.

[14] Mem. from Sally Q. Yates, Deputy Att'y Gen., U.S. Dep't of Just., to the Acting Dir. of the Fed. Bureau of Prisons, *Reducing our Use of Private Prisons* (Aug. 18 2016), https://www.justice.gov/archives/opa/file/886311/download.

[15] *Id.*

[16] U.S. DOJ, Off. of the Inspector Gen., *Review of the Federal Bureau of Prisons' Monitoring of Contract Prisons* at i (Aug. 2016), https://www.oversight.gov/sites/default/files/oig-reports/e1606.pdf.

---

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO.  3:23-CV-05626-BHS

4

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

[government-operated] facilities with respect to correctional services, programs, and resources."[17]

The Washington Legislature has responded to the crisis of private detention facilities with legislation to ensure humane conditions for persons detained in those facilities. In 2020, the Washington Legislature passed Engrossed Substitute Senate Bill 6442, which banned the Washington State Department of Corrections (DOC) from contracting with private prisons for the transfer or placement of state inmates except in emergency situations. RCW 72.68.110(1); .010. The Legislature enacted ESSB 6442 after finding that "profit motives lead private prisons to cut operational costs, including the provision of food, health care, and rehabilitative services." 2020 Wash. Sess. Laws, ch. 318, § 1(2).

While these restrictions applied only to DOC, the Legislature's concerns extend to *all* individuals confined in private detention. And so, during the same session, the Legislature passed a second bill, directing the Department of Health (DOH) to evaluate and report on state and local authority and practices around private detention facilities. Engrossed Substitute House Bill 2576, 66th Leg., Reg. Sess. (Wash. 2020) *enacted as* 2020 Wash. Sess. Laws, ch. 284, § 2. They passed this bill after finding that "all people confined in prisons and detention facilities in Washington deserve basic health care, nutrition, and safety, regardless of whether those people are confined in publicly or privately operated facilities." *Id.*, § 1. "While public facilities are directly accountable to public institutions," the Legislature concluded, "private facilities lack this oversight structure." *Id.*

In November 2020, DOH completed its survey of private detention providers in Washington.[18] Its report identified twelve facilities operated by six private entities.[19] One of

---

[17] Exec. Order No. 14,006 on *Reforming Our Incarceration System to Eliminate the Use of Privately Operated Criminal Detention Facilities*, 86 Fed. Reg. 7483, 7483 (Jan. 26, 2021).

[18] Chien Decl. Ex. 4, John Wiesman, Sec. of Health, Wash. State. Dep't of Health, *Report to the Legislature: Evaluating State and Local Authority and Practices Regarding Private Detention Facilities* (Nov. 2020).

[19] *Id.* at 1.

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO.  3:23-CV-05626-BHS

5

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

those facilities contracts with a consortium of local counties; the rest hold contracts with ICE or the U.S. Department of Health and Human Services.[20] The report cited complaints about "improper detainee living conditions and lacking access to appropriate medical care," obstacles to "access[ing] the detainee[s] or their health records," and a lack of "transparency and accountability."[21] These complaints were "almost exclusively associated with the Northwest ICE Processing Center," as opposed to any of the other facilities (whether locally or federally contracted) that primarily detain youth.[22]

The following year, the Legislature returned to the problem of private detention, passing Engrossed House Bill 1090, 67th Leg. Reg. Sess. (Wash. 2021) *enacted as* 2021 Wash. Sess. Laws, ch. 30, which prohibited the use of private detention facilities in Washington. In passing EHB 1090, the Legislature found that "people confined in for-profit prisons and detention facilities have experienced abuses and have been confined in dangerous and unsanitary conditions." 2021 Wash. Sess. Laws, ch. 30, § 1(3). The Legislature further found that "[s]afety risks and abuses in private prisons and detention facilities at the local, state, and federal level have been consistently documented." *Id.* The Legislature cited evidence that the profit motive results in a lack of resources and staff training, and that the private nature of such facilities frustrates the public's need for accountability and transparency. *Id.*, §§ 1(2)-(5). Washington is among an emerging consensus of states who have determined that for-profit incarceration is inconsistent with the states' interest in the health, safety, and welfare of detained people.[23] Following passage of EHB 1090, GEO sued to permanently enjoin its enforcement. Following a Ninth Circuit decision invalidating a similar California statute, the State of Washington agreed not to enforce EHB 1090 as to GEO, but the lawsuit remains pending before this Court. *See* Defs.' Notice and Stipulation of Enforcement Position, *GEO Group v. Inslee*, No. 3:21-cv-

---

[20] *Id.*
[21] *Id.* at 18.
[22] *Id.* at 20.
[23] *See, e.g.*, Cal. Penal Code §§ 9500-9505; 730 Ill. Comp. Stat. 141/1-999; Iowa Code § 904.119; Nev. Rev. Stat. § 208.280; N.Y. Correct. Law § 121.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION NO.  3:23-CV-05626-BHS

6

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

05313-BHS (W.D. Wash. June 22, 2023), ECF No. 65 (citing *GEO Group, Inc. v. Newsom*, 50 F.4th 735, 753 (2022) (en banc)).

Most recently, the Legislature passed Second Substitute House Bill 1470 (HB 1470), 68th Leg., Reg. Sess. (Wash. 2023) *enacted as* 2023 Wash. Sess. Laws, ch. 419, the law challenged here. HB 1470 does four primary things. *First*, it directs DOH to adopt regulations "to ensure private detention facilities comply with measurable standards providing sanitary, hygienic, and safe conditions for detained persons." *Id.*, § 2. Section 2 sets out the standards to guide the new rules. These standards are drawn directly from Washington's regulations governing residential treatment facilities, and include requirements that facilities provide detainees "a safe, clean, and comfortable environment," that "[l]iving areas . . . must be cleaned and sanitized regularly," that laundry facilities must be "adequate to meet the needs of detained persons," that facilities "shall provide a nutritious and balanced diet" and "follow proper food handling and hygiene practices," and that "[s]afe indoor air quality must be maintained" including comfortable temperatures. *Id.*; *see* WAC 246-337-075, -111, -112, -128, -135, -060, -129 (setting regulations for residents).

