The Honorable Benjamin H. Settle

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

THE GEO GROUP, INC.,

    Plaintiff,

v.

JAY R. INSLEE, in his official capacity as Governor of the State of Washington; ROBERT W. FERGUSON, in his official capacity as Attorney General of the State of Washington,

    Defendants.

NO. 3:23-cv-05626-BHS

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

NOTE ON MOTION CALENDAR: SEPTEMBER 1, 2023

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
NO. 3:23-cv-05626-BHS

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................... 1

II.  ARGUMENT ................................................................................................................. 1

     A.  This Case Is Not Justiciable ............................................................................... 1

     B.  HB 1470 Does Not Violate Intergovernmental Immunity ................................. 2

         1.  HB 1470 directly regulates private business—not federal activities ............... 2

         2.  HB 1470 does not impermissibly discriminate against GEO ........................... 5

     C.  GEO's Preemption Claim Should Be Dismissed ............................................... 7

         1.  HB 1470 is not field preempted ........................................................................ 8

         2.  HB 1470 is not conflict preempted ................................................................. 10

     D.  HB 1470 Does Not Violate the Contracts Clause ........................................... 11

III. CONCLUSION ............................................................................................................ 12

# TABLE OF AUTHORITIES

## Cases

*Apt. Ass'n of L.A. Cnty., Inc. v. City of Los Angeles*,
  10 F.4th 905 (9th Cir. 2021) .................................................................................... 12

*Armstrong v. Exceptional Child Care Ctr., Inc.*,
  575 U.S. 320 (2015) ................................................................................................... 7

*Boeing Co. v. Movassaghi*,
  768 F.3d 832 (9th Cir. 2014) ..................................................................................... 4

*California Trucking Ass'n v. Bonta*,
  996 F.3d 644 (9th Cir. 2021) ..................................................................................... 2

*Cessna v. REA Energy Coop., Inc.*,
  258 F. Supp. 3d 566 (W.D. Pa. 2017) ...................................................................... 10

*Chamber of Com. v. Whiting*,
  563 U.S. 582 (2011) ................................................................................................... 9

*Chamberlan v. Ford Motor Co.*,
  314 F. Supp. 2d 953 (N.D. Cal. 2004) ..................................................................... 10

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ................................................................................................... 1

*Energy Rsrvs. Grp., Inc. v. Kansas Power & Light Co.*,
  459 U.S. 400 (1983) ................................................................................................. 11

*Geier v. Am. Honda Motor Co., Inc.*,
  529 U.S. 861 (2000) ................................................................................................. 10

*GEO Group, Inc. v. Newsom*,
  50 F.4th 745 (9th Cir. 2022) (en banc) ........................................................... 3, 4, 6, 8

*Hawkeye Commodity Promotions, Inc. v. Vilsack*,
  486 F.3d 430 (8th Cir. 2007) ................................................................................... 11

*Johnson v. Maryland*,
  254 U.S. 51 (1920) ..................................................................................................... 7

*Lopez v. Candaele*,
  630 F.3d 775 (9th Cir. 2010) ..................................................................................... 2

*M'Culloch v. Maryland*,
  17 U.S. 316 (1819) ..................................................................................................... 3

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
NO.  3:23-cv-05626-BHS

ii

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

*Mayo v. United States*,
 319 U.S. 441 (1943) .................................................................................................... 3

*McHenry County v. Kwame Raoul*,
 44 F.4th 581 (7th Cir. 2022) ........................................................................................ 5

*Nat'l Shooting Sports Found. v. Att'y Gen. of New Jersey* (*NSSF*),
 No. 23-1214, 2023 WL 5286171 (3d Cir. Aug. 17, 2023) ..................................... 1, 2

*North Dakota v. United States*,
 495 U.S. 423 (1990) .................................................................................................... 3

*Penn Dairies v. Milk Control Comm'n of Pa.*,
 318 U.S. 261 (1943) .................................................................................................... 3

*Ry. Mail Ass'n v. Corsi*,
 326 U.S. 88 (1945) .................................................................................................. 3, 4

*Thomas v. Anchorage Equal Rts. Comm'n*,
 220 F.3d 1134 (9th Cir. 2000) (en banc) .................................................................... 1

