UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

THE GEO GROUP, INC.,

　　　　　　Plaintiff,

　v.

JAY R. INSLEE, in his official capacity as Governor of the State of Washington; and ROBERT W. FERGUSON, in his official capacity as Attorney General of the State of Washington,

　　　　　　Defendants.

CASE NO. C23-5626 BHS

ORDER

This matter is before the Court on the State of Washington's[1] motion for reconsideration, Dkt. 36, of the Court's order, Dkt. 35, granting in part and denying in part the GEO Group Inc's motion for a preliminary injunction, Dkt. 8, and granting in part and denying in part the State's motion to dismiss, Dkt. 17. Because the State fails to

---

[1] The defendants in this matter are Washington's Governor, Jay Inslee, and its Attorney General, Bob Ferguson. Each is sued in his official capacity. Dkt. 1, ¶ 1. For simplicity, the Court refers to these defendants collectively as "the State."

ORDER - 1

establish a manifest error in the Court's prior order, the motion for reconsideration is denied.

Under this District's local rules, motions for reconsideration are disfavored and will ordinarily be denied absent a showing of (a) manifest error in the ruling, or (b) facts or legal authority which could not have been brought to the Court's attention earlier with reasonable diligence. Local Rules, W.D. Wash., LCR 7(h)(1). The term "manifest error" is "[a]n error that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record." *Black's Law Dictionary* 622 (9th ed. 2009).

Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). "[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Marlyn Natraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009). Mere disagreement with a previous order is an insufficient basis for reconsideration, and reconsideration may not be based on evidence and legal arguments that could have been presented at the time of the challenged decision. *Haw. Stevedores, Inc. v. HT & T Co.*, 363 F. Supp. 2d 1253, 1269 (D. Haw. 2005). "Whether or not to grant reconsideration is committed to the sound discretion of the court." *Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003).

1    The State asserts that "the Court erred in looking beyond the text of HB 1470 to

2    conclude the law discriminates against the NWIPC." Dkt. 36 at 22. In this respect, the

3    State requests the Court to reconsider its ruling that HB 1470 §§ 2, 3, 5, and 6 violate the

4    intergovernmental immunity doctrine. GEO responds that the Court did not err because

5    "a statute that discriminates in favor of the state and against the federal government

6    cannot shield itself from the self-incriminating discriminatory statements contained in its

7    legislative history by asking the Court not to 'look behind the curtain.'" Dkt. 38 at 7.

8    Contrary to the State's assertion otherwise, the Court concluded that HB 1470's

9    text discriminates against private immigration detention facilities. *See GEO Group, Inc.*

10   *v. Inslee*, ___ F. Supp. 3d ___, No. C23-5626 BHS, 2024 WL 1012888, at *15 (W.D.

11   Wash. Mar. 8, 2024). The Court explained that, in HB 1470 § 8, "[t]he legislature

12   expressly stated its intent for the requirements imposed by HB 1470 to conform with the

13   Supremacy Clause in light of *Newsom*." *Id.* Section 8 provides:

> States have broad authority to enforce generally applicable health and safety laws against contractors operating private detention facilities within the state. The ninth circuit reinforced this authority in *Geo Group, Inc. v. Newsom*, 50 F.4th 745, 750 (9th Cir. 2022), stating "[p]rivate contractors do not stand on the same footing as the federal government, so states can impose many laws on federal contractors that they could not apply to the federal government itself."

RCW 70.395.010(1).

The sole issue in *Newsom* was whether a California law, Assembly Bill (AB) 32, prohibiting the operation of private detention facilities was unconstitutional as applied to privately-operated immigration detention facilities. *Geo Group, Inc. v. Newsom*, 50 F.4th 745, 750–51 (9th Cir. 2022). The Ninth Circuit held that it was: "Whether analyzed under

intergovernmental immunity or preemption, California cannot exert this level of control over the federal government's detention operations. AB 32 therefore violates the Supremacy Clause." *Id.* at 751.

This Court accordingly ruled that "[t]he legislature's express reference to *Newsom*" in HB 1470 § 8 "strongly indicates that the purpose of [HB 1470] is to impose conditions specifically on the NWIPC as the sole private immigration detention facility in the State." *GEO Group, Inc.*, ___ F. Supp. 3d ___, No. C23-5626 BHS, 2024 WL 1012888, at *15. The Court explained that "[f]urther support for this conclusion is found in HB 1470 § 10, which expressly excludes various facilities from HB 1470's ambit." *Id.* This includes any facility that is:

> (1) Providing rehabilitative, counseling, treatment, mental health, educational, or medical services to juveniles who are subject to Title 13 RCW, or similarly applicable federal law;
> (2) Providing evaluation and treatment or forensic services to a person who has been civilly detained or is subject to an order of commitment by a court pursuant to chapter 10.77, 71.05, 71.09, or 71.34 RCW, or similarly applicable federal law, including facilities regulated under chapters 70.41, 71.12, and 71.24 RCW;
> (3) Used for the quarantine or isolation of persons for public health reasons pursuant to RCW 43.20.050, or similarly applicable federal law;
> (4) Used for work release under chapter 72.65 RCW, or similarly applicable federal law;
> (5) Used for extraordinary medical placement;
> (6) Used for residential substance use disorder treatment; or
> (7) Owned and operated by federally recognized tribes and contracting with a government.