*Second*, Section 3 directs DOH to conduct inspections of private detention facilities, both routinely and in response to complaints. *Id.*, § 3. It also requires the Department of Labor and Industries to conduct "inspections of workplace conditions at private detention facilities, including work undertaken by detained persons." *Id.* In effect, Section 3 extends inspections to private detention facilities that already take place in other facilities.[24]

*Third*, Section 4 establishes standards for new contracts that go into effect after January 1, 2023. *Id.*, § 4. Among other things, Section 4 will require private detention facilities to provide commissary items "at reasonable prices," to provide telecommunications services, radios, and television access free of charge, and to make in-person visitation available daily.

---

[24] *See, e.g.*, Chien Decl. Ex. 5 (DOH investigation of a residential treatment facility for numerous WAC 246-337 violations); Chien Decl. Ex. 6 (Perrin Decl. ¶ 5 (L&I program manager testifying about citations made to DOC for inmate worker's exposure to asbestos)).

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO.  3:23-CV-05626-BHS

7

Section 4 also prohibits the use of solitary confinement, and sets requirements for medical care, mental health evaluations, and responding to complaints of sexual violence and harassment. Because GEO's contract for the NWIPC went into effect in 2020 and runs until September 2025, these standards do not apply to GEO.[25] And they may never apply—they only will if DHS chooses to enter into a new contract with GEO once the current contract terminates.

*Fourth*, HB 1470 creates monetary penalties for a violation of its standards, and provides for enforcement by the State and/or aggrieved detainees. HB 1470, §§ 2-6.

GEO seeks to enjoin HB 1470 in its entirety.

### III.   LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). GEO must make a "clear showing" that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *Id.* at 20. GEO's burden here is particularly high, because "any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (cleaned up). Because GEO's claims are legally deficient and require dismissal and because GEO cannot satisfy any of the other *Winter* factors, its motion should be denied.

### IV.   ARGUMENT

**A.   For the Reasons Dismissal Is Appropriate, GEO Is Unlikely to Succeed on the Merits of Its Claims**

GEO is unlikely to succeed on any of its constitutional attacks against HB 1470. As the State demonstrated in its concurrently-filed motion to dismiss, GEO lacks standing or a ripe claim, and none of its claims assert a cognizable legal theory. Defs.' Mot. to Dismiss (MTD) at pp. 7-9. Not only is GEO unlikely to succeed on the ultimate merits of its claims, but those

---

[25] Dkt. #8 at p. 9.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION NO. 3:23-CV-05626-BHS

8

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

deficient claims merit dismissal. First, GEO lacks pre-enforcement standing and this case is not prudentially ripe. GEO's chief concerns are directed against HB 1470, § 4, but Section 4 does not apply to contracts in effect prior to 2023—including GEO's current contract with ICE, which was modified in 2021 and runs through September 2025. *Compare* HB 1470, § 4, *with* Dkt. #1 ¶¶ 27, 51. GEO is unable to describe, based on a future contract that does not yet exist, "when, to whom, where, or under what circumstances[ ]" it intends to violate Section 4. *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc). The Court should otherwise decline to exercise jurisdiction because rules when adopted by DOH will narrow the legal issues in this dispute and there may well be actual factual context to decide GEO's claims down the road. *See Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173 (9th Cir. 2022); MTD at pp. 8-9.

Second, none of GEO's claims is cognizable. HB 1470 does not run afoul of the doctrine of intergovernmental immunity because it does not "regulate the United States directly or discriminate against the Federal Government or those with whom it deals." *United States v. Washington*, 142 S. Ct. 1976, 1984 (2022) (cleaned up); *see* MTD at pp. 9-16. And while the federal government has exclusive power to regulate immigration, HB 1470 is not an obstacle to the enforcement of immigration laws and is thus not preempted. *See* MTD at pp. 16-21; *United States v. California*, 921 F.3d 865, 885-86 (9th Cir. 2019) (upholding state inspections of private immigrant detention centers). GEO's Contracts Clause claim is meritless too; GEO's contract expressly accounts for present and future state law as several provisions explicitly require compliance with all applicable state laws. *See* Dkt. #10-1 at 43, 53, 59-60, 86. Moreover, HB 1470 is a reasonable response to numerous findings regarding safety risks and abuses in private detention centers. *See* MTD at pp. 21-24; *Energy Rsrvs. Grp., Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 412 (1983).

Because GEO fails the "threshold inquiry" of "show[ing] . . . likelihood of success on the merits, [the Court] need not consider the remaining three *Winter* elements." *Garcia v.*

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO.  3:23-CV-05626-BHS

9

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

*Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (citation and internal quotation marks omitted). The Court should dismiss GEO's Complaint, deny GEO's motion for preliminary relief, reject the additional request for a permanent injunction, and stop there.

**B.      GEO Cannot Show Irreparable Harm Absent an Injunction**

If the Court reaches the second preliminary injunction factor, GEO cannot carry its burden to demonstrate that "irreparable injury is likely in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis omitted). GEO claims that it will suffer irreparable constitutional and economic injuries; GEO is wrong on both points.

There is no merit to GEO's suggestion that an alleged violation of the Supremacy Clause—without more—triggers a presumption of irreparable harm. *Contra* Dkt. #8 at pp. 29-30. Instead, a plaintiff "must demonstrate some likely irreparable harm in the absence of a preliminary injunction barring the challenged action, and not simply a constitutional violation." *Sierra Club v. Trump*, 379 F. Supp. 3d 883, 925 (N.D. Cal. 2019), *aff'd*, 963 F.3d 874 (9th Cir. 2020). The case cited by GEO, *American Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1058-59 (9th Cir. 2009), clearly requires that a constitutional violation be "coupled with . . . damages incurred." *See also Poder in Action v. City of Phoenix*, 481 F. Supp. 3d 962, 979 (D. Ariz. 2020) (plaintiffs "cannot meet their burden of establishing a likelihood of irreparable harm simply by noting that they are raising a preemption challenge."). GEO has suffered no constitutional violation, which in any event cannot be a standalone basis for preliminary relief.