*U.S. Trust Co. of N.Y. v. New Jersey*,
 431 U.S. 1 (1977) ...................................................................................................... 12

*United States v. California*,
 921 F.3d 865 (9th Cir. 2019) ............................................................................. passim

*United States v. Nye County*,
 178 F.3d 1080 (9th Cir. 1999) .................................................................................... 6

*United States v. Washington*,
 142 S. Ct. 1976 (2022) ................................................................................................ 6

*Watson v. Buck*,
 313 U.S. 387 (1941) .................................................................................................... 2

**Constitutional Provisions**

U.S. Const. art. VI, cl. 2 ................................................................................................ 1, 3, 7

**Statutes**

8 U.S.C. § 1231 .................................................................................................................... 7

Fiscal Year 2017 Department of Homeland Security Appropriations Act,
 Pub. L. No. 115-31 .................................................................................................... 9

RCW 70.395.010 ................................................................................................................ 12

RCW 70.395.030 .................................................................................................................. 5

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
NO.  3:23-cv-05626-BHS

iii

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

Second Substitute H.B. 1470, 68th Leg., Reg. Sess. (Wash. 2023) .................................. passim
    § 2 ......................................................................................................................... 1, 2, 6, 10
    § 2(1)(a) ................................................................................................................................ 10
    § 2(1)(e) ............................................................................................................................ 7, 11
    § 2(1)(g) ........................................................................................................................... 7, 11
    § 3 ........................................................................................................................................... 6
    § 4 ................................................................................................................................... passim
    § 4(2)(b) ............................................................................................................................... 10
    § 4(2)(c) ............................................................................................................................ 7, 10
    § 4(2)(d) ........................................................................................................................... 7, 10
    § 4(2)(e) ........................................................................................................................... 7, 10
    § 10(1)-(4) .............................................................................................................................. 6

**Regulations**

WAC 246-337-021 ............................................................................................................... 7

WAC 246-337-135 ............................................................................................................... 7

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
NO.  3:23-cv-05626-BHS

iv

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

# I. INTRODUCTION

The State and local governments in Washington are prohibited from using private facilities to detain people. Although Washington may not apply that same prohibition to the federal government, the Supremacy Clause leaves considerable room for states to ensure private facilities comply with health and safety standards. HB 1470 does just that. While GEO argues HB 1470 goes beyond requirements the State imposes on other facilities, its arguments are all at the margins. Regardless of whether HB 1470 is identical to other requirements, HB 1470 does not regulate whether or where an immigrant may be confined or otherwise frustrate the federal government's ability to discharge its operations. Indeed, ICE directs GEO to comply with state laws in its contract. Even if GEO's claims were justiciable, they should be dismissed because HB 1470 is not in tension, let alone conflict, with federal law and does not impair GEO's contract.

# II. ARGUMENT

## A. This Case Is Not Justiciable

To bring a pre-enforcement challenge, "the plaintiff must show that the stakes are high and close at hand." *Nat'l Shooting Sports Found. v. Att'y Gen. of New Jersey* (*NSSF*), No. 23-1214, 2023 WL 5286171, at *6 (3d Cir. Aug. 17, 2023). GEO cannot justify federal intervention in this pre-enforcement suit.

The main thrust of GEO's Complaint is against the requirements of HB 1470, § 4, yet GEO makes no argument (nor can it) that any hypothetical injuries concerning a future contract are "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013).

GEO cites two examples of State contacts, but neither represents a "specific warning or threat" of imminent prosecution under § 2. *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc). GEO points to 31 complaints detainees have sent to DOH, but those unsolicited complaints—though concerning—are not from DOH. *See* Dkt. #21 ¶¶ 3, 6; Dkt. #20 ¶¶ 22, 23. GEO also complains that a DOH employee contacted NWIPC requesting

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
NO. 3:23-cv-05626-BHS

1

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

copies of menus, but nowhere alleges that DOH accused NWIPC of violating HB 1470's requirement to provide nutritious and balanced meals or would seek penalties for any violations. *See* Dkt. #23 ¶¶3-4; *Watson v. Buck*, 313 U.S. 387, 400 (1941) ("[A]n officer stand[ing] ready to perform [their] duty falls far short of such a threat as would warrant the intervention of equity.").