RCW 70.395.100.

The Court explained that "[t]he exclusion of these facilities from HB 1470's requirements begs the question: What facilities aside from private immigration detention

facilities are subject to HB 1470? The State provides no answer." *GEO Group, Inc.*, ___ F. Supp. 3d ___, No. C23-5626 BHS, 2024 WL 1012888, at *15. The State *again* provides no answer. It accordingly fails to show a manifest error in the Court's ruling that HB 1470's text applies exclusively to private immigration detention facilities.

The State next contends that "the Court erred as a legal matter in relying on *United States v. California* to conclude state prisons and local jails are the proper comparator." Dkt. 36 at 4. In that case, the Ninth Circuit held that those provisions of a state law that applied to immigration detention facilities and "duplicate[d] preexisting inspection demands imposed on *state and local detention facilities*" likely did not discriminate against immigration detention facilities." *United States v. California*, 921 F.3d 865 (9th Cir. 2019) (emphasis added). This Court interpreted the *California* decision as "implicitly reason[ing] that immigration detention facilities are similarly situated to state and local detention facilities, such as prisons and jails." *GEO Group, Inc.*, ___ F. Supp. 3d ___, No. C23-5626 BHS, 2024 WL 1012888, at *16. The State asserts that this amounts to a manifest error because "[t]he law at issue in *California* authorized inspections of *all* immigration detention facilities, whether publicly or private operated" whereas "HB 1470 does not extend to the Federal Detention Center in SeaTac and would not extend to state and local facilities if they housed immigration detainees (which they don't)." *Id.*

GEO persuasively responds that this argument is inconsistent with the State's argument in its motion to dismiss that "HB 1470 was not discriminatory because it replicated 'existing regulatory requirements for [Department of Corrections] facilities, including the provision of basic personal hygiene items.'" Dkt. 38 at 8 (quoting Dkt. 17 at

ORDER - 5

23). GEO also asserts that the Court "correctly rejected the Defendants' alternative contention that HB 1470 was not discriminatory because it largely replicated minimum health and safety standards found in the Washington Administrative Code applicable to residential treatment facilities." *Id.*

The State fails to identify a manifest error in the Court's ruling that privately operated immigration detention facilities are similarly situated to state and local detention facilities for purposes of applying the intergovernmental immunity doctrine. In reaching this conclusion, the Court did not rely solely on *California*, 921 F.3d 865. It also relied on Congress's express acknowledgment of the similarities between immigration detention facilities and state and local detention facilities in 8 U.S.C. § 1231(g)(1)[2] and the plain and ordinary meaning of "detention center,"[3] which applies equally to immigration detention facilities like the NWIPC and other detention facilities like state prisons or local jails. *See GEO Group, Inc.*, ___ F. Supp. 3d ___, No. C23-5626 BHS, 2024 WL 1012888, at *16–17.

In any event, as explained in that order, "[t]he State does not even attempt to explain how immigration detention facilities like the NWIPC are similarly situated to residential treatment facilities." *Id.* at 17. In its motion for reconsideration, the State again

---

[2] This statute directs the Commissioner of Immigration and Naturalization to "consider the availability for purchase or lease of any existing *prison, jail, detention center, or other comparable facility suitable for such use*" "[p]rior to initiating any project for the construction of any new detention facility for the [Immigration and Naturalization] Service." 8 U.S.C. § 1231(g)(1) (emphasis added).

[3] "Detention center" is defined as "[a] place where people are temporarily kept and prevented from escaping, esp[ecially] people who have entered the country illegally or are thought to have committed crimes." BLACK'S LAW DICTIONARY (11th ed. 2019).

does not attempt to explain the similarities between these facilities. Nor can it. *See id.* at 17–18.