Turning to GEO's claim of economic harm, the law requires GEO to demonstrate "a likelihood of irreparable injury," and not "just a possibility" of harm. *Winter*, 555 U.S. at 21. Such a showing must be "grounded in evidence, not in conclusory or speculative allegations of harm." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1133 (9th Cir. 2014). GEO fails to carry its burden. To support its most dire assertions of economic harm, GEO submits a witness declaration lamenting that complying with Section 4 of HB 1470—e.g., ending the use of solitary

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO.  3:23-CV-05626-BHS

10

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1    confinement, providing free phone calls to detainees, and providing in-person visits—would

2    cause GEO to breach its contract with DHS, which could theoretically induce DHS to terminate

3    its contract, causing GEO to lose up to $160,000,000 in revenue.[26] But even ignoring the obvious

4    speculation that DHS might *terminate* its contract if GEO were to provide detainees free calls to

5    stay connected with their families, this argument misrepresents HB 1470.

6         By its terms, Section 4 of HB 1470 "*does not apply* to private detention facilities

7    operating pursuant to a valid contract that was in effect prior to January 1, 2023." HB 1470,

8    § 4(1) (emphasis added). This includes NWIPC, which GEO operates pursuant to a contract

9    effective September 2020 through September 2025. Thus, the provisions about which GEO

10   primarily complains are not causing it *any* harm, let alone irreparable harm. And any claim of

11   future harm—which would be insufficient to support a preliminary injunction in any event—

12   relies on twofold speculation that: (1) DHS will enter into a new contract with GEO once its

13   current contract terminates, notwithstanding the federal government's shift away from private

14   prisons; and (2) the contract will include requirements that are contrary to Washington law. Such

15   speculative, future harm does not satisfy GEO's heavy burden of proving irreparable harm

16   "sufficient to warrant granting a preliminary injunction." *Caribbean Marine Servs. Co., Inc. v.*

17   *Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).

18        GEO's argument that it might have to pay $3 million to upgrade its HVAC system[27]

19   suffers the same essential defect. HB 1470 does not require *GEO* to do anything with its HVAC

20   system, but instead requires *DOH* to promulgate rules about HVAC systems in private detention

21   facilities. HB 1470, § 2. DOH's rulemaking is in its infancy, and likely will not be completed

22

23

24        [26] Martin Decl., Dkt. #10 ¶¶ 13-18. Martin also claims that the $101 million that GEO allegedly spent on

25   land, the building, and equipment at the NWIPC would "*all* . . . be lost if GEO were no longer able to use its facility
     for its intended purposes." *Id.* ¶ 19 (emphasis added). GEO offers no explanation why HB 1470 would somehow
     reduce the value of these assets to $0.

26        [27] Shakir Decl., Dkt. #9 ¶ 8.

DEFENDANTS' OPPOSITION TO                          11              ATTORNEY GENERAL OF WASHINGTON
PLAINTIFF'S MOTION FOR                                                      1125 Washington Street SE
PRELIMINARY INJUNCTION                                                           PO Box 40100
NO.  3:23-CV-05626-BHS                                                       Olympia, WA 98504-0100
                                                                                  (360) 753-6200

for a year or more.[28] And of course, the final form those rules take is yet to be determined; until they are finalized, any assertion of a conflict requiring GEO to pay money is pure speculation.

None of GEO's alleged harms are actual or imminent, and none entitle it to a preliminary injunction.

## C.   The Balance of Equities and Public Interest in Ensuring Humane Detention Weigh Heavily Against GEO's Requested Injunction

The final two *Winter* factors—the balance of the equities and the public interest—also weigh heavily in the State's favor. Where the government is a party, these factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). Here, the equities and public interest tip sharply in the State's favor.

### 1.   Private prisons harm detainee health, safety, and security

More than 20 years ago, a DOJ study reported that "privately operated [detention] facilities are often plagued by problems associated with the quest for higher earnings."[29] In the decades since, researchers consistently have confirmed this finding, with the Washington DOH recently concluding that "incentivized incarceration" is a "public health issue[ ]" with "long-lasting impacts on the physical and emotional health of individuals and communities."[30] This is despite the conclusions of financial analysts showing that privatizing detention does not result in cost savings for taxpayers.[31]

Concerns about the health and safety impacts of incentivized incarceration are central to this Court's inquiry into equity and the public interest. As the Ninth Circuit confirmed, "health and safety" risks to immigrant detainees are a critical part of the preliminary injunction analysis in suits involving conditions at private detention facilities. *Roman v. Wolf*, 977 F.3d 935,

---

[28] Declaration of Joseph Laxson ¶¶ 9, 14.

[29] James Austin & Garry Coventry, U.S. DOJ, Off. of Just. Programs, Bureau of Just. Assistance, *Emerging Issues on Privatized Prisons* at 29 (Feb. 2001), https://www.ojp.gov/pdffiles1/bja/181249.pdf.

[30] *Report to the Legislature: Evaluating State and Local Authority and Practices Regarding Private Detention Facilities*, *supra* note 18, at 20.

[31] Austin & Coventry, *supra* note 29, at 27; Memo from Yates to Acting Dir. of the Fed. Bureau of Prisons, *supra* note 14, at 1 (concluding private prison use by federal government from 1980 to 2016 "d[id] not save substantially on costs").

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO.  3:23-CV-05626-BHS

12

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

942-44 (9th Cir. 2020). That is because "adverse effects on the health and welfare of the immigrant as well as general population" are inconsistent with the "equities and public interest[.]" *City & County of San Francisco v. U.S. Citizenship & Immigr. Servs.*, 981 F.3d 742, 762 (9th Cir. 2020). Indeed, evidence of "egregious conditions in facilities housing civil detainees" should weigh significantly in the analysis. *California*, 921 F.3d at 894 (citation and internal quotation marks omitted); *see also Roman*, 977 F.3d at 944 (concluding "that the equities and public interest tipped in . . . favor" of immigrant detainees challenging facility's failure to implement COVID protocols, "particularly in light of the lack of criminal records of many of the detainees and the alternative means available to prevent them from absconding if they were released, such as electronic monitoring[ ]").