DOH's request for information is a far cry from cases where courts have found pre-enforcement standing. *See, e.g.*, *California Trucking Ass'n v. Bonta*, 996 F.3d 644, 654 (9th Cir. 2021) (holding claims justiciable where California sent letters informing how a law "must" be applied, and then prosecuted companies that failed to comply). Because no such warnings and threats have been made to GEO at this time, GEO lacks pre-enforcement standing. *See Lopez v. Candaele*, 630 F.3d 775, 786-87 (9th Cir. 2010) ("'[G]eneral threats by officials to enforce those laws which they are charged to administer' do not create the necessary injury in fact." (cleaned up)).

Alternatively, the Court should decline to exercise jurisdiction on prudential ripeness grounds because DOH has not yet adopted rules to implement § 2 of HB 1470, *see* Dkt. #20 ¶ 4, and because § 4 does not apply to GEO's contract at all. At this stage, the Court cannot determine whether GEO has violated DOH's rules under § 2 or whether § 4 conflicts with a hypothetical future contract. Given these unknowns, GEO cannot establish that delayed review would cause it immediate and significant hardship. And further tipping against the Court's exercise of jurisdiction is that the penalties for violating HB 1470 are civil, rather than criminal. *Cf. NSSF*, 2023 WL 5286171, at *5 (explaining "civil penalties lower the temperature" and plaintiff's pre-enforcement arguments "can be raised as affirmative defenses later[ ]").

**B.**   **HB 1470 Does Not Violate Intergovernmental Immunity**

    **1.**   **HB 1470 directly regulates private business—not federal activities**

GEO's response ignores well-settled law that only the federal government is the federal government for purposes of a direct regulation analysis. *See North Dakota v. United States*, 495

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
NO. 3:23-cv-05626-BHS

2

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

U.S. 423, 435 (1990); *Penn Dairies v. Milk Control Comm'n of Pa.*, 318 U.S. 261, 270-71 (1943). Instead, GEO argues that the State "selectively quotes" tax cases that are inapposite here. But GEO's new tack is an odd one given that many of the cases in its Complaint are tax and levy cases, *see, e.g.*, *M'Culloch v. Maryland*, 17 U.S. 316, 317-18 (1819) (state tax on the Bank of the United States); *Mayo v. United States*, 319 U.S. 441, 442 (1943) (state inspection fee on federal products).

In fact, the Supreme Court relies interchangeably on tax and regulatory precedents in its intergovernmental immunity analysis—often in the same breath. *See Penn Dairies*, 318 U.S. at 270-71 ("The trend of our decisions is not to extend governmental immunity from *state taxation and regulation* beyond the national government itself and governmental functions performed by its officers and agents." (emphasis added)); *Ry. Mail Ass'n v. Corsi*, 326 U.S. 88, 95 (1945) ("Government immunity from *state tax and regulatory provisions* does not extend beyond the federal government itself and its government functions." (emphasis added)); *North Dakota*, 495 U.S. at 434-37 (citing cases about both "regulations and taxes"); *Mayo*, 319 U.S. at 446-48 (same). The Ninth Circuit is no different. *See GEO Group, Inc. v. Newsom*, 50 F.4th 745, 755 (9th Cir. 2022) (en banc) (a regulatory case that repeatedly relies on *United States v. New Mexico*, 455 U.S. 720 (1982)).

Even if GEO were correct that a gloss on the Supremacy Clause separates the analysis in tax and regulatory cases, the State identified plenty of regulatory cases that support its position— yet GEO fails to address a single one. Chief among them is *North Dakota*, 495 U.S. at 435-37, which involved liquor labeling and reporting requirements. There, the plurality concluded that there could not be a direct regulation claim because the state's requirements "operate[d] against suppliers, not the Government."[1] *Id.* at 436-37. Other regulatory cases similarly turn on the fact that the challenged state law regulated a contractor—not the government itself. *See Penn Dairies*,

---

[1] Although the *North Dakota* dissent suggests that federal contractors enjoy immunity "when a state law actually and substantially interferes with specific federal programs," 495 U.S. at 451-52, HB 1470 still does not directly regulate the federal government because it does not interfere with a federal program at all. *See infra* at 8.