The State alternatively moves the Court to clarify its preliminary injunction in three ways. The State first asks the Court to clarify that the preliminary injunction does not apply to HB 1470 § 5, which provides a private right of action to detained persons aggrieved by violations of HB 1470. This section provides:

> (1) A detained person aggrieved by a violation of this chapter has a right of action in superior court and may recover for each violation as follows:
> (a) Against any person who negligently violates a provision of this chapter, $1,000, or actual damages, whichever is greater, for each violation;
> (b) Against any person who intentionally or recklessly violates a provision of this chapter, $10,000, or actual damages, whichever is greater, for each violation;
> (c) Reasonable attorneys' fees and costs if the detained person is the prevailing party; and
> (d) Other relief, including an injunction, as the court may deem appropriate. Injunctive relief may be issued without bond in the discretion of the court, notwithstanding any other requirement imposed by statute.
> (2) Any action under this chapter is barred unless the action is commenced within three years after the cause of action accrues.
> (3) For the purposes of this section, "person" means an owner, operator, contractor, subcontractor, or employee of a private detention facility.
> (4) The state and its agencies are not liable for a violation of this chapter.

RCW 70.395.070.

The State contends that "Section 5 does not give enforcement authority to Attorney General Ferguson or Governor Inslee—the two Defendants in this action. Meaning, there is nothing in Section 5 Defendants can be enjoined from exercising." Dkt. 36 at 5.

ORDER - 7

GEO responds that, under HB 1470 § 6, "the attorney general has the authority to bring actions for penalties for any 'failure to comply' with [HB 1470], including a failure to comply with HB 1470 Section 5." Dkt. 38 at 11. GEO further asserts that, even if the State "ha[s] no impact on the operation of HB 1470 Section 5 so that no injunction was necessary, the portion of this Court's Order holding that HB 1470 Section 5 violates the intergovernmental immunity doctrine must stand, whether or not any injunction is entered against state officials or agencies." *Id.*

The Court agrees that neither the Governor nor the Attorney General have enforcement authority under HB 1470 § 5. That section provides a private right of action for detained persons aggrieved by a violation of HB 1470. Nevertheless, GEO correctly asserts that, because the Court ruled that Section 5 is unconstitutional, detained persons will be effectively unable to sustain any claim brought pursuant to Section 5 unless and until that ruling is reversed. Additionally, because the Court also ruled that HB 1470 §§ 2, 3 (RCW 70.395.040–.050) are unconstitutional, detained persons will be unable to sustain any claim alleging a violation of those sections under HB 1470 § 5.

The State next asks the Court to clarify that the preliminary injunction binds only the Governor and the Attorney General, not the Department of Health (DOH) or the Department of Labor and Industries (L&I). Dkt. 36 at 6. The State reiterates that "GEO only brought suit against Governor Inslee and Attorney General Ferguson—it has not named other state agencies such as" DOH and L&I. *Id.* It contends that the reason for such a clarification "is to adhere to the principle that 'a federal court exercising its equitable authority may enjoin named defendants from taking specified unlawful actions.

But . . . no court may 'lawfully enjoin the world at large' or purport to enjoin challenged 'laws themselves[.]'" *Id.* (quoting *Whole Woman's Health v. Jackson*, 595 U.S. 30, 44 (2021)).

GEO responds that, "[w]hen an action challenging a state statute is brought against the governor and attorney general of the state in their official capacities, it is an action against the state and its agencies." Dkt. 38 at 12. It cites to Federal Rule of Civil Procedure 65(d)(2), which provides that an injunction binds not only the parties but also their "officers, agents, servants, employees, and attorneys; and . . . other persons who are in active concert or participation with" them.

As GEO persuasively asserts, DOH and L&I are bound by the preliminary injunction under Fed. R. Civ. P. 65(d)(2) because "[b]oth the secretary of health and the director of labor and industries are appointed by and serve at the pleasure of the governor." Dkt. 38 at 12; *see also American Civil Liberties Union v. Johnson*, 194 F.3d 1149, 1163 (10th Cir. 1999) (affirming a preliminary injunction under Fed. R. Civ. P. 65(d) that bound a state's district attorneys in an action against the state's governor and attorney general). Therefore, DOH and L&I are properly bound by the preliminary injunction.

The State finally asks the Court to clarify that "DOH may continue to prepare for rulemaking under Section 2, short of adopting and enforcing those rules." Dkt. 36 at 7. The State asserts that "[t]his preparation includes complying with requirements imposed by other laws," including a law that "requires DOH to conduct environmental justice assessments when considering significant agency action." *Id.* GEO responds that "GEO

does not read this Court's Order as enjoining rulemaking activities 'short of adopting and enforcing those rules,' or conducting environmental justice assessment[s]." Dkt. 38 at 14. GEO accordingly "does not believe any modification or clarification is necessary." *Id*. The Court agrees that its order does not enjoin DOH from conducting rulemaking activities or environmental justice assessments.

Therefore, it is hereby **ORDERED** that the State's motion for reconsideration, Dkt. 36, is **DENIED**. In light of this order, the Court again encourages the parties to consult and agree on a resolution to this case.

Dated this 15th day of April, 2024.

BENJAMIN H. SETTLE
United States District Judge