### a.   Private detention increases the risk of physical danger to detainees

In 2001, a DOJ report found private prisons are responsible for "a significantly higher rate" of "critical incidents" like inmate assaults when compared with publicly run institutions.[32] This may be due to the "significantly lower staffing level[s]" and training requirements in private institutions, along with higher rates of staff turnover.[33] Since research and litigation began spotlighting safety outcomes in private prisons, there have been repeated findings that assault, rape, use of force by staff, and other violence occurs at markedly higher rates in private institutions.[34] And when inmates report violence, their complaints are sometimes ignored or mocked.[35]

---

[32] Austin & Coventry, *supra* note 29, at xi.

[33] *Id. See also* Curtis R. Blakely & Vic W. Bumphus, *Private and Public Sector Prisons—A Comparison of Select Characteristics*, 68 Fed. Probation J. at 4-5 (June 2004), https://www.uscourts.gov/sites/default/files/fed_probation_june_2004.pdf (reporting data that private sector prisons require 25% less pre-serving training and "experienced officer turnover rates approaching three times that of the public sector[ ]").

[34] Blakely & Bumphus, *supra* note 33, at 4-5 (reporting "the private sector experienced more than twice the number of assaults against inmates than did the public sector" even though private prisons generally incarcerate less-serious offenders); *Review of the Federal Bureau of Prisons' Monitoring of Contract Prisons*, *supra* note 16, at 44 ("In a majority of the categories we examined, we found that contract prisons incurred more safety and security incidents per capita than comparable BOP institutions," and "more frequent incidents of" uses of force" and "lockdowns".).

[35] Timothy Williams, *Inside a Private Prison: Blood, Suicide, and Poorly Paid Guards*, The N.Y. Times (Apr. 3, 2018), https://www.nytimes.com/2018/04/03/us/mississippi-private-prison-abuse.html.

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO.  3:23-CV-05626-BHS

13

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

In recent years, complaints of widespread sexual violence at private immigrant detention facilities have proliferated.[36] According to one report, the five immigrant detention facilities with the most sexual assault complaints were *all* privately owned—three by GEO, including NWIPC at number four.[37] And despite—or perhaps because of—the high rate of complaints at NWIPC, a 2022 University of Washington Center for Human Rights report showed that complaints of sexual harassment and abuse at NWIPC are routinely dismissed or outright ignored.[38]

Shielding GEO from *any* State oversight of its facilities, including its efforts to address violence and sexual assault, plainly undermines equity and the public interest.

### b.      Private detention leads to medical neglect

As with physical and sexual violence, allegations of medical neglect inside private detention centers have been rampant. The U.S. House of Representatives Committee on Oversight and Reform issued a report chronicling multiple instances where private detention providers—including GEO—failed to take detainee health complaints seriously or permit timely access to medical care.[39] The year-long study showed that contractors made detainees wait days or weeks to visit the medical clinic, failed to notice that detainees were unconscious in their

---

[36] *See, e.g.*, Zeba Warsi, *'Immensely Invisible:' Women Fighting ICE's Inaction on Sexual Abuses*, Futuro Investigates (July 21, 2023), https://futuroinvestigates.org/investigative-stories/immensely-invisible/immensely-invisible-women-fighting-ices-inaction-on-sexual-abuses/#Private%20Prison%20Companies:%20An%20Added%20Setback%20for%20Accountability; Bobbi-Jeanne Misick, *New complaint alleges sex assault, medical neglect, abuse of detainee at Louisiana ICE facility*, New Orleans Public Radio (Apr. 10, 2023), https://www.wwno.org/immigration/2023-04-10/new-complaint-alleges-sex-assault-medical-neglect-abuse-of-detainee-at-louisiana-ice-facility; Emily Wu Pearson, *Doctor at South Georgia immigration detention center abused women, investigation finds*, WABE (Nov. 16, 2022), https://www.wabe.org/doctor-at-south-georgia-immigration-detention-center-abused-women-investigation-finds/; Lomi Kriel, *ICE guards "systematically" sexually assault detainees in an El Paso detention center, lawyers say*, The Texas Tribune (Aug. 14, 2020), *updated* Jan. 12, 2021), https://www.texastribune.org/2020/08/14/texas-immigrant-detention-ice-el-paso-sexual-abuse/.

[37] Letter from Rebecca Merton, National Independent Monitor for CIVIC & Christina Fialho, Co-Founder/Executive Director for CIVIC, to Thomas D. Homan, et al., Director for Office of Detention Policy and Planning, ICE (Apr. 11, 2017), http://www.endisolation.org/wp-content/uploads/2017/05/CIVIC_SexualAssault_Complaint.pdf.

[38] *Calls to nowhere: Reports of sexual abuse and assault go unanswered at the NWDC*, *supra* note 12.