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
NO. 3:23-cv-05626-BHS

3

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

318 U.S. at 269 (dairy providing milk to U.S. military not immune from state pricing regulations because "those who contract to furnish supplies or render services to the government are not [government] agencies and do not perform governmental functions") (collecting cases); *Ry. Mail Ass'n*, 326 U.S. at 95 (organization affiliated with U.S. Railway Mail Service not immune from state labor regulations).

GEO nevertheless cites *Newsom* to suggest only state laws that tax federal contractors on a nondiscriminatory basis can survive the direct regulation of intergovernmental immunity. *See* Dkt. #25-1 at 13. Not so. In striking down a state ban on private detention facilities because it would effectively "control" federal operations, the *Newsom* court repeatedly recognized the limits of its holding. *See* 50 F.4th at 755 ("[A] federal contractor's protection from state law under the Supremacy Clause is substantially narrower than that of a federal employee or other federal instrumentality."); *id.* at 750 ("states can impose many laws on federal contractors that they could not apply to the federal government itself[ ]"). While nondiscriminatory taxes are one example, there are "many laws" that would not similarly "control" federal operations and survive direct regulation, including price controls and generally applicable health and safety laws, such as HB 1470. *See id.* at 755.

Nor does *Boeing Co. v. Movassaghi*, 768 F.3d 832, 840 (9th Cir. 2014) "compel[ ]" a finding that HB 1470 directly regulates federal activities. *Contra* Dkt. #25-1 at 13-14. Although GEO suggests federal law makes the federal government "responsible" for the care and custody of immigration detainees, similar to *Boeing*, *see* Dkt. #25-1 at 14 (citing nothing more than DHS's general statutory authority to contract for detention services), GEO's argument misses the point. The relevant question in a direct regulation analysis is how the *state law* operates. Here, HB 1470 does not impose any obligation directly on the federal government or render the federal government a "responsible party." Instead, HB 1470 requires GEO to comply with health and safety laws; none of which interfere with the federal government's authority to detain immigrants. Indeed, GEO has not alleged HB 1470 will increase even the economic burden on

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
NO. 3:23-cv-05626-BHS

4

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

the federal government *at all*. *See, e.g.*, Dkt. #8 at 17 (arguing *GEO* would "suffer very substantial financial losses" because of its sunk costs). Because HB 1470 regulates a federal contractor, and not the federal government, GEO's direct regulation claim should be dismissed.

### 2.  HB 1470 does not impermissibly discriminate against GEO

GEO's discrimination arguments fare no better. GEO's main argument is that the Legislature acted "with discriminatory intent" when enacting HB 1470. Dkt. #25-1 at 15-16. But even if HB 1470 placed "unique burdens" on NWIPC and singled out immigration facilities—which it does not—that is not enough to render it unconstitutional. *See United States v. California*, 921 F.3d 865, 881 (9th Cir. 2019) (intergovernmental immunity "not implicated" "even" when a state "singles out federal activities in an otherwise innocuous enactment[ ]"); *id.* at 882 (upholding state law that "relates exclusively to federal conduct" and "impose[d] a specialized burden on federal activity"); *McHenry County v. Kwame Raoul*, 44 F.4th 581, 592-94 (7th Cir. 2022) (upholding state law where "*the* intended consequence of the Act—is that the federal government will not be able to use cooperative agreements to house immigration detainees in Illinois State or county facilities[ ]"). In fact, the reason HB 1470 only applies to NWIPC is because state and local governments are prohibited from contracting with private detention facilities at all. *See* RCW 70.395.030. If anything, state law treats the state *less* favorably, subjecting itself to a more stringent standard than the federal government. In other words, GEO "cannot identify any actors 'similarly situated' to the federal government that receive more favorable treatment[.]" *see McHenry*, 44 F.4th at 594.