[39] U.S. H.R., Comm. on Oversight and Reform and Subcomm. on Civil Rights and Civil Liberties, *The Trump Administration's Mistreatment of Detained Immigrants: Deaths and Deficient Medical Care by For-Profit Detention Contractors* at 12-27, 30-31 (Sept. 2020), https://oversightdemocrats.house.gov/sites/democrats.oversight.house.gov/files/2020-09-24.%20Staff%20Report%20on%20ICE%20Contractors.pdf.

living quarters, placed sick detainees in solitary confinement where their conditions worsened, and failed to distribute prescribed medications.[40] The delay and denial of care had devastating results, including permanent hearing loss, permanent paralysis, and death.[41]

Even when immigration detainees are granted permission to visit the health clinic, the outcomes are poor. In 2019, the DHS Office for Civil Rights and Civil Liberties reported receiving numerous complaints that ICE's Health Service Corps, which provides medical care inside contract detention facilities, "has systematically provided inadequate medical and mental health care and oversight to immigration detainees in facilities throughout the U.S."[42] These complaints included forcible medications as a form of behavior control, misdiagnosis of medical and mental health conditions, serious medication errors, inadequate treatment and monitoring of detainees in withdrawal from substance use, lack of psychiatric monitoring leading to mental health deterioration, and inadequate care of multiple detainees who later died in custody.[43]

Similar issues have long plagued medical care at NWIPC. Whistleblowers within DHS have documented a detainee health care system that is "severely dysfunctional," resulting in "preventable harm and death to detainees[.]"[44] Medical documents, detainee interviews, and court records reveal "a multitude of complaints about insufficient medical care, including tumors that grew exponentially while in custody, the denial of surgery for hernias, several-month delays on the stocking of medical devices such as catheters, . . . and forced isolation of people with

---

[40] *Id.*

[41] *Id.*

[42] Mem. from Cameron Quinn & Marc Pachon, DHS Office for Civil Rights and Civil Liberties, to Ronald Vitiello, Acting Dir. of ICE (Mar. 20, 2019), https://www.aila.org/infonet/dhs-crcl-memo-ice-inadequate-medical-mental-care.

[43] *Id.* at 2-7.

[44] Ken Klippenstein, *ICE Detainee Deaths Were Preventable: Document*, TYT (June 3, 2019), https://tyt.com/stories/4vZLCHuQrYE4uKagy0oyMA/688s1LbTKvQKNCv2E9bu7h (memo to Mathew Albence, Deputy Dir. of ICE (Dec. 3, 2018), alerting ICE leadership to dozens of incidents, including a "[d]elay in referral to higher level of care at Tacoma Facility which lead to a ruptured appendix[ ]").

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO.  3:23-CV-05626-BHS

15

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

mental health issues."[45] In only six weeks, DOH received over 30 complaints from NWIPC detainees, including regarding lack of medical attention.[46]

UW's review of more than 3,500 pages of grievances spanning six years revealed that "allegations of medical neglect" were the most common type of complaint regarding detention conditions.[47] While reviewers did not have access to the medical records or circumstances underlying the grievances, their review showed "detained people at [the NWIPC] routinely report[ed] that when seeking access to medical care, their concerns are ignored, either because GEO guards deny them permission to visit the medical clinic" or because "the medical staff belittles their concerns."[48] People detained at NWIPC reported long waits for care, even for acute conditions like cancer, injuries requiring surgery, and liver failure.[49]

Finally, when detainees complained about insufficient medical care, their concerns often are labeled "not a grievance."[50] A lack of access to detainee medical care at NWIPC—coupled with an inability to raise complaints about medical issues—is a dangerous mix that runs contrary to equity and the public interest.

### c.   Unsafe and insufficient food are major problems in private detention

Private detention facilities have, for years, been plagued with serious problems related to inadequate and unsafe food. For example, during unannounced inspections at three GEO immigration detention centers in 2018, DHS inspectors found "[f]ood [s]ervice [i]ssues at [a]ll [f]acilities [that] [e]ndanger [d]etainee [h]ealth and [w]elfare[.]"[51] Inspectors labeled some conditions "egregious," and cited GEO for "unwrapped and unlabeled" meat, "chicken [that]

---

[45] Melissa Hellmann, *Incarcerated and Infirmed: How Northwest Detention Center Is Failing Sick Inmates*, Seattle Weekly (Oct. 10, 2018), https://www.seattleweekly.com/news/incarcerated-and-infirmed-how-northwest-detention-center-is-failing-sick-inmates/.

[46] Declaration of Wendy Yomiko "Miko" Nanto ¶¶ 7-8.

[47] *Human Rights Conditions in the Northwest Detention Center*, *supra* note 8, at 17-32.

[48] *Id.* at 22.

[49] *Id.* at 22-27.

[50] *Id.* at 22.

[51] *Concerns about ICE Detainee Treatment and Care at Four Detention Facilities*, *supra* note 2, at 3.

smelled foul and appeared to be spoiled," and "food in the freezer [that] was expired."[52] At NWIPC specifically, there have been multiple waves of food poisoning, including one in 2007 that sickened about 300 detainees.[53] In recent years, the Tacoma-Pierce County Health Department has received "multiple complaints about rotten food and maggots in the food at [the NWIPC]."[54] In its most recent inspection of the NWIPC, DHS OIG found long-expired food on shelves and boxes of meat left open and exposed to the air.[55]

Other evidence shows that individuals held in private detention frequently go hungry. In a report summarizing nearly fifty interviews of NWIPC detainees conducted by the Seattle University School of Law, "[a]bout 80% of the detainees interviewed stated they received an insufficient quantity of food and were often hungry after meals."[56] As a former GEO Kitchen Supervisor testified at a June 2021 trial involving conditions at the NWIPC, GEO budgets 97 cents per detainee, per meal.[57] When asked whether GEO was able to prepare and serve adequate meals within that budget, the witness conceded, "I would say, in my experience, no," and further admitted that "[m]y understanding is that [the detainees] seemed to be pretty hungry."[58]

The food is also poor quality. The same Kitchen Supervisor described menu items as "low-grade products," "cheap products," and "spongy meats."[59] He testified that "80 percent of the products that were served either was beans [or] soy-based meats" like "soy-based beef granules, soy-based Salisbury steak, soy-based burger patties."[60] The Kitchen Supervisor later

---

[52] *Id.* at 4.
[53] Chien Decl. Ex. 5, Seattle Univ. School of Law Int'l Human Rights Clinic & OneAmerica, *Voices from Detention: A Report on Human Rights Violations at the Northwest Detention Center in Tacoma, Washington* at 8 (July 2008), https://www.yumpu.com/en/document/read/48836345/voices-from-detention-a-report-on-human-rights-oneamerica.
[54] *Human Rights Conditions in the Northwest Detention Center*, *supra* note 8, at 13.
[55] *Results of an Unannounced Inspection of Northwest ICE Processing Center in Tacoma, Washington*, *supra* note 9, at 9-11.
[56] *Voices from Detention*, *supra* note 53, at 8.
[57] Chien Decl. Ex. 6, Testimony of John Patrick Griffin at 41:2-10, 63:4-19 (June 3, 2021).
[58] *Id.* at 63:22, 62:23-25.
[59] *Id.* at 83:2-15, 85:16-18.
[60] *Id.* at 82:13-84:12, 87:14.