GEO's attempt to disregard this reality and *United States v. California*, 921 F.3d 865 (9th Cir. 2019) also fails. While GEO is correct that the law there did not set facility condition standards, interact with the PBNDS, or contain an enforcement mechanism, *see* Dkt. #25-1 at 17, *California*'s discrimination analysis did not turn on those facts. Indeed, *California* did not reference the PBNDS at all. *Id.* In reality, the Ninth Circuit rejected the United States' discrimination claim because AB 103 "duplicate[d]" standards imposed on other California

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
NO.  3:23-cv-05626-BHS

5

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

facilities. *California*, 921 F.3d at 884. Of course, AB 103's inspections and "collection of data" requirements also "d[id] not . . . disturb any federal arrest or detention decision." *Id.* at 885. The same is true here—HB 1470 does not regulate whether or where an immigration detainee may be confined or require removal proceedings conform to state law. GEO's claim that HB 1470 "regulate[s] virtually every aspect of the operation of the federal NWIPC," Dkt. #25-1 at 17-18, is hyperbole. All of thirteen pages, HB 1470 could not "override" the PBNDS, a 455-page standard that contains procedures on topics from the admitting and releasing of detainees to controlling keys. *Compare* HB 1470, §§ 2, 3, and 4, *with* Dkt. #10-2 (PBNDS). HB 1470 simply ensures that private detention facilities are subject to inspections and comply with health and safety standards.

GEO quibbles with HB 1470's duplication of standards that apply to residential treatment facilities. *See* Dkt. #25-1 at 19 n.8. But no other standards exist because state contracted facilities are prohibited by law. Nor should the Court consider GEO's suggestion that the Legislature should have duplicated standards that apply to state and local correctional facilities themselves or have subjected state facilities to Section 5's private right of action and Section 6's civil penalties. *Id.* at 18, 19 n.8. The discrimination prong only prohibits states from treating federal contractors "unfavorably on some basis related to their governmental 'status.'" *United States v. Washington*, 142 S. Ct. 1976, 1984 (2022). It does not require states to treat federal contractors the same as the state itself. *See Newsom*, 50 F.4th at 755 ("Private contractors do not stand on the same footing as the federal government."). To the extent HB 1470 contains exemptions for additional facilities under state law, HB 1470 also exempts those under "similarly applicable federal law." *See* HB 1470, § 10(1)-(4). For intergovernmental immunity purposes, that is all that is required. *See United States v. Nye County*, 178 F.3d 1080, 1084 (9th Cir. 1999) (concluding an exemption for state universities did not absolve federal contractor's obligation to pay state tax).

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS NO. 3:23-cv-05626-BHS

6

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

Finally, GEO identifies seven HB 1470 provisions that it argues do not contain equivalents. Three of the seven stem from § 4 and do not apply to GEO. *See, e.g.*, HB 1470 § 4(2)(e) (prohibiting solitary confinement); § 4(2)(d) (requiring in-person visitations); § 4(2)(c) (requiring phone services free of charge). The remaining do not pose a burden to federal activity. *See California*, 921 F.3d at 855. First, § 2(1)(e) requires GEO to provide detainees "a nutritious and balanced diet." That is no different from what ICE requires itself. *See* Dkt. #10-1 at 84 (requiring "nutritious, adequately varied meals"). While GEO observes § 2(1)(e) also requires "fresh fruit or vegetables," any inconvenience of placing an apple or carrots on a tray hardly amounts to interference with federal immigration decisions. Second, GEO nitpicks that § 2(1)(g) requires heating and air conditioning equipment adjustable by room. But it is hard to understand how GEO could comply with the crux of § 2(1)(g), which is identical to WAC 246-337-135 and requires rooms be maintained a certain temperature, without such equipment. Third and fourth, GEO takes issue with HB 1470's imposition of a private right of action and civil penalties, respectively. While residential treatment facilities are not subject to similar provisions, they are subject to a much more stringent enforcement mechanism, *i.e.*, the State's authority to deny and suspend their license or ability to operate at all. *See* WAC 246-337-021(6). Although a similar licensing requirement on a federal contractor would be prohibited, *see Johnson v. Maryland*, 254 U.S. 51 (1920), the imposition of monetary penalties on a federal contractor poses no similar threat to the federal government's operations.