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO.  3:23-CV-05626-BHS

17

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

described ingredients including "substandard quality food in cans[ ] . . . [s]ometimes . . . mixed with spiders or grasshoppers[ ]" and a product called "[p]ink chicken," a "50-pound block" of unidentifiable "chicken pieces."[61] According to the Seattle University report, unless a specialized diet has been approved, "detainees do not receive fresh fruit and only rarely receive fresh vegetables."[62] Sometimes the canned vegetables have bugs like "grasshoppers" in them, and it is the job of the kitchen staff to "make sure [detainees] didn't get one of those."[63] Detainee complaints received by DOH indicate that the food tastes of "burned plastic" and contains "metal string" and "splinters."[64] Detainee interviews describe the food as "bad, watery, tasteless, rotten, poor quality, low quantity, overcooked, repetitive, and cold. A few detainees who previously spent time incarcerated mentioned that the food was much better and more plentiful in prison."[65] Other detainees reported that the food "appears rotten, has been served on dirty trays, and contains bugs."[66] These findings are consistent with national findings that, because "[p]rivate providers have a business incentive to keep costs as low as possible," the end result is "lower-quality food."[67]

National media reports document allegations that private detention contractors "deliberately skimp on essentials, even food, to coerce detainees to labor for pennies an hour to supplement meager rations."[68] Indeed, the lack of quality food in NWIPC was key to coercing detainees into providing low-cost labor for GEO. Before they discontinued the practice in response to a successful lawsuit by the State of Washington, NWIPC operated a work program

---

[61] Griffin testimony, *supra* note 11, at 154:2-24.
[62] *Voices from Detention*, *supra* note 53, at 50; *see also* Griffin Testimony, *supra* note 11, at 173:24-174:1 (detainees did "not often" receive fresh foods).
[63] Griffin testimony, *supra* note 57, at 83:11-16.
[64] Nanto Decl. ¶ 9.
[65] *Voices from Detention*, *supra* note 53, at 50.
[66] *Id.*
[67] Natalie Delgadillo, *Maggots With a Side of Dirt? What Privatization Does to Prison Food*, Governing.com (Jan. 26, 2018), https://www.governing.com/archive/gov-private-food-service-prisons-aramark-trinity-ohio-michigan.html.
[68] Michelle Conlin & Kristina Cooke, *$11 toothpaste: Immigrants pay big for basics at private ICE lock-ups*, Reuters (Jan. 18, 2019), https://www.reuters.com/article/us-usa-immigration-detention-idUSKCN1PC0DJ.

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO.  3:23-CV-05626-BHS

18

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

in which detainees worked shifts doing janitorial, kitchen, laundry, and other work for just $1 per day. *See, e.g.*, *Washington v. GEO Grp. Inc.*, 283 F. Supp. 3d 967, 972 (W.D. Wash. 2017). At trial in that suit, witnesses testified that they worked to avoid going hungry.[69] There was also testimony that detainees are forced to work even when they are sick, and that GEO supervisors mistreat detainee workers.[70] And, when detainees have refused to work at the NWIPC, there have been severe consequences: UW's review of ICE records shows that solitary confinement is used to discipline detainees for "work stoppage and strike."[71]

The insufficient and poor-quality food has resulted in repeated, lengthy hunger strikes at the NWIPC, sometimes lasting for months and involving up to 1,200 detainees.[72] Equity and the public interest are not served by stripping the State's oversight of GEO's business model of profiting by serving food so bad and so paltry that detainees are willing to starve themselves to call attention to the issue.

> **d.     Private prisons do not provide sufficient hygiene supplies or clean clothes**

Private prisons also provide insufficient access to personal hygiene items and clean laundry. National reports detail that private facilities often provide minimal or no soap, shampoo, toilet paper, or deodorant.[73] Instead of being provided by the facility, these items must be purchased from the commissary at inflated prices, like $11.02 for a four-ounce tube of

---

[69] Chien Decl. Ex. 7, Testimony of Orlando Marquez at 175:3-22 (June 4, 2021); Chien Decl. Ex. 8, Testimony of Maria Gomez Sotelo at 78:15-24 (Oct. 19, 2021).

[70] Marquez testimony, *supra* note 69, at 173:6-175:12 (detainee not granted permission "to go back to my cell [from his work shift] because I was feeling bad, dizzy and with a headache" and that kitchen supervisors engaged in "abuse . . . yelling and . . . poor treatment"); Chien Decl. Ex. 9, Testimony of Maria Nayra Gomez Sotelo at 70:3-22 (June 7, 2021) (detainee's testimony that she worked to buy food for herself and "some elderly ladies" in her housing unit because "[t]he food that they would give us was not enough").

[71] *Human Rights Conditions in the Northwest Detention Center*, *supra* note 8, at 46.

[72] Shapiro, *supra* note 13; Carter, *supra* note 13; Needles, *supra* note 13; KUOW Staff, *supra* note 13; Gnull, *supra* note 13.

[73] Conlin & Cooke, *supra* note 68.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION NO.  3:23-CV-05626-BHS

19

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

toothpaste.[74] In cases where toilet paper has run out, detained people have been told to "improvise" or "use [their] fingers."[75]

Access to clean laundry has also been a persistent problem at the NWIPC, leading to hunger strikes in 2014 and 2017, and the filing of hundreds of grievances.[76] Detainees complained that their clothes are washed in the same machines as the dirty mop heads used to wash the floors, with the result that clothes come back from the laundry gray and foul-smelling.[77] UW documented multiple grievances related to women's underwear, with detainees begging for clean panties instead of "old yellow stained disgusting panties" or "yellow or brown used panties" that are "filthy" and "disgusting and unsanitary."[78] The response has been to mark such complaints as "[n]ot a grievance."[79] A lack of concern for the hygiene of detained people is inconsistent with the public interest or principles of equity.