C. **GEO's Preemption Claim Should Be Dismissed**

GEO's preemption claims cannot be brought affirmatively under the Supremacy Clause—they must be connected to some other right that creates a cause of action. *See Armstrong v. Exceptional Child Care Ctr., Inc.*, 575 U.S. 320, 324-25 (2015) (The "Supremacy Clause is not the 'source of any federal rights,' and certainly does not create a cause of action." (citation omitted)). 8 U.S.C. § 1231, the statute that authorizes the federal government to enter into federal contracts for detention facilities, explicitly forecloses any cause of action. *See* 8 U.S.C. § 1231(h)

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
NO. 3:23-cv-05626-BHS

7

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1   ("Nothing in this section shall be construed to create any substantive or procedural right or
2   benefit that is legally enforceable by any party against . . . any other person.") Even if this Court
3   were to consider GEO's affirmative preemption claim in equity, GEO's claims still fail.

   **1.   HB 1470 is not field preempted**

5   Plaintiffs' field preemption claim fails for two reasons. *First*, HB 1470 regulates "the
6   health and welfare of inmates and detainees in facilities within [Washington's] borders," not
7   "whether or where an immigration detainee may be confined." *Newsom*, 50 F.4th at 761 (cleaned
8   up); *California*, 921 F.3d at 886. *Second*, the PBNDS does not reflect a clear intention—on the
9   part of Congress or any agency—to displace state law. GEO's response to both arguments is
10  unpersuasive.

11  GEO first attempts to distinguish *California* by claiming the law there "merely subjected
12  detention facilities . . . to 'inspections' or a 'review,'" and "did not regulate confinement or
13  impose mandates on ICE." Dkt. #25-1 at 20-21. But *California* held the law at issue was not
14  preempted because it did not interfere with "the federal government's ability to discharge its
15  operations" by "regulat[ing] whether or where an immigration detainee may be confined,
16  requir[ing] that federal detention decisions or removal proceedings conform to state law, or
17  mandat[ing] that ICE contractors obtain a state license." *California*, 921 F.3d at 885. The Ninth
18  Circuit re-affirmed this holding in *Newsom*, explaining that *California* turned on the fact that the
19  law "did not 'regulate whether or where an immigration detainee may be confined' or cause
20  'active frustration of the federal government's ability to discharge its operations.'" *Newsom*, 50
21  F.4th at 761 (quoting *California*, 921 F.3d at 885). As in *California*, so too here: HB 1470 does
22  not dictate whether or where ICE may detain individuals, nor whom it may contract with to do
23  so. It merely requires that GEO treat those in its care humanely.

24  GEO nonetheless asserts that "HB 1470 would require a wholesale rewriting of ICE's
25  federal contract and the replacement of the congressionally mandated PBNDS with . . . State
26  requirements[.]" Dkt. #25-1 at 21. This is plainly wrong. Not only is the PBNDS not

"congressionally mandated," *see* Dkt, #17 at 25-26, GEO's contract with ICE already requires GEO to comply with "all applicable federal, state, and local laws and standards" and, if there is any conflict, to follow "the most stringent" regulation. *See* Dkt. #10-1 at 53. Additionally, the HB 1470 provisions that apply to GEO's contract are broadly consistent with the PBNDS. Dkt. #17 at 27. The standards GEO primarily complains about—relating to solitary confinement, free phone calls, and visitation—do not even apply to GEO's current contract. Thus, there is nothing to "rewrit[e]."

Plaintiffs next try to show field preemption by arguing the PBNDS itself preempts any state regulation. But the PBNDS is not a "law" that can have preemptive effect. Neither the Joint Explanatory Statement nor the Committee Report to which GEO points are statutes. And the statute to which they refer—Fiscal Year 2017 Department of Homeland Security Appropriations Act, Pub. L. No. 115-31—doesn't mention the PBNDS. And GEO cites nothing—as in, zero—holding that a Congressional statement or report can displace state law.

Lacking an actual statute it can point to, Plaintiffs argue the Court must "look to the 'structure and purpose of the statute as a whole,'" including its "regulatory scheme." Dkt. #25-1 at 23 (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 486 (1996)). But GEO does not even identify which statute this Court is supposed to "look to." (Surely GEO does not contend that the Fiscal Year 2017 Department of Homeland Security Appropriations Act governs whether the State of Washington can regulate private detention facilities in 2023.) Even leaving that aside, there is no "regulatory scheme" GEO can identify to overcome the presumption against preemption. To the contrary, ICE's contract with GEO explicitly allows for state regulation by requiring GEO to follow state laws, even when those laws are more stringent than the contract standards.