### e.        Private detention leads to improper use of solitary confinement

Misuse of solitary confinement is also a significant issue in private detention centers. Studies examining the potential harms associated with isolated confinement have found higher rates of acute psychiatric harms, including hyperresponsivity, panic attacks, difficulty with concentration and memory, paranoia, and delirium.[80] The DOJ reported that contract prisons were "improperly housing new inmates in Special Housing Units (SHU), which are normally used for disciplinary or administrative segregation," despite the fact that the "inmates had not

---

[74] *Id.*; Angélica Cházaro & Dan Berger, *Guest: What's behind the hunger strike at Northwest Detention Center*, The Seattle Times (Mar. 19, 2014), https://www.seattletimes.com/opinion/guest-whatsquos-behind-the-hunger-strike-at-northwest-detention-center/.

[75] Conlin & Cooke, *supra* note 68, at 56.

[76] *Human Rights Conditions in the Northwest Detention Center*, *supra* note 8, at 14-16.

[77] *Id.*

[78] *Id.*

[79] *Id.*

[80] *See, e.g.*, Stuart Grassian, *Psyhciatric Effects of Solitary Confinement*, 22 Wash. U. J. of Law & Policy 325, 335-36 (Jan. 2006), https://openscholarship.wustl.edu/cgi/viewcontent.cgi?article=1362&context=law_journal_law_policy; Jeffrey L. Metzner & Jamie Fellner, *Solitary Confinement and Mental Illness in U.S. Prisons: A Challenge for Medical Ethics*, 38 J. of the Am. Acad. of Psychiatry & the Law 104, 104 (Mar. 2010), http://jaapl.org/content/jaapl/38/1/104.full.pdf ("Solitary confinement . . . can be as clinically distressing as physical torture.").

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO.  3:23-CV-05626-BHS

20

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

engaged in any of the behaviors . . . that would justify being placed in such administrative or disciplinary segregation."[81] DHS has likewise documented "[i]nappropriate [s]egregation [p]ractices" at contract immigrant detention facilities that "infringe on detainee rights."[82] Inspectors found that contractors—including GEO—placed detainees in disciplinary segregation when the standards did not permit it, overly restrained and strip-searched detainees during their time in solitary confinement, and did not offer detainees "any recreation or showers while in segregation."[83]

In 2020, UW's Center for Human Rights made specific findings about the prevalence of solitary confinement at the NWIPC. Researchers discovered that NWIPC "held people in solitary confinement, on average, *longer than any other ICE dedicated facility in the nation.*"[84] The average length of stay in solitary confinement at NWIPC is more than double the national average.[85] The study further concluded that, "[i]n violation of ICE's own rules, solitary confinement is frequently used [by GEO] on detained people who are mentally ill and others who exercise their First Amendment rights[ ]" like speaking out about poor conditions at NWIPC.[86] One detainee complained to DOH that they were held in isolation for two weeks for not answering a GEO staff's question.[87] ICE recently admonished GEO for multiple violations of federal standards related to solitary confinement, including because GEO's warden had

---

[81] *Review of the Federal Bureau of Prisons' Monitoring of Contract Prisons*, *supra* note 16, at ii-iii.

[82] *Concerns about ICE Detainee Treatment and Care at Four Detention Facilities*, *supra* note 2, at 5-7.

[83] *Id.*; *see also* Hannah Rappleye et al., *Thousands of Immigrants Suffer in Solitary Confinement in U.S. Detention Centers*, NBC News (May 20, 2019), https://www.nbcnews.com/politics/immigration/thousands-immigrants-suffer-solitary-confinem ent-u-s-detention-centers-n1007881 (reviewing government documents that "paint a disturbing portrait of a system where detainees are sometimes forced into extended periods of isolation for reasons that have nothing to do with violating any rules," and where "[s]olitary confinement was being used as the first resort, not the last resort"); U.S. DHS, Off. of the Inspector Gen., *ICE Needs to Improve Its Oversight of Segregation Use in Detention Facilities* (Oct. 13, 2021), https://www.oig.dhs.gov/sites/default/files/assets/2021-10/OIG-22-01-Oct21.pdf (concluding that "ICE did not . . . maintain evidence showing it considered alternatives to segregation for 72 percent of segregation placements[ ]" or "record 13 percent of the segregation placements as required[ ]").

[84] *Human Rights Conditions in the Northwest Detention Center*, *supra* note 8, at 35.

[85] *Id.* at 36-37.

[86] *Id.* at 33, 36-39.

[87] Nanto Decl. ¶ 12.

---

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION NO.  3:23-CV-05626-BHS

21

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

managed to visit the solitary confinement unit just once in the two weeks prior to the inspection, instead of the daily visit required by federal standards.[88]

Given the significant risks to detainee safety at the NWIPC consistently and for many years, equity and the public interest weigh against enjoining HB 1470.

### 2. Equity and the public interest favor improved transparency, accountability, and oversight of detention facilities

Enjoining HB 1470 would also run counter to the public's interest in accountability. Improved public oversight and accountability further the public interest. *See, e.g.*, *Valentine v. Collier*, 978 F.3d 154, 166 (5th Cir. 2020) ("the public interest favors having politically accountable officials . . . determine how to allocate resources[ ]" in the prison context); *Conn. State Police Union v. Rovella*, 494 F. Supp. 3d 210, 224-25, 230 (D. Conn. 2020) (denying preliminary injunction because public interest and equity supported "the state's salutary efforts to enhance transparency and promote accountability in law enforcement[ ]"); *Nat'l Head Start Ass'n v. Dep't of Health & Hum. Servs.*, 297 F. Supp. 2d 242, 251 (D.D.C. 2004) (denying temporary restraining order where granting it would thwart "[t]he public['s] . . . strong interest in the effective and transparent administration of [taxpayer-funded] programs[ ]"). But the Legislature has found "that private prisons and detention centers are less accountable for what happens inside those facilities than state-run facilities." RCW 70.395.010(5).