In short, preemption analysis "does not justify a 'freewheeling judicial inquiry into whether a state statute is in tension with federal objectives,'" as GEO proposes. *Chamber of Com. v. Whiting*, 563 U.S. 582, 607 (2011) (cleaned up).

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
NO. 3:23-cv-05626-BHS

9

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

**2. HB 1470 is not conflict preempted**

As the State explained, "HB 1470's requirements are overwhelmingly consistent with those required in ICE's contract." Dkt. #17 at 27. GEO does not and cannot dispute this. So instead, GEO insists HB 1470 "interferes with the discretion afforded DHS to contract for detention services[ and] directly interferes with the operation of the federal program for the detention of removable aliens[.]" Dkt. #25-1 at 25. But GEO fails to put any meat on the bones— it doesn't say *how* HB 1470 allegedly interferes with ICE's operations. *See Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861, 884 (2000) ("[C]onflict pre-emption . . . turns on the identification of actual conflict[.]" (cleaned up)); *see also id.* at 885 ("[A] court should not find pre-emption too readily in the absence of clear evidence of a conflict[.]").

To the limited extent GEO tries to articulate a conflict, it fails. *See* Dkt. #25-1 at 26-27 (highlighting only HB 1470, §§ 2(1)(a), 2(1)(e), 2(1)(g), 4(2)(b), 4(2)(c), 4(d), and 4(e)). As an initial matter, GEO cannot show a conflict with § 4 requirements because they do not apply to GEO. Rather, any conflict it alleges with § 4 requirements is based on speculation about what its *next* contract with GEO will provide. But "[s]peculative or hypothetical conflict is not sufficient." *Chamberlan v. Ford Motor Co.*, 314 F. Supp. 2d 953, 957 (N.D. Cal. 2004). "Because [§ 4] does not impose any legal obligations on [GEO], the source for any such obligations that would give rise to a conflict must be found elsewhere[.]" *Cessna v. REA Energy Coop., Inc.*, 258 F. Supp. 3d 566, 577 (W.D. Pa. 2017).[2]

With respect to the three § 2 requirements GEO now challenges, there is no conflict.

1. Section 2(1)(a) provides, *inter alia*, that "a detained person" be permitted "to use the[ir] personal belongings to the extent possible." This is consistent with PBNDS Section 2.5's guidance, that detainees should generally be allowed to "keep a reasonable amount of personal

---

[2] As previously noted, GEO's arguments regarding §§ 4(2)(c), 4(2)(d), and 4(2)(e) also fail because these (inapplicable-to-GEO) requirements all comport with the PBNDS. Dkt. #17 at 27-29. With respect to § 4(2)(b), requiring "food items in the commissary must be available at reasonable prices," GEO is simply wrong that its contract "require[s] commissary . . . pricing [be] approved by ICE." *Contra* Dkt. #25-1 at 27. It only requires GEO provide "[n]otice of any price increases[.]" Dkt. #10-1 at 84.

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
NO. 3:23-cv-05626-BHS

10

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

property in their possession, provided it poses no threat to detainee safety or facility safety" with "an opportunity to store excess property," and permits facilities to maintain certain riskier items—like excess cash, jewelry, and medications—in secure storage on the detainees' behalf. Dkt. #10-2 at 95-103.

2.  Section 2(1)(e) requires private detention facilities to "provide a nutritious and balanced diet, including fresh fruits and vegetables." GEO contends this conflicts with a PBNDS provision permitting facilities to serve "fresh fruit" or "canned fruit." Dkt. #25-1 at 27. But this provision only applies to sack lunches, which themselves are only permissible in certain circumstances. Dkt. #10-2 at 248 (PBNDS Sec. 4.1(I)(6)(c)). More fundamentally, GEO can do both. Feeding detainees canned fruits, under certain circumstances, does not foreclose also feeding them fresh fruit and vegetables.