HB 1470 benefits transparency and accountability by allowing more daylight into detention facilities—including at the NWIPC. GEO's recordkeeping has been glaringly poor, making it difficult for regulators to confirm that detainees are safe and well. For example, "a comparison of internal and external data reveals that as many as 86% of [NWIPC] solitary placements during a one year period were neither logged in ICE's monitoring system nor

---

[88] U.S. DHS, U.S. ICE, Off. of Pro. Resp., Inspections & Det. Oversight Div., *Office of Detention Oversight Compliance Inspection: Tacoma ICE Processing Center* at 9-10 (June 22-25, 2020), https://www.ice.gov/doclib/foia/odo-compliance-inspections/tacomaIceProcessingCntrTacomaWA_Jun22-25_2020.pdf.

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO.  3:23-CV-05626-BHS

22

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

reported to the public."[89] GEO also has a poor record of documenting and responding to detainee grievances, even though the NWIPC "had the highest grievance volume of the facilities [ICE] inspected" in 2019.[90] GEO itself will not even turn over grievances or other records about its operations—it "decline[s] to respond to FOIA requests, citing its status as a private company."[91] Of course, the DHS Inspector General has access to GEO's records, and that office concluded that GEO violates ICE's requirements for "maintain[ing] grievance logs," that almost half of detainee grievances received no response during the mandatory five-day response window, and that almost a third went unaddressed far longer.[92]

But the DHS Inspector General's visit to the NWIPC is a rare event, and ICE itself inspects only "[a]bout once every three years."[93] More often, inspections are conducted by one of ICE's contract inspectors. The DHS Inspector General itself is skeptical of ICE's contract inspectors, and cited "examples of inspectors contracted by ICE submitting false information that made detention facilities look like they were following regulations when they weren't," private facilities "failing to notify ICE about alleged or proven sexual assaults," and contract staff "conducting strip searches with no reasonable suspicion."[94] Indeed, ICE's own employees express the view that inspections conducted by private contractors are "useless" and "very, very, very difficult to fail."[95]

[89] *Human Rights Conditions in the Northwest Detention Center*, *supra* note 8, at 33.

[90] U.S. DHS, Off. of the Inspector Gen., *Capping Report: Observations of Unannounced Inspections of ICE Facilities in 2019* at 8 (July 1, 2020), https://www.oig.dhs.gov/sites/default/files/assets/2020-07/OIG-20-45-Jul20.pdf.

[91] *Human Rights Conditions in the Northwest Detention Center*, *supra* note 8, at 37.

[92] *Capping Report: Observations of Unannounced Inspections of ICE Facilities in 2019*, *supra* note 90, at 7-8.

[93] *ICE's Inspections and Monitoring of Detention Facilities Do Not Lead to Sustained Compliance or Systemic Improvements*, *supra* note 6, at 3.

[94] Bob Ortega, *Migrants describe hunger and solitary confinement at for-profit detention center*, CNN Investigates (July 11, 2018), https://www.cnn.com/2018/07/11/us/northwest-immigrant-detention-center-geo-group-invs/index.html.

[95] *ICE's Inspections and Monitoring of Detention Facilities Do Not Lead to Sustained Compliance or Systemic Improvements*, *supra* note 6, at 7-8 & n.12.

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO.  3:23-CV-05626-BHS

23

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

Taken together, the poor recordkeeping, lack of records access, and unreliable inspections mean that lawmakers, state and local regulators, and the public are in the dark about what goes on inside private detention facilities. HB 1470 furthers the public interest by increasing facility accountability.

### 3. GEO's asserted interests cannot overcome the State's interests in health, welfare, and transparency

GEO's central argument is that an alleged constitutional violation is enough to merit relief—full stop. Dkt. #8 at p. 31. But the Ninth Circuit has rejected "general pronouncements that a Supremacy Clause violation alone constitutes a sufficient harm to warrant an injunction." *California*, 921 F.3d at 894.

What GEO is *really* trying to avoid is the potential cost in being held to account to meet basic standards of humane confinement. But those alleged costs are enormously speculative, and in any event when "[f]aced with . . . a conflict between financial concerns and preventable human suffering, [courts] have little difficulty concluding that the balance of hardships tips decidedly in . . . favor" of avoiding "physical and emotional suffering." *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983).

## V.   CONCLUSION

The Court should deny GEO's Motion for Preliminary Injunction.

DATED this 7th day of August 2023.

ROBERT W. FERGUSON
*Attorney General*

*s/ Marsha Chien*
MARSHA CHIEN, WSBA 47020
CRISTINA SEPE, WSBA 53609
*Deputy Solicitors General*
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200
Marsha.Chien@atg.wa.gov
Cristina.Sepe@atg.wa.gov

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO.  3:23-CV-05626-BHS

24

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ANDREW R.W. HUGHES, WSBA 49515
  *Assistant Attorney General*
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
Andrew.Hughes@atg.wa.gov

*Attorneys for Defendants Governor Jay R. Inslee*
*and Attorney General Robert W. Ferguson*

I certify that this memorandum contains 8,373
words, in compliance with the Local Civil Rules.

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO.  3:23-CV-05626-BHS

25

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

**CERTIFICATE OF SERVICE**

I hereby declare that on this day I caused the foregoing document to be electronically filed with the Clerk of the Court using the Court's CM/ECF System, which will serve a copy of this document upon all counsel of record.

DATED this 7th day of August 2023, at Olympia, Washington.

*s/ Leena Vanderwood*
LEENA VANDERWOOD
*Legal Assistant*
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 570-3411
Leena.Vanderwood@atg.wa.gov@atg.wa.gov

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO.  3:23-CV-05626-BHS

26

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200