3.  Section 2(1)(g) requires private detention facilities to "have both heating and air conditioning equipment that can be adjusted by room or area." While GEO asserts that its "HVAC system is compliant with the NWIPC contract and ICE unique physical and operational requirements[,]" Dkt. #25-1 at 27, it does not begin to explain where there is a conflict or how those ICE requirements can supersede HB 1470.

D.  **HB 1470 Does Not Violate the Contracts Clause**

To state a claim, GEO must plausibly allege both that HB 1470 substantially impairs its contract and lacks a sufficient public purpose. GEO does neither.

The contract's express requirements to follow state regulations torpedoes GEO's arguments that HB 1470 poses a substantial impairment. *See Energy Rsrvs. Grp., Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 416 (1983) (contractual terms "subject to relevant present and future state and federal law"); *Hawkeye Commodity Promotions, Inc. v. Vilsack*, 486 F.3d 430, 438 (8th Cir. 2007) (provisions incorporating state laws and regulations "demonstrate [plaintiff]'s diminished contract expectations[ ]"). The contract repeatedly requires GEO to follow "all applicable federal, state, and local laws and standards." Dkt. #10-1 at 53; *see, e.g.*,

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
NO. 3:23-cv-05626-BHS

11

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

*id.* at 59-60, 86. The contract also explicitly states that should a conflict exist between various standards, "the most stringent shall apply." *Id.* at 53.

GEO ignores these provisions and instead points to 25 "constraints" identified in its contract guiding its relationship with ICE. Dkt. #25-1 at 28. But this cited section makes clear the constraints include, "but are not limited to" "[a]pplicable federal, state facility codes, rules regulations and policies" and "[a]pplicable federal, state and local labor laws and codes," and "[a]lighnment with external sources." Dkt. #10-1 at 45. The contract further notes that some standards from the American Correctional Association (ACA) may be augmented by DHS/ICE policy or procedure, and in other instances where those ACA standards conflict, DHS/ICE policy or procedure would prevail. *Id.*; *id.* at 46 (identifying ACA and other standards). That priority order GEO relies on says nothing about resolving conflicts between federal, state, and local laws and the PBNDS.

The Court could also skip substantial impairment and rule for the State based on the public-purpose step. *Apt. Ass'n of L.A. Cnty., Inc. v. City of Los Angeles*, 10 F.4th 905, 913 (9th Cir. 2021). The Legislature set reasonable minimum standards and enforcement mechanisms for an indisputably legitimate public purpose: protecting the health and safety of detainees. *California*, 921 F.3d at 886; RCW 70.395.010 (affirming Washington's interests in "ensur[ing] the health, safety, and welfare of . . . all inmates and detainees within Washington's borders[ ]"). This Court should follow the Supreme Court's directive to "defer to legislative judgment as to the necessity and reasonableness of a particular measure[,]" where, as here the State is not a contracting party. *U.S. Trust Co. of N.Y. v. New Jersey*, 431 U.S. 1, 22-23 (1977).

### III.   CONCLUSION

This Court should dismiss GEO's complaint.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
NO. 3:23-cv-05626-BHS

12

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1  DATED this 1st day of September 2023.

ROBERT W. FERGUSON
   *Attorney General*

*s/ Marsha Chien*
MARSHA CHIEN, WSBA 47020
CRISTINA SEPE, WSBA 53609
   *Deputy Solicitors General*
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200
Marsha.Chien@atg.wa.gov
Cristina.Sepe@atg.wa.gov

ANDREW R.W. HUGHES, WSBA 49515
   *Assistant Attorney General*
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
Andrew.Hughes@atg.wa.gov

*Attorneys for Defendants Governor Jay R. Inslee and Attorney General Robert W. Ferguson*

I certify that this memorandum contains 4,195 words, in compliance with the Local Civil Rules.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
NO.  3:23-cv-05626-BHS

13

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

**CERTIFICATE OF SERVICE**

I hereby declare that on this day I caused the foregoing document to be electronically filed with the Clerk of the Court using the Court's CM/ECF System, which will serve a copy of this document upon all counsel of record.

DATED this 1st day of September 2023, at Olympia, Washington.

*s/ Leena Vanderwood*
Leena Vanderwood
*Paralegal*
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-4111
Leena.Vanderwood@atg.wa.gov

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
NO. 3:23-cv-05626-BHS

14

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200