1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

The Honorable Benjamin H. Settle

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

THE GEO GROUP, INC.,

                        Plaintiff,

     v.

JAY R. INSLEE, in his official capacity as
Governor of the State of Washington;
ROBERT W. FERGUSON, in his official
capacity as Attorney General of the State of
Washington,

                    Defendants.

NO.  3:23-cv-05626-BHS

DEFENDANTS' OPPOSITION TO
GEO'S MOTION FOR SUMMARY
JUDGMENT CONVERTING THE
COURT'S PRELIMINARY
INJUNCTION INTO A FINAL
JUDGMENT

NOTE ON MOTION CALENDAR:
MAY 3, 2024

DEFENDANTS' OPPOSITION TO GEO'S
MOTION FOR FINAL JUDGMENT
NO. 3:23-CV-05626-BHS

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1

**TABLE OF CONTENTS**

2  I.  INTRODUCTION ................................................................................. 1~~1~~

3  II.  BACKGROUND AND PROCEDURAL HISTORY ................................. 1~~1~~

4  III.  LEGAL STANDARD .......................................................................... 3~~3~~

5  IV.  ARGUMENT ...................................................................................... 3~~3~~

6     A.  The Entered Preliminary Injunction Sufficiently Protects GEO's Interests
          Against Enforcement While the Case Proceeds ...................................... 3~~3~~

7

8     B.  GEO Lacks Jurisdiction to Challenge Sections 2 and 5 of HB 1470 .......... 6~~6~~

9        1.  GEO's challenge to Section 2 remains unripe ................................. 6~~6~~

10       2.  There is no jurisdiction to enjoin the Governor and Attorney General
             under Section 5 ..................................................................... 8~~8~~

11    C.  GEO Cannot Prove Actual Success on the Merits Because HB 1470 Does Not
          Discriminate Against the Federal Government ....................................... 8~~8~~

12

13       1.  HB 1470 does not discriminate against GEO on its face ..................... 9~~9~~

14       2.  Even if HB 1470 did single out the NWIPC, that is not enough for
             impermissible discrimination .................................................... 11~~11~~

15       3.  Federal contractors are not discriminated against because no state
             contractor is treated more favorably .......................................... 13~~13~~

16

17       4.  There is no impermissible discrimination even when considering state
             and locally-run facilities ........................................................ 16~~16~~

18    D.  GEO Cannot Show Irreparable Harm Absent an Injunction ...................... 18~~18~~

19    E.  The Balance of Equities and Public Interest in Ensuring Humane Detention
          Weigh Heavily Against GEO's Requested Injunction ............................... 19~~19~~

20

21       1.  Private detention facilities harm detainee health, safety, and security ...... 19~~19~~

22       2.  Equity and the public interest favor improved transparency,
             accountability, and oversight of detention facilities ......................... 20~~20~~

23    F.  The Court Should Not Convert the Preliminary Injunction into a Permanent
          One Because it is Overly Broad ........................................................ 23~~23~~

24

25  V.  CONCLUSION ................................................................................... 23~~23~~

26

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Abbott Labs. v. Gardner,*
   387 U.S. 136 (1967) ............................................................................................ 7

*Ala. Right to Life Pol. Action Comm. v. Feldman,*
   504 F.3d 840 (9th Cir. 2007) ............................................................................. 8

*Am. Petroleum Inst. v. E.P.A.,*
   683 F.3d 382 (D.C. Cir. 2012) ........................................................................... 7

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles,*
   559 F.3d 1046 (9th Cir. 2009) ......................................................................... 18

*Amoco Prod. Co. v. Village of Gambell,*
   480 U.S. 531 (1987) ............................................................................................ 3

*Blachette v. Conn. Gen. Ins. Corps.,*
   419 U.S. 102 (1974) ............................................................................................ 7

*Black Lives Matter Seattle-King Cnty. v. City of Seattle,*
   505 F. Supp. 3d 1108 (W.D. Wash. 2020) ...................................................... 4

*Brandt v. Vill. of Winnetka,*
   612 F.3d 647 (7th Cir. 2010) ............................................................................. 7

*City & Cnty. of San Francisco v. U.S. Citizenship & Immigr. Servs.,*
   981 F.3d 742 (9th Cir. 2020) ........................................................................... 19

*Collins v. Yellen,*
   141 S. Ct. 1761 (2021) ........................................................................................ 8

*Conn. State Police Union v. Rovella,*
   494 F. Supp. 3d 210 (D. Conn. 2020) ............................................................ 21

*Dawson v. Steager,*
   139 S. Ct. 698 (2019) ................................................................................ 9, 10, 12

*Earth Island Inst. v. Carlton,*
   626 F.3d 462 (9th Cir. 2010) ............................................................................. 3

*eBay Inc. v. MercExch., LLC,*
   547 U.S. 388 (2006) ................................................................................ 3, 18, 19

*Edmo v. Corizon, Inc.,*
   935 F.3d 757 (9th Cir. 2019) ............................................................................. 4

DEFENDANTS' OPPOSITION TO GEO'S
MOTION FOR FINAL JUDGMENT
NO. 3:23-CV-05626-BHS

ii

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

*Ex parte Young*,
   209 U.S. 123 (1908) ............................................................................................. 8

*GEO Group, Inc. v. Newsom*,
   15 F.4th 919, 938 (9th Cir. 2021) *vacated on other grounds*,
   50 F.4th 745 (9th Cir. 2022) ............................................................................... 9

*GEO Group, Inc. v. Newsom*,
   50 F.4th 745 (9th Cir. 2022) (en banc) ............................................. 1, 10, 12, 14

*Great N. Res., Inc. v. Coba*,
   No. 3:20-CV-01866-IM, 2020 WL 6820793 (D. Or. Nov. 20, 2020) .................. 18

*Indep. Training & Apprenticeship Program v. Cal. Dep't of Indus. Rels.*,
   730 F.3d 1024 (9th Cir. 2013) ............................................................................ 3

*Johnson v. Maryland*,
   254 U.S. 51 (1920) ............................................................................................. 16

*Jones v. L.A. Cent. Plaza LLC*,
   74 F.4th 1053 (9th Cir. 2023) ............................................................................. 6

*Lopez v. Heckler*,
   713 F.2d 1432 (9th Cir. 1983) ........................................................................... 23

*Maryland v. King*,
   567 U.S. 1301 (2012) ......................................................................................... 18

*McHenry Cnty. v. Kwame Raoul*,
   44 F.4th 581 (7th Cir. 2022) .............................................................................. 13

*Nat'l Elec. Contractors Ass'n v. Riveland*,
   978 P.2d 481, 490 (Wash. 1999) ....................................................................... 15

*Nat'l Head Start Ass'n v. Dep't of Health & Hum. Servs.*,
   297 F. Supp. 2d 242 (D.D.C. 2004) .................................................................. 21

*New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*,
   434 U.S 1345 (1977) .......................................................................................... 18

*Phillips Chem. Co. v. Dumas Indep. Sch. Dist.*,
   361 U.S. 376 (1960) ........................................................................................... 11

*Poder in Action v. City of Phoenix*,
   481 F. Supp. 3d 962 (D. Ariz. 2020) ................................................................. 18

*Roman v. Wolf*,
   977 F.3d 935 (9th Cir. 2020) ....................................................................... 19, 20

*San Diego Cnty. Gun Rts. Comm. v. Reno*,
   98 F.3d 1121 (9th Cir. 1996) .............................................................................. 7

DEFENDANTS' OPPOSITION TO GEO'S
MOTION FOR FINAL JUDGMENT
NO. 3:23-CV-05626-BHS

iii

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

*Sports Form, Inc. v. United Press Int'l, Inc.*,
  686 F.2d 750 (9th Cir. 1982) .................................................................................. 4

*Thomas v. Anchorage Equal Rts. Comm'n*,
  220 F.3d 1134 (9th Cir. 2000) (en banc) ................................................................ 7

*Trump v. Hawaiʻi*,
  585 U.S. 667 (2018) ............................................................................................... 10

*United States v. California*,
  921 F.3d 865, 872 (9th Cir. 2019), *cert. denied*,
  141 S. Ct. 124 (2020) ...................................................................................... passim

*United States v. Hynes*,
  20 F.3d 1437 (7th Cir. 1994) ................................................................................ 13

*United States v. Washington*,
  596 U.S. 832 (2022) ................................................................................................. 9

*Univ. of Texas v. Camenisch*,
  451 U.S. 390 (1981) ................................................................................................. 4

*Valentine v. Collier*,
  978 F.3d 154 (5th Cir. 2020) ................................................................................ 20

*Washington v. United States*,
  460 U.S. 536 (1983) ............................................................................................... 11

*Whole Woman's Health v. Jackson*,
  595 U.S. 30 (2021) ................................................................................................... 8

*Wolfson v. Brammer*,
  616 F.3d 1045 (9th Cir. 2010) ................................................................................ 7

*Wong Wing v. United States*,
  163 U.S. 228 (1896) ............................................................................................... 17

### Statutes

8 U.S.C. § 1101(a)(3).............................................................................................. 17

8 U.S.C. § 1226 ...................................................................................................... 17

RCW 19.28.101 ...................................................................................................... 15

RCW 43.70.170 ...................................................................................................... 15

RCW 49.17.070 ...................................................................................................... 15

RCW 7.395.040(g).................................................................................................... 6

DEFENDANTS' OPPOSITION TO GEO'S
MOTION FOR FINAL JUDGMENT
NO. 3:23-CV-05626-BHS

iv

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

RCW 70.395.010(5) ................................................................................................ 21

RCW 70.395.020(7) ............................................................................................ 9, 10

RCW 70.395.030 .................................................................................................... 13

RCW 70.395.040 .................................................................................................... 14

RCW 70.395.100 .................................................................................................... 10

RCW 70.395.100(1)-(4) ........................................................................................... 9

RCW 71.05 ............................................................................................................. 15

RCW 71.05.730 ...................................................................................................... 15

RCW 71.34 ............................................................................................................. 15

RCW 72.09.135 ...................................................................................................... 17

RCW 84.36.010(1) .................................................................................................. 13

RCW 84.40.020 ...................................................................................................... 13

Engrossed House Bill 1090, 67th Leg., Reg. Sess. (Wash. 2021),
*enacted as* 2021 Wash. Sess. Laws, ch. 30 .............................................................. 1

Second Substitute House Bill 1470, 68th Leg., Reg. Sess. (Wash. 2023),
   *enacted as* 2023 Wash. Sess. Laws, ch. 419 ..................................................... 1, 2
   § 2 ............................................................................. 2, 6, 14, 16, 19, 20
   § 3 ........................................................................................ 2, 15, 20
   § 5 ............................................................................................. 2, 20
   § 6 ......................................................................................... 2, 16, 20

## **Regulations**

WAC 137-32-030 ................................................................................................... 18

WAC 137-55-030 ................................................................................................... 17

WAC 137-80-070 ................................................................................................... 17

WAC 246-302 through -390 ................................................................................... 16

WAC 246-322-025(3)(b) ........................................................................................ 15

WAC 246-322-025(3)(c) ........................................................................................ 15

WAC 246-322-025(6) ............................................................................................. 16

WAC 246-322-035 ................................................................................ 14

WAC 246-322-120 ................................................................................ 14

WAC 246-322-140 ................................................................................ 14

WAC 246-322-160 ................................................................................ 14

WAC 246-322-230 ................................................................................ 14

WAC 246-322-240 ................................................................................ 14

WAC 246-324-025(3)(b) ....................................................................... 15

WAC 246-337-001 ................................................................................ 14

WAC 246-337-021 ................................................................................ 15

WAC 246-337-021(6) ............................................................................ 16

WAC 246-337-060 ............................................................................ 2, 14

WAC 246-337-075 .................................................................................. 2

WAC 246-337-111 .................................................................................. 2

WAC 246-337-112 ............................................................................ 2, 14

WAC 246-337-128 ............................................................................ 2, 14

WAC 246-337-129 .................................................................................. 2

WAC 246-337-135 ............................................................................ 2, 14

WAC 246-360-035 ................................................................................ 15

WAC 296-900-12005 ............................................................................ 15

WAC 388-881-010 ................................................................................ 17

WAC 388-881-015 ................................................................................ 17

WAC 388-881-020 ................................................................................ 17

WAC 388-881-025 ................................................................................ 17

WAC 388-881-030 ................................................................................ 17

WAC 388-881-035 ................................................................................ 17

DEFENDANTS' OPPOSITION TO GEO'S
MOTION FOR FINAL JUDGMENT
NO. 3:23-CV-05626-BHS

vi

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

**Other Authorities**

Bob Ortega, *Migrants Describe Hunger and Solitary Confinement at For-Profit
    Detention Center*, CNN Investigates (updated July 11, 2018),
    https://www.cnn.com/2018/07/11/us/northwest-immigrant-detention-center
    -geo-group-invs/index.html .......................................................................................... 22

Final Bill Report on HB 1470,
    https://lawfilesext.leg.wa.gov/biennium/2023-24/Pdf/Bill%20Reports/
    House/1470-S2%20HBR%20FBR%2023.pdf?q=20240423161507 ................................... 15

House Committee on Community Safety, Justice & Reentry hearing on
    HB 1470 (Wash. Feb. 7, 2023), *video recording by* TVW,
    Washington State's Public Affairs Network,
    https://tvw.org/video/house-community-safety-justice-reentry-
    2023021199/?eventID=2023021199 ........................................................................ 5

Senate Floor debate on HB 1470 (Wash. Apr. 11, 2023), *video recording by* TVW,
    Washington State's Public Affairs Network,
    https://tvw.org/video/senate-floor-debate-april-11-
    2023041122/?eventID=2023041122 ........................................................................ 5

Transactional Records Access Clearinghouse Immigration,
    *Legal Noncitizens Receive Longest ICE Detention* (June 3, 2013),
    https://trac.syr.edu/immigration/reports/321/#f1 ................................................ 17

U.S. DHS, Off. of the Inspector Gen.,
    *Capping Report: Observations of Unannounced Inspections
    of ICE Facilities in 2019* (July 1, 2020),
    https://www.oig.dhs.gov/sites/default/files/assets/2020-07/OIG-20-45-Jul20.pdf ......... 21, 22

U.S. DHS, Off. of the Inspector Gen.,
    *ICE's Inspections and Monitoring of Detention Facilities Do Not
    Lead to Sustained Compliance or Systemic Improvements* (July 26, 2018),
    https://www.oig.dhs.gov/sites/default/files/assets/2018-06/OIG-18-67-Jun18.pdf ............. 22

U.S. Immigration & Customs Enforcement,
    *Trinidad and Tobago National in ICE Custody Dies at NWIPC*, Mar. 11, 2024,
    https://www.ice.gov/news/releases/trinidad-and-tobago-national-ice-custody-dies-
    nwipc.......................................................................................................................... 20

Univ. of Wash. Ctr. for Human Rights,
    *Human Rights Conditions in the Northwest Detention Center* (Mar.-Dec. 2020),
    https://jsis.washington.edu/humanrights/projects/human-rights-at-home/
    conditions-at-the-northwest-detention-center/........................................................ 21

Univ. of Wash. Ctr. for Human Rights,
    *NWDC Conditions Research Update: Charles Leo Daniel's Death at
    NWDC in Context*, Mar. 15, 2024,
    https://jsis.washington.edu/humanrights/2024/03/15/nwdc-conditions-
    research-update-daniel-death-in-context/ .............................................................. 20

Univ. of Wash. Ctr. for Human Rights,
    *Press Release: 911 Calls Reveal Suicide Attempts at NWDC*, Apr. 9, 2024,
    https://jsis.washington.edu/humanrights/2024/04/09/press-release-911-calls-
    reveal-suicide-attempts-at-nwdc/ ............................................................................ 20

Wash. Dep't of Health, *Private Detention Facilities Rulemaking*,
    https://doh.wa.gov/about-us/executive-offices/prevention-safety-and-
    health/environmental-public-health/eph-rulemaking/eph-active-
    rulemaking/private-detention-facilities (last visited Apr. 23, 2024) ...................................... 6

Wash. St. Reg. 23-23-079 (Nov. 13, 2023) ................................................................................. 6

DEFENDANTS' OPPOSITION TO GEO'S
MOTION FOR FINAL JUDGMENT
NO. 3:23-CV-05626-BHS

viii

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

## I.    INTRODUCTION

Washington routinely sets health and safety standards and conducts on-site inspections for all manner of congregate facilities—including residential treatment centers, psychiatric hospitals, nursing homes, farmworker housing, and more. In 2023, after the Ninth Circuit expressly recognized that states have authority to impose generally-applicable health and safety laws on federal contractors, the Washington Legislature acted to bring private detention centers up to the same basic standards and inspections as other congregate facilities. This was not an act of discrimination—it was an act of parity.

This Court should not grant GEO's premature motion for summary judgment because GEO fails to meet its burden to establish its claims are ripe and GEO cannot show actual success on the merits: HB 1470 does not impermissibly discriminate against GEO. Intergovernmental immunity does not shield private businesses from state health and safety regulations by virtue of their contract with the federal government. Because HB 1470 applies to all private detention facilities whether they contract with a federal, state, or local government, there is no constitutional violation here.

## II.    BACKGROUND AND PROCEDURAL HISTORY

As set out in the State Defendants' prior briefing, there is a well-documented history of private detention facilities—including the Northwest ICE Processing Center (NWIPC)—harming detainee health, safety, and security. *See* Dkt. 17 at 9-14; Dkt. 18 at 11-17, 21-31. Washington's Legislature has thus passed multiple laws to address the problem of private detention. For example, it passed Engrossed House Bill 1090, 67th Leg., Reg. Sess. (Wash. 2021), *enacted as* 2021 Wash. Sess. Laws, ch. 30, which prohibits private detention facilities within the state.[1] It also enacted Second Substitute House Bill 1470 (HB 1470), 68th

---

[1] The State does not enforce EHB 1090 as to the NWIPC, although it still applies to the State. *See* Defs.' Notice and Stipulation of Enforcement Position, *GEO Group, Inc. v. Inslee*, No. 3:21-cv-05313-BHS, Dkt. 65 (citing *GEO Group, Inc. v. Newsom*, 50 F.4th 745, 753 (9th Cir. 2022) (en banc)).

DEFENDANTS' OPPOSITION TO GEO'S
MOTION FOR FINAL JUDGMENT
NO. 3:23-CV-05626-BHS

1

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

Leg., Reg. Sess. (Wash. 2023), *enacted as* 2023 Wash. Sess. Laws, ch. 419—the law at issue in this case.

Broadly, the Legislature, in passing HB 1470, sought to align public health and safety standards at private detention facilities with those already in place for other facilities. In order to achieve this, it does four primary things: Section 2 directs the Department of Health (DOH) to adopt regulations "to ensure private detention facilities comply with measurable standards providing sanitary, hygienic, and safe conditions for detained persons." *Id.*, § 2. It sets standards in eight areas to guide the new rules that are drawn directly from Washington's regulations governing residential treatment facilities. *See* WAC 246-337-075, -111, -112, -128, -135, -060, -129 (setting regulations for residents). Section 3 of HB 1470 directs DOH to conduct inspections of private detention facilities, both routinely and in response to complaints. *Id.*, § 3. It also requires the Department of Labor and Industries (L&I) to conduct "inspections of workplace conditions at private detention facilities, including work undertaken by detained persons." *Id.*[2] Fourth, HB 1470 creates penalties for violating its standards and provides for enforcement by aggrieved detainees (§ 5), as well as DOH and the Attorney General (§ 6).

GEO filed a complaint and moved for a preliminary injunction, and Governor Inslee and Attorney General Ferguson moved to dismiss. Dkt. 8, 17. On March 8, 2024, this Court issued an order granting the preliminary injunction in part and the motion to dismiss in part. Dkt. 35. The Court concluded GEO's challenge to HB 1470, §§ 2, 3, 5, and 6 is constitutionally and prudentially ripe, and preliminarily enjoined "the State and its agencies" from enforcing those sections against GEO as the operator of the NWIPC, concluding GEO was likely to succeed on the merits of its claim under the impermissible discrimination prong of intergovernmental immunity. Dkt. 35 at 64. The Court dismissed GEO's other claims with prejudice. *Id.* at 63. The

---

[2] Two enforcement actions brought by DOH and L&I under their general authority and HB 1470 have been removed to this Court with motions for remand or, alternatively, preliminary injunctions pending. *See Dep't of Health v. The GEO Group, Inc.*, No. 24-cv-05029 (W.D. Wash. Jan. 18, 2024); Dkt. 30 at 6-9, *Dep't of Lab. & Indus. v. Geo Secure Servs., LLC*, No. 24-cv-05095 (W.D. Wash. Mar. 4, 2024).

DEFENDANTS' OPPOSITION TO GEO'S
MOTION FOR FINAL JUDGMENT
NO. 3:23-CV-05626-BHS

2

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1    Court subsequently denied Defendants' motion for reconsideration and alternative request to

2    modify the injunction. Dkt. 42. Defendants filed their notice of appeal on the order granting the

3    preliminary injunction in part on April 29, 2024.

4         The Court has not yet entered a case schedule, the parties have not had an opportunity to

5    conduct discovery, and the appeal of the preliminary injunction is pending. Nonetheless, GEO

6    moves to convert the Court's preliminary injunction into a permanent one and asks the Court to

7    enter final judgment. Dkt. 39.

8    III.    **LEGAL STANDARD**

9         To obtain a permanent injunction, GEO must demonstrate: (1) actual success on the

10    merits; (2) that it has suffered an irreparable injury; (3) that remedies available at law are

11    inadequate; (4) that the balance of hardships justify a remedy in equity; and (5) that the public

12    interest would not be disserved by a permanent injunction. *Indep. Training & Apprenticeship*

13    *Program v. Cal. Dep't of Indus. Rels*., 730 F.3d 1024, 1032 (9th Cir. 2013) (citing *eBay Inc. v.*

14    *MercExch., LLC*, 547 U.S. 388, 391 (2006)); *see also Amoco Prod. Co. v. Village of Gambell*,

15    480 U.S. 531, 546 n.12 (1987) ("The standard for a preliminary injunction is essentially the same

16    as for a permanent injunction with the exception that the plaintiff must show a likelihood of

17    success on the merits rather than actual success."). "'An injunction is a matter of equitable

18    discretion' and is 'an extraordinary remedy that may only be awarded upon a clear showing that

19    the plaintiff is entitled to such relief.'" *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir.

20    2010).

21    **IV.**    **ARGUMENT**

22    **A.**    **The Entered Preliminary Injunction Sufficiently Protects GEO's Interests Against**
       **Enforcement While the Case Proceeds**

23    

24         GEO's primary contention on why the Court enter a permanent injunction now, thus

25    short-circuiting the discovery process and case schedule, is that it is necessary to protect GEO

26    from further enforcement of HB 1470. *See* Dkt. 39 at 16. But this Court's preliminary injunction

DEFENDANTS' OPPOSITION TO GEO'S     3     ATTORNEY GENERAL OF WASHINGTON
MOTION FOR FINAL JUDGMENT                      1125 Washington Street SE
NO. 3:23-CV-05626-BHS                         PO Box 40100
                                    Olympia, WA 98504-0100
                                     (360) 753-6200

1   already protects GEO's interests while this case progresses. The State Defendants have and will
2   continue to follow the preliminary injunction while it is in place. And GEO's protections include
3   the ability to seek contempt sanctions against the State Defendants for violations of the
4   preliminary injunction. *See, e.g.*, *Black Lives Matter Seattle-King Cnty. v. City of Seattle*, 505 F.
5   Supp. 3d 1108 (W.D. Wash. 2020) (holding the City of Seattle in civil contempt for specific
6   violations of the court's preliminary injunction orders).

7           In fact, this case is far from over. In seeking a final judgment, GEO ignores the difference
8   between a preliminary injunction and a permanent one. To be entitled to a permanent injunction,
9   a plaintiff must demonstrate "*actual* success on the merits." *Edmo v. Corizon, Inc.*, 935 F.3d
10  757, 785 n.13 (9th Cir. 2019) (emphasis added). Here, GEO cannot show actual success because
11  this Court has not yet had an opportunity to weigh evidence regarding jurisdiction over GEO's
12  claims, any actual conflict between GEO's contract with ICE and the requirements of HB 1470,
13  HB 1470's full legislative history, or the facts showing HB 1470 treats GEO the same as
14  similarly-situated comparators. *See Sports Form, Inc. v. United Press Int'l, Inc.*, 686 F.2d 750,
15  753 (9th Cir. 1982) ("[A] fully developed factual record may be materially different from [the
16  record] initially before the district court."); *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395
17  (1981) (explaining the "findings of fact and conclusions of law made by a court granting a
18  preliminary injunction are not binding at trial on the merits").

19          For example, a full review of HB 1470's legislative history would show that NWIPC
20  was not targeted for harsher treatment. During the February 7, 2023 House Committee
21  on Community Safety hearing, the prime bill sponsor testified that this bill is about
22  applying the same standards we apply to our public facilities to private facilities
23  in Washington. *See* House Committee on Community Safety, Justice & Reentry hearing
24  on HB 1470 (Wash. Feb. 7, 2023), at 4:04, *video recording by* TVW, Washington
25  State's Public Affairs Network, https://tvw.org/video/house-community-safety-justice-reentry-

4

2023021199/?eventID=2023021199. During an April 11, 2023 senate floor debate, Senator Claire Wilson recognized that exemptions to HB 1470 applied only to facilities that were already subject to similar regulations. *See* Senate Floor debate on HB 1470 (Wash. Apr. 11, 2023), at 1:43, *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/senate-floor-debate-april-11-2023041122/?eventID=2023041122. All of these issues, including HB 1470's legislative history and what type of facility is similarly-situated to the NWIPC, will be subject to discovery, which has not yet occurred.

Additionally, a permanent injunction requires GEO prove that it has suffered an irreparable injury; that remedies available at law are inadequate; that the balance of hardships justify a remedy in equity; and that the public interest would not be disserved by a permanent injunction. The Court should not grant summary judgment because, right now, there is nothing in the record to support a permanent injunction. GEO has failed to meet its burden to establish jurisdiction and irreparable at the summary judgment stage. And there are factual disputes as to whether the equities and the public interest are served by prohibiting the application of generally-applicable health and safety laws. *See, e.g.*, Dkt. 19 (referring to numerous human rights reports and trial testimony regarding abuse at NWIPC), Dkt. 21 (reporting on numerous NWIPC detainee complaints).

There is no need hastily enter a permanent injunction and final judgment before a case schedule has even issued, particularly where the Ninth Circuit will decide threshold issues regarding jurisdiction and the contours of the intergovernmental immunity doctrine as applied to HB 1470 in the appeal of the preliminary injunction. The State Defendants thus respectfully ask that the Court deny this motion without prejudice or hold the motion in abeyance until the Ninth Circuit decides the preliminary injunction appeal.

DEFENDANTS' OPPOSITION TO GEO'S
MOTION FOR FINAL JUDGMENT
NO. 3:23-CV-05626-BHS

5

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

**B.** **GEO Lacks Jurisdiction to Challenge Sections 2 and 5 of HB 1470**

**1.** **GEO's challenge to Section 2 remains unripe**

As this Court has already recognized, Section 2 requires DOH to adopt certain rules applicable to private detention facilities. Dkt. 35 at 22. DOH has just begun the rulemaking process, but has not yet proposed rules or received comments and testimony from the public and various interest groups, including GEO, on the substance of those rules. Dkt. 20, ¶ 5; *see also* Wash. St. Reg. 23-23-079 (Nov. 13, 2023) (CR-101 preproposal statement of inquiry); Wash. Dep't of Health, *Private Detention Facilities Rulemaking*, https://doh.wa.gov/about-us/executive-offices/prevention-safety-and-health/environmental-public-health/eph-rulemaking/eph-active-rulemaking/private-detention-facilities (last visited Apr. 23, 2024) (setting out the formal comment period as December 2024–January 2025). GEO could not possibly run afoul of the rules implementing Section 2 where none have yet been adopted.

At the summary judgment stage, GEO "'must offer evidence and specific facts demonstrating each element of Article III standing.'" *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1058 (9th Cir. 2023). But GEO has not met its burden to show that its injury is inevitable. In its motion for preliminary injunction, GEO's complaint about Section 2 focused only on the requirement that would require a private detention facility to have heating and air conditioning equipment that can be adjusted *by room or area*." RCW 7.395.040(g) (emphasis added). But the only evidence of purported injury GEO included was a declaration that assumed the NWIPC's HVAC system would need to allow for adjustment for "*each specific room rather than zones*" requiring the "wholesale redesign of" its HVAC system. Dkt. 9 at 8 (emphasis added). But the statute contemplates adjustment by room *or area*, and so it's unclear if the rules ultimately adopted by DOH will require the NWIPC to change its HVAC system—which allows for adjustment by zones—at all. And GEO does not otherwise explain how it came to estimate the cost of complying with a not yet formulated requirement. *See id.* As a result, its only claim of harm is premature.

DEFENDANTS' OPPOSITION TO GEO'S
MOTION FOR FINAL JUDGMENT
NO. 3:23-CV-05626-BHS

6

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1    So while it's true that challenges to statutes may be ripe where "the inevitability of the

2    operation of a statute against certain individuals is patent," Dkt. 35 at 22 (quoting *Blachette v.*

3    *Conn. Gen. Ins. Corps.*, 419 U.S. 102, 143 (1974)), that inevitability is not patent here. This

4    Court should thus "delay resolution of constitutional questions until a time closer to the actual

5    occurrence of the disputed event, when a better factual record might be available. *Blanchette*,

6    419 U.S. at 143; *see also Brandt v. Vill. of Winnetka*, 612 F.3d 647, 650 (7th Cir. 2010) ("[I]t is

7    hard to see how a court can evaluate an as-applied challenge sensibly until a law *is* applied, or

8    application is soon to occur and the way in which it works can be determined.").

9    GEO's challenge to Section 2 is constitutionally unripe; and GEO does not meet its

10   burden on summary judgment (the stage of the case it has chosen to accelerate). GEO has not

11   articulated a concrete plan to violate the rules implementing Section 2 (nor can it since those

12   rules have not yet been adopted), no state authority has communicated a specific warning to

13   initiate proceedings against GEO for violating the rules, and there is no history of past

14   enforcement either. *See Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th

15   Cir. 2000) (en banc) (articulating the three-part test for pre-enforcement challenges).

16   GEO's challenge to Section 2 remains prudentially unripe too. *See Wolfson v. Brammer*,

17   616 F.3d 1045, 1060 (9th Cir. 2010) (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967));

18   *id.* at 1064 (finding certain claims were not prudentially ripe because they rested upon contingent

19   future events that might not occur as anticipated, if at all). First, the issues are not fit for judicial

20   resolution at this stage because a decision on the merits of GEO's intergovernmental immunity

21   challenge to Section 2 "would be devoid of any factual context whatsoever," forcing the court

22   to "be umpire to debates concerning harmless, empty shadows." *San Diego Cnty. Gun Rts.*

23   *Comm. v. Reno*, 98 F.3d 1121, 1132 (9th Cir. 1996) (cleaned up). GEO is able to participate in

24   rulemaking, and whether DOH adopts heating and cooling requirements by room rather than by

25   area will narrow the legal issues involved in this dispute. *Cf. Am. Petroleum Inst. v. E.P.A.*, 683

26   F.3d 382, 387-88 (D.C. Cir. 2012) (association's challenge was rendered prudentially unripe for

DEFENDANTS' OPPOSITION TO GEO'S
MOTION FOR FINAL JUDGMENT
NO. 3:23-CV-05626-BHS

7

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

review by agency's new proposed regulation). Second, GEO will not be harmed if judicial resolution is postponed. GEO has not shown a credible threat of enforcement to justify pre-enforcement judicial review, and so delaying resolution of its claims will not cause hardship. *Ala. Right to Life Pol. Action Comm. v. Feldman*, 504 F.3d 840, 851 (9th Cir. 2007).

GEO lacks standing, and its claims against Section 2 are unripe.

**2.    There is no jurisdiction to enjoin the Governor and Attorney General under Section 5**

GEO's challenge to Section 5 runs into sovereign immunity and redressability problems. Because the Governor and Attorney General cannot enforce Section 5 of HB 1470, they cannot be enjoined (permanently or otherwise) from enforcing it. Ordinarily, *Ex parte Young*, 209 U.S. 123 (1908), gives an exception to Eleventh Amendment immunity to let federal courts enjoin state officials from enforcing state laws. But here, GEO does not direct the Court "to any enforcement authority the attorney general [or the governor] possesses in connection with [Section 5] that a federal court might enjoin [them] from exercising." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 43 (2021).

There are also redressability issues. Any injury GEO might face as a result of Section 5 must be traced to "'conduct' of the defendant[s], not to the provision of law that is challenged." *Collins v. Yellen*, 141 S. Ct. 1761, 1779 (2021); *see also Whole Woman's Health*, 595 U.S. at 44 (federal courts enjoy the power to enjoin individuals tasked with enforcing laws, not the laws themselves). But again, this injury would be traced to an aggrieved detainee with a private right of action, not to the State Defendants.

Respectfully, even if the Court might ultimately declare Section 5 unconstitutional, it cannot permanently enjoin parties who do not enforce it.

**C.    GEO Cannot Prove Actual Success on the Merits Because HB 1470 Does Not Discriminate Against the Federal Government**

A state law violates the discrimination prong of the intergovernmental immunity doctrine if it "'single[s them] out' for less favorable 'treatment,'" the federal government or federal

DEFENDANTS' OPPOSITION TO GEO'S
MOTION FOR FINAL JUDGMENT
NO. 3:23-CV-05626-BHS

8

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

contractors or "if it regulates them unfavorably on some basis related to their governmental 'status.'" *United States v. Washington*, 596 U.S. 832, 839 (2022). GEO's motion for summary judgment should fail for four reasons: (1) HB 1470 on its face does not discriminate against the NWIPC, (2) even if HB 1470 *did* single out the NWIPC, that is not enough to for impermissible discrimination, (3) there are no similarly situated state contractors that are treated better than the NWIPC, and (4) NWIPC is not unduly burdened even when compared to state or locally run facilities. Each demonstrate that HB 1470 does impermissibly discriminate against federal contractors.

### 1.    HB 1470 does not discriminate against GEO on its face

Under binding Supreme Court precedent, the question of discrimination turns on the text of the statute itself. *Dawson v. Steager*, 139 S. Ct. 698, 705 (2019). While the burdens of a law may matter for direct regulation, a contractor alleging impermissible discrimination must show that it is "comparable" to whatever "favored class" is exempt from the law based on the "criteria" the state itself has "chosen to define" the exemption. *Dawson*, 139 S. Ct. at 705. In *Dawson*, a retired U.S. Marshal challenged a state law exempting state law-enforcement retirees from certain state taxes, but not similarly situated federal law-enforcement retirees. *Id.* at 703-04. In concluding the statute violated intergovernmental immunity, the Supreme Court made clear: "if a State exempts from taxation all state employees, it must likewise exempt all federal employees. Conversely, if the State decides to exempt only a narrow subset of state retirees, the State can . . . exempt[] only the comparable class of federal retirees." *Id.* Here, HB 1470's plain text applies to any private detention facility regardless of the government it contracts with. *See* RCW 70.395.020(7). While it contains some exemptions, HB 1470 explicitly (and repeatedly) exempts facilities under "similarly applicable federal law." *See* RCW 70.395.100(1)-(4). That is all intergovernmental immunity requires. *Cf. GEO Group, Inc. v. Newsom*, 15 F.4th 919, 938 (9th Cir. 2021) *vacated on other grounds*, 50 F.4th 745 (9th Cir. 2022) (concluding a state law

DEFENDANTS' OPPOSITION TO GEO'S
MOTION FOR FINAL JUDGMENT
NO. 3:23-CV-05626-BHS

9

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

banning private prisons violated intergovernmental immunity where it "provided no comparable exceptions for the federal government").

In its preliminary injunction order, this Court observed HB 1470's intent section explicitly refers to *GEO Group, Inc. v. Newsom*. Dkt. 35 at 31. But that reference, which accurately quotes a general legal principle regarding private contractors from an en banc court, does not render HB 1470's text discriminatory. Read in its entirety, HB 1470's intent section shows the Legislature recognized "[s]afety risks and abuses in private prisons and detention facilities at the *local, state,* and federal level," i.e., at all levels of government, and, in enacting HB 1470, sought to address concern that "profit motives" lead private facilities to cut operational costs and that private facilities are "less accountable . . . than state-run facilities." *See* RCW 70.395.100 (emphasis added). Certainly the NWIPC was included within the Legislature's concern as a private detention facility that is profit-motivated and less accountable, but HB 1470's scope is not limited to NWIPC alone—it applies to all private facilities "operating pursuant to a contract or agreement with a federal, state, or local governmental entity." RCW 70.395.020(7). And the quote itself from *Newsom* merely states a broad proposition that "[p]rivate contractors do not stand on the same footing as the federal government, so states can impose many laws on federal contractors that they could not apply to the federal government itself." 50 F.4th 745, 750 (9th Cir. 2022) (en banc). *See* RCW 70.395.010(1). Because it is the "letter of the law" that matters, *Dawson*, 139 S. Ct. at 704, there is no impermissible discrimination here. *See Trump v. Hawaiʻi*, 585 U.S. 667, 702 (2018) (upholding a travel ban after observing the issue before the Court was not to "denounce" Trump's anti-Muslim statements, but instead evaluate "the significance of those statements in reviewing a Presidential directive, neutral on its face").

GEO's concern seems to center around the fact that there is only one private detention center in Washington, NWIPC. But this factual status doesn't show the law is discriminatory. If there *were* other private detention centers they would be treated the same. And also, as discussed

DEFENDANTS' OPPOSITION TO GEO'S
MOTION FOR FINAL JUDGMENT
NO. 3:23-CV-05626-BHS

10

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

more fully below, the comparator should not be cast narrowly. The regulation brings private detentions up to parity with other congregate facilities, including the publicly-run Special Commitment Center, and privately-run residential facilities like enhanced service facilities, adult family homes, assisted living facilities, nursing homes, transient accommodations, and migrant farmworker housing facilities. This is not discrimination—it is bringing private facilities up to the general safety and health standards. Washington doesn't discriminate when it seeks to have those in private facilities in Washington protected from the kind of abuses seen at the NWIPC.

## 2.    Even if HB 1470 did single out the NWIPC, that is not enough for impermissible discrimination

Even if HB 1470's plain text *did* focus on the NWIPC alone, which it does not, a legislature's discriminatory intent alone cannot create an intergovernmental immunity problem. The Court need look no further than *Washington v. United States* and *United States v. California* to confirm this basic point. In *Washington*, the Supreme Court upheld a state tax that explicitly targeted those "'engaged in the business of constructing, repairing . . . or improving new or existing buildings . . . of or for the United States.'" 460 U.S. 536, 539 n.3 (1983). There, rather than focus on the Legislature's intent, the Supreme Court looked at "'the whole tax structure of the state,'" *id.* at 542 (quoting *Phillips Chem. Co. v. Dumas Indep. Sch. Dist.*, 361 U.S. 376, 383 (1960)), and reasoned Washington "ha[d] not singled out contractors who work for the United States for discriminatory treatment," but instead "merely accommodated for the fact that it may not impose a tax directly on the United States as the project owner," *id.* at 546.

In *United States v. California*, the Ninth Circuit upheld three different state laws that were "expressly designed to protect its residents from federal immigration enforcement," 921 F.3d 865, 872 (9th Cir. 2019), *cert. denied*, 141 S. Ct. 124 (2020), including AB 103, a law that authorized the California Attorney General to inspect detention facilities housing civil immigration detainees and evaluate, among other things, "'the conditions of confinement'" as well as "'the standard of care and due process provided.'" *Id.* at 876. Even though AB 103

DEFENDANTS' OPPOSITION TO GEO'S
MOTION FOR FINAL JUDGMENT
NO. 3:23-CV-05626-BHS

11

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

"relate[d] exclusively to federal conduct," the Ninth Circuit reasoned that intergovernmental immunity "is not implicated when a state merely references or even singles out federal activities in an otherwise innocuous enactment." *Id.* at 881. In other words, "the mere fact that the actions of the federal government are incidentally *targeted* . . . does not mean that they are incidentally *burdened*." *Id.* at 880.

The same is true here. HB 1470 does not incidentally burden federal contractors because it plainly applies with equal force to state and local contractors. Although this Court's preliminary injunction order concluded that the proper comparator to private detention facilities was not state contractors but publicly-run facilities instead, that decision was made in error. In *GEO Group, Inc. v. Newsom*, the Ninth Circuit sitting en banc explicitly stated: "[p]rivate contractors do not stand on the same footing as the federal government, so states can impose many laws on federal contractors that they could not apply to the federal government itself." 50 F.4th 745, 750 (9th Cir. 2022). Nor does *California* suggest anything different. The law at issue in *California* authorized inspections of *all* immigration detention facilities, regardless of whether they were publicly or privately operated. 921 F.3d at 872. So *California* understandably identified state prisons and jails as the similarly situated comparators. In contrast, HB 1470 does not target immigration detention: its focus is *private* detention facilities. In other words, HB 1470 does not extend to the Federal Detention Center in Seatac and would not extend to state and local facilities if they housed immigration detainees (which they don't). *Dawson* makes clear that intergovernmental immunity only requires HB 1470 apply to the "narrow subset" of similarly situated facilities, i.e., private detention facilities that contract with the state. *Dawson*, 139 S. Ct. at 703-04.

Finally, the problem with comparing private contractors with state and local governments, as the Court did in issuing its preliminary injunction, is evidenced through a real world example. Private contractors (whether they contract with the federal government, state government, or both) are subject to taxes that Washington, including its Department of

DEFENDANTS' OPPOSITION TO GEO'S
MOTION FOR FINAL JUDGMENT
NO. 3:23-CV-05626-BHS

12

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

Corrections, is exempt from. For example, private contractors that own taxable real property, like GEO or Boeing, are subject to real estate taxes—while state and local governments that own real property are exempt. *Compare* RCW 84.40.020 (imposing property taxes unless an exemption applies) *with* RCW 84.36.010(1) (exempting the state from taxes). The implication of the Court's analysis is that private businesses must be treated like state governments and, therefore, must be exempt from the property tax by virtue of its contract with the federal government. That simply cannot be. Since HB 1470 applies to GEO based on its status as a private detention facility, not its status as a federal contractor, state-run facilities are not the proper comparator. There is no impermissible discrimination here.

### 3. Federal contractors are not discriminated against because no state contractor is treated more favorably

Relatedly, HB 1470 does not violate intergovernmental immunity because GEO "cannot identify any actors 'similarly situated' to the federal government that receive more favorable treatment[.]" *McHenry County v. Kwame Raoul*, 44 F.4th 581, 594 (7th Cir. 2022). In fact, federal contractors are *better off* than state contractors, who are not allowed to operate in Washington at all. *See* RCW 70.395.030. If anything, state law treats the state *less* favorably, subjecting itself to a more stringent standard than the federal government.

Regardless, intergovernmental immunity does not turn on the happenstance of whether another private detention facility presently has a contract with a state or local government. *See United States v. Hynes*, 20 F.3d 1437, 1441 (7th Cir. 1994) (concluding a property tax on the federal government did not violate intergovernmental immunity where "the record [wa]s not . . . clear whether state or local governments . . . are in fact [similarly] acquiring property" and also taxed); *id.* (concluding no intergovernmental immunity problem even assuming that there were "no such instances and that there may be some number of instances where state or local government[s]" acquire property similar to the federal government but do not pay the same tax). If that were true, Washington would have no authority to regulate private detention facilities at

DEFENDANTS' OPPOSITION TO GEO'S
MOTION FOR FINAL JUDGMENT
NO. 3:23-CV-05626-BHS

13

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1    all—despite legislative findings that private facilities "cut costs" and incur more safety and

2    security incidents than public institutions. Indeed, GEO is currently arguing in *State of*

3    *Washington Department of Health v. The GEO Group, Inc.*, No. 3:24-cv-0529-BHS and

4    *Department of Labor & Industries of the State of Washington v. GEO Secure Services, LLC*,

5    No. 3:24-cv-05095-BHS, that it need not even comply with Washington's most basic workplace

6    safety and public health laws.

7         The Court's preliminary injunction order rejected the suggestion that Defendants could,

8    because of Washington's prohibition on state and local governments contracting with private

9    facilities, "impose any burdens it wants on private immigration detention facilities short of

10   prohibiting them altogether." Dkt. 35 at 32. But that is not Defendants' argument. The Ninth

11   Circuit's *en banc* decision in *Newsom*, Washington recognizes there are limits to the burdens it

12   can impose on federal contractors. For example, it cannot shut them down. *Newsom*, 50 F.4th at

13   755. But, while Washington cannot impose laws on private detention facilities that would

14   "control" federal operations or where an immigration detainee may be confined, *Newsom* also

15   made clear that there is "considerable room" for states to enforce their generally applicable health

16   and safety laws against federal contractors. *Id.* That is exactly what HB 1470 does.

17        Section 2 of HB 1470 duplicates regulations that apply to residential treatment facilities.

18   *Compare* RCW 70.395.040 *with* WAC 246-337-001, -112, -128, -060, -135. Although the

19   Court's preliminary injunction order distinguished residential treatment facilities because they

20   are typically voluntary, HB 1470's basic health and safety requirements for private detention

21   facilities are no different (if not, less onerous) than those that apply to psychiatric facilities at

22   which patients are involuntarily detained. *See* WAC 246-322-120 (requiring ventilation,

23   "heating system[s for] . . . comfortable, healthful temperature"), -100 ("infection control"), -140,

24   -160, -230 (requiring "well-balanced meals," "nourishing snacks" and foods "that contribute to

25   nutritional requirements"), -240 (requiring "storage and sorting areas for soiled laundry in well-

26   ventilated areas"). *See also* WAC 246-322-035 (requiring psychiatric hospitals to comply with

DEFENDANTS' OPPOSITION TO GEO'S
MOTION FOR FINAL JUDGMENT
NO. 3:23-CV-05626-BHS

14

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1    requirements under the Involuntary Treatment Act, i.e., RCW 71.05 and 71.34). In fact, those

2    held under the Involuntary Treatment Act are more similar to the immigration detainees at the

3    NWIPC than those in prisons because they, too, are held civilly and not based on any criminal

4    conviction. *See* RCW 71.05.730 (referring to ITA cases as "civil commitment cases").

5         Nor does Section 3 of HB 1470 incidentally burden the NWIPC. Section 3 likewise

6    repeats the authority of L&I and DOH to conduct inspections of all workplaces and all places in

7    Washington. *See* RCW 43.70.170, RCW 49.17.070. *See also* Final Bill Report on HB 1470, at 2,

8    https://lawfilesext.leg.wa.gov/biennium/2023-24/Pdf/Bill%20Reports/House/1470-

9    S2%20HBR%20FBR%2023.pdf?q=20240423161507 (recognizing certain state agencies have

10   authority to conduct unannounced inspections of facilities that are licensed by those agencies).

11   Although the Court's preliminary injunction order observed HB 1470 goes further and *requires*

12   unannounced inspections of private detention facilities, DOH and L&I are also routinely

13   *required* to inspect a panoply of facilities for compliance with its regulations and often does so

14   unannounced. *See, e.g.*, WAC 246-322-025(3)(b), (c) (confirming DOH "*shall* [c]onduct onsite

15   inspections at any time" of psychiatric hospitals for compliance with its regulations (emphasis

16   added)); WAC 246-324-025(3)(b) (same as to private alcohol and chemical dependency

17   hospitals); WAC 246-360-035 (requiring both announced and unannounced surveys of homeless

18   shelters); WAC 246-337-021 (providing for unannounced surveys of residential treatment

19   facilities); RCW 19.28.101 (requiring L&I to inspect electrical work done in "any building or

20   premises"); WAC 296-900-12005 (setting standards for "unprogrammed" workplace safety

21   inspections). In fact, while Section 3 specifically authorizes inspections of work undertaken by

22   detained persons, the state supreme court recognizes workplace safety laws can apply equally to

23   inmate labor for the Department of Corrections (DOC) too. *See Nat'l Elec. Contractors Ass'n v.*

24   *Riveland*, 978 P.2d 481, 490 (Wash. 1999) (concluding DOC, having adopted the Washington

25   Industrial Safety and Health Act, must comply with it even when employing inmates to do the

26   work).

1    Section 2 also authorizes DOH to adopt rules that apply to private detention facilities.

2    But that again is no different from what DOH has done with respect to a panoply of other

3    facilities. *See* WAC 246-302 through -390 (DOH's regulations for psychiatric hospitals,

4    childbirth centers, residential treatment facilities, homeless shelters and more). While Section 6

5    of HB 1470 also imposes civil penalties for non-compliance, DOH has similar authority to

6    impose fines on other facilities for non-compliance with its regulations. *See, e.g.*, WAC 246-

7    322-025(6) (authorizing civil fines of up to $10,000 per violation). Regardless, even if

8    HB 1470's imposition of a private right of action and civil penalty structures are not identical to

9    other facilities, that makes sense—other facilities are subject to a much more stringent

10   enforcement mechanism, i.e., DOH's authority to deny and suspend their license or ability to

11   operate at all. *See, e.g.*, WAC 246-337-021(6). Although a similar licensing requirement on a

12   federal contractor would be prohibited, *see Johnson v. Maryland*, 254 U.S. 51 (1920), the

13   imposition of monetary penalties on a federal contractor poses no similar threat to the federal

14   government's operations.

15        In sum, HB 1470 does not single out GEO for less favorable treatment. HB 1470 is a

16   generally applicable health and safety law that applies to all private detention facilities. GEO is

17   not unduly burdened because it, too, must comply with basic health and safety laws. To the

18   extent the Court *does* observe discrepancies between HB 1470's requirements and those imposed

19   on other facilities, that provides a reason to enjoin those provisions only—and not HB 1470 writ

20   large. *See California*, 921 F.3d at 885 (upholding AB 103 except for a single provision that

21   unduly burdened the federal government).

22        **4.      There is no impermissible discrimination even when considering state and
              locally-run facilities**

23

24        As discussed above, state-run and local-run prisons and detention facilities are not the

25   proper comparator to the NWIPC. While prisons and jails are part of the *criminal* process,

26   immigration detention is civil in nature. *See Wong Wing v. United States*, 163 U.S. 228, 238

(1896). Although the Court suggested immigration detention is meant to "prevent people suspected of illegally entering into or residing in the country from escaping," Dkt. 35 at 36, federal law makes clear that detention is for those awaiting administrative review of their immigration status. *See* 8 U.S.C. § 1226. Indeed, many detainees have *not* entered the country illegally—for example, they are asylum seekers, green card holders, and Deferred Action for Childhood Arrivals (DACA) recipients. *See* 8 U.S.C. § 1101(a)(3) (defining "aliens" as "any person not a citizen or national of the United States"); *see also* Transactional Records Access Clearinghouse Immigration, *Legal Noncitizens Receive Longest ICE Detention* (June 3, 2013), https://trac.syr.edu/immigration/reports/321/#f1 (reporting that those who are in immigration detention the longest are often those who are legally entitled to remain in the United States because those who do not voluntarily depart within days).

But, even if the Court were to look to state-run prisons and jails, HB 1470 does not incidentally burden the NWIPC. Run by the Department of Social Health and Services, the Special Commitment Center civilly detains those determined to be a "sexually violent predator" and is subject to extensive oversight, including from an external ombudsmen, Washington State Patrol, and its regulations require the facility be inspected annually. *See* WAC 388-881-010, -015, -020, -025, -030, -035. As required by RCW 72.09.135, DOC has adopted standards "relating to health, safety, and welfare of inmates and staff." As such, DOC requires that its inmate work programs "adhere to relevant federal and state safety laws" and provide inmates "a safe and healthy workplace[.]" *See* WAC 137-80-070. DOC's regulations and operational policies require exchange of lost or unserviceable clothing, DOC Policy No. 440.050, safe food handling and nutritional meals, DOC Policy No. 240.100, and personal hygiene items, WAC 137-55-030. DOC also maintains a safety program, which requires inspections, to ensure a safe environment for employees and inmates. DOC Policy No. 890.000. Additionally, DOC has set forth "conditions of confinement" in administrative segregation, which require that inmates be "[c]onfined in an adequately lighted and ventilated environment at a reasonably

DEFENDANTS' OPPOSITION TO GEO'S
MOTION FOR FINAL JUDGMENT
NO. 3:23-CV-05626-BHS

17

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1  comfortable temperature," "[p]rovided access to personal hygiene items," and "[p]rovided

2  exchange of clothing . . . at least three times per week," among other things. *See* WAC 137-32-

3  030. In other words, HB 1470's health and safety standards are not burdensome—they are basic

4  and largely equivalent to those that are required of state prisons. HB 1470 does not impermissibly

5  discriminate against GEO, the Supremacy Clause is not violated, and no final judgment should

6  issue.

7  **D.      GEO Cannot Show Irreparable Harm Absent an Injunction**

8          GEO cannot show "it has suffered an irreparable injury" entitling it to a permanent

9  injunction. *eBay*, 547 U.S. at 391. If anything the State itself will suffer irreparable harm if

10  HB 1470 is permanently enjoined. *See Maryland v. King*, 567 U.S. 1301, 1303 (2012) ("[A]ny

11  time a State is enjoined by a court from effectuating statutes enacted by representatives of its

12  people, it suffers a form of irreparable injury." (Rehnquist, J., in chambers) (brackets in original)

13  (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S 1345, 1351 (1977))).

14          First, an alleged violation of the Supremacy Clause—without more—does not trigger a

15  presumption of irreparable harm. *See, e.g.*, *Poder in Action v. City of Phoenix*, 481 F. Supp. 3d

16  962, 979 (D. Ariz. 2020) (plaintiffs "cannot meet their burden of establishing a likelihood of

17  irreparable harm simply by noting that they are raising a preemption challenge"); *Great N. Res.,*

18  *Inc. v. Coba*, No. 3:20-CV-01866-IM, 2020 WL 6820793, at *3 (D. Or. Nov. 20, 2020) (rejecting

19  arguments of per se irreparable injury for constitutional claims and collecting Circuit cases

20  requiring something more).

21          Second, GEO cites *American Trucking Ass'ns, Inc. v. City of Los Angeles*, which requires

22  that a constitutional violation be "coupled with . . . damages incurred" to show irreparable harm.

23  559 F.3d 1046, 1058 (9th Cir. 2009). But GEO does not establish that economic damages are

24  impending or have occurred. At the preliminary injunction stage, GEO submitted a witness

25  declaration lamenting that complying with Section 2 of HB 1470 could cost GEO $3 million to

26  upgrade its HVAC system. Dkt. 9, ¶ 8. But Section 2 does not require *GEO* to do anything with

DEFENDANTS' OPPOSITION TO GEO'S
MOTION FOR FINAL JUDGMENT
NO. 3:23-CV-05626-BHS

18

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

its HVAC system, but instead requires *DOH* to promulgate rules about HVAC systems in private

detention facilities. HB 1470, § 2. Again, DOH's rulemaking is in its infancy, and likely will not

be completed for several more months. *See supra* at pp. 6-7. The final form those rules take is

yet to be determined (and wouldn't be enforced against GEO until the preliminary injunction is

lifted). GEO's assertion assumes DOH will adopt a particular requirement for temperature

adjustment by room only, rather than by room or area, may not come to pass. So until the rules

are near adoption, any assertion of a conflict requiring GEO to pay money to change its HVAC

system is pure speculation.

GEO's central argument is that an alleged constitutional violation is enough to merit

relief—full stop. But the Ninth Circuit has rejected "general pronouncements that a Supremacy

Clause violation alone constitutes a sufficient harm to warrant an injunction." *California*, 921

F.3d at 894. So, GEO cannot establish its harms are actual or imminent, and thus cannot show

they're irreparable. GEO is not entitled to a permanent injunction.

## E.    The Balance of Equities and Public Interest in Ensuring Humane Detention Weigh Heavily Against GEO's Requested Injunction

The final two *eBay* factors—the balance of the equities and the public interest—also

weigh against granting GEO's permanent injunction.

### 1.    Private detention facilities harm detainee health, safety, and security

Concerns about the health and safety impacts of profit-based incarceration are central to

this Court's inquiry into equity and the public interest. As the Ninth Circuit confirmed, "health

and safety" risks to immigrant detainees are a critical part of the injunction analysis in suits

involving conditions at private detention facilities. *Roman v. Wolf*, 977 F.3d 935, 942-44 (9th

Cir. 2020). That is because "adverse effects on the health and welfare of the immigrant as well

as general population" are inconsistent with the "equities and public interest[.]" *City & County

of San Francisco v. U.S. Citizenship & Immigr. Servs.*, 981 F.3d 742, 762 (9th Cir. 2020). Indeed,

evidence of "'egregious conditions in facilities housing civil detainees'" should weigh

DEFENDANTS' OPPOSITION TO GEO'S
MOTION FOR FINAL JUDGMENT
NO. 3:23-CV-05626-BHS

19

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

significantly in the analysis. *California*, 921 F.3d at 894; *see also Roman*, 977 F.3d at 944 (concluding "that the equities and public interest tipped in . . . favor" of immigrant detainees challenging facility's failure to implement COVID protocols, "particularly in light of the lack of criminal records of many of the detainees and the alternative means available to prevent them from absconding if they were released, such as electronic monitoring[ ]").

As the Defendants set out in their opposition brief to GEO's preliminary injunction, private detention (1) increases the risk of physical danger to detainees; (2) leads to medical neglect; (3) leaves unaddressed major problems like unsafe food; (4) fails to provide sufficient hygiene supplies or clean clothes; and (5) leads to improper use of solitary confinement. *See* Dkt. 18 at 22-31. Indeed, concerns about detainee health and welfare have only increased during the pendency of this case. In March 2024, ICE reported the death of Charles Leo Daniel, a 61-year-old man who died in GEO's custody[3] after being "held in solitary confinement for virtually the entirety of his nearly four years at the Northwest Detention Center."[4] And within a few short months this year, at least six suicide attempts have occurred at the NWIPC.[5]

Given the significant risks to detainee safety at the NWIPC consistently and for many years, equity and the public interest weigh against permanently enjoining HB 1470 as to GEO.

### 2. Equity and the public interest favor improved transparency, accountability, and oversight of detention facilities

Permanently enjoining HB 1470, Sections 2, 3, 5, and 6, also runs counter to the public's interest in accountability. Improved public oversight and accountability further the public interest. *See, e.g.*, *Valentine v. Collier*, 978 F.3d 154, 166 (5th Cir. 2020) ("the public interest favors having politically accountable officials . . . determine how to allocate resources[ ]" in the

---

[3] *See* U.S. Immigration & Customs Enforcement, *Trinidad and Tobago National in ICE Custody Dies at NWIPC*, Mar. 11, 2024, https://www.ice.gov/news/releases/trinidad-and-tobago-national-ice-custody-dies-nwipc.

[4] Univ. of Wash. Ctr. for Human Rights, *NWDC Conditions Research Update: Charles Leo Daniel's Death at NWDC in Context*, Mar. 15, 2024, https://jsis.washington.edu/humanrights/2024/03/15/nwdc-conditions-research-update-daniel-death-in-context/.

[5] Univ. of Wash. Ctr. for Human Rights, *Press Release: 911 Calls Reveal Suicide Attempts at NWDC*, Apr. 9, 2024, https://jsis.washington.edu/humanrights/2024/04/09/press-release-911-calls-reveal-suicide-attempts-at-nwdc/.

DEFENDANTS' OPPOSITION TO GEO'S
MOTION FOR FINAL JUDGMENT
NO. 3:23-CV-05626-BHS

20

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

prison context); *Conn. State Police Union v. Rovella*, 494 F. Supp. 3d 210, 224-25, 230 (D. Conn. 2020) (denying preliminary injunction because public interest and equity supported "the state's salutary efforts to enhance transparency and promote accountability in law enforcement[ ]"); *Nat'l Head Start Ass'n v. Dep't of Health & Hum. Servs.*, 297 F. Supp. 2d 242, 251 (D.D.C. 2004) (denying temporary restraining order where granting it would thwart "[t]he public['s] . . . strong interest in the effective and transparent administration of [taxpayer-funded] programs[ ]"). But the Legislature has found "that private prisons and detention centers are less accountable for what happens inside those facilities than state-run facilities." RCW 70.395.010(5).

HB 1470 benefits transparency and accountability by allowing more daylight into detention facilities—including at the NWIPC. GEO's recordkeeping has been glaringly poor, making it difficult for regulators to confirm that detainees are safe and well. For example, "a comparison of internal and external data reveals that as many as 86% of [NWIPC] solitary placements during a one year period were neither logged in ICE's monitoring system nor reported to the public."[6] GEO also has a poor record of documenting and responding to detainee grievances, even though the NWIPC "had the highest grievance volume of the facilities [ICE] inspected" in 2019.[7] GEO itself will not even turn over grievances or other records about its operations—it "decline[s] to respond to FOIA requests, citing its status as a private company."[8] Of course, the DHS Inspector General has access to GEO's records, and that office concluded that GEO violates ICE's requirements for "maintain[ing] grievance logs," that almost half of

---

[6] Univ. of Wash. Ctr. for Human Rights, *Human Rights Conditions in the Northwest Detention Center* at 33 (Mar.-Dec. 2020), https://jsis.washington.edu/humanrights/projects/human-rights-at-home/conditions-at-the-northwest-detention-center/ (filed at Dkt. 19-1).
[7] U.S. DHS, Off. of the Inspector Gen., *Capping Report: Observations of Unannounced Inspections of ICE Facilities in 2019* at 8 (July 1, 2020), https://www.oig.dhs.gov/sites/default/files/assets/2020-07/OIG-20-45-Jul20.pdf.
[8] *Human Rights Conditions in the Northwest Detention Center*, *supra* note 6, at 37.

DEFENDANTS' OPPOSITION TO GEO'S
MOTION FOR FINAL JUDGMENT
NO. 3:23-CV-05626-BHS

21

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

detainee grievances received no response during the mandatory five-day response window, and that almost a third went unaddressed far longer.[9]

But the DHS Inspector General's visit to the NWIPC is a rare event, and ICE itself inspects only "[a]bout once every 3 years."[10] More often, inspections are conducted by one of ICE's contract inspectors. The DHS Inspector General itself is skeptical of ICE's contract inspectors, and cited "examples of inspectors contracted by ICE submitting false information that made detention facilities look like they were following regulations when they weren't," private facilities "failing to notify ICE about alleged or proven sexual assaults," and contract staff "conducting strip searches with no reasonable suspicion."[11] Indeed, ICE's own employees express the view that inspections conducted by private contractors are "useless" and "very, very, very difficult to fail."[12]

And GEO continues to block DOH and L&I from its private facility, even though such inspections are authorized under generally applicable, non-discriminatory state laws. *See Dep't of Health v. The GEO Group, Inc.*, No. 3:24-cv-05029; *Dep't of Lab. & Indus. v. GEO Secure Sers., LLC*, No. 3:24-cv-05095-BHS. GEO's on-going blockade makes clear that what GEO is *really* trying to avoid is the potential cost in being held accountable to meet basic standards of humane confinement. But those alleged costs are enormously speculative, and in any event when "[f]aced with . . . a conflict between financial concerns and preventable human suffering, [courts] have little difficulty concluding that the balance of hardships tips decidedly in . . . favor"

---

[9] *Capping Report: Observations of Unannounced Inspections of ICE Facilities in 2019*, *supra* note 7, at 7-8.

[10] U.S. DHS, Off. of the Inspector Gen., *ICE's Inspections and Monitoring of Detention Facilities Do Not Lead to Sustained Compliance or Systemic Improvements* at 3 (July 26, 2018), https://www.oig.dhs.gov/sites/default/files/assets/2018-06/OIG-18-67-Jun18.pdf.

[11] Bob Ortega, *Migrants Describe Hunger and Solitary Confinement at For-Profit Detention Center*, CNN Investigates (updated July 11, 2018), https://www.cnn.com/2018/07/11/us/northwest-immigrant-detention-center-geo-group-invs/index.html.

[12] *ICE's Inspections and Monitoring of Detention Facilities Do Not Lead to Sustained Compliance or Systemic Improvements*, *supra* note 10, at 7-8 & n.12.

DEFENDANTS' OPPOSITION TO GEO'S MOTION FOR FINAL JUDGMENT NO. 3:23-CV-05626-BHS

22

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1    of avoiding "physical and emotional suffering." *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th

2    Cir. 1983).

3        Taken together, the poor recordkeeping, lack of records access, and unreliable and

4    blocked inspections mean that lawmakers, state and local regulators, and the public are in the

5    dark about what goes on inside private detention facilities. HB 1470 furthers the public interest

6    by increasing facility accountability.

7        GEO's desire to avoid oversight does not outweigh the State's interest in protecting the

8    health and safety of detainees, the public's interest in transparency, or the sovereign right of the

9    people to govern.

10   F.    **The Court Should Not Convert the Preliminary Injunction into a Permanent One Because it is Overly Broad**

11

12       If the Court is inclined to grant GEO's motion for a permanent injunction (which it should

13   not), the State Defendants incorporate the arguments they raised regarding the scope of the

14   overly broad preliminary injunction. Any injunction from this Court should encompass only the

15   sections of the law for which the State Defendants have actual enforcement authority and

16   specifically name Governor Inslee and Attorney General Ferguson and others permissibly bound

17   under Rule 65. *See* Dkt. 37 at 5-8; Dkt. 41 at 4-6.

18                        **V.    CONCLUSION**

19       This Court should deny GEO's motion for a final judgment and a permanent injunction

20   or, alternatively, hold this briefing in abeyance until after the Ninth Circuit decides the State

21   Defendants' appeal of the Court's preliminary injunction.

22   / /

23   / /

24   / /

25   / /

26   / /

DATED this 29th day of April 2024.

I certify that this memorandum is 7,810 words, in compliance with the Local Civil Rules.

ROBERT W. FERGUSON
   *Attorney General*

*s/ Marsha Chien*
MARSHA CHIEN, WSBA 47020
CRISTINA SEPE, WSBA 53609
   *Deputy Solicitors General*
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200
Cristina.Sepe@atg.wa.gov
Marsha.Chien@atg.wa.gov

ANDREW R.W. HUGHES, WSBA 49515
   *Assistant Attorney General*
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
Andrew.Hughes@atg.wa.gov

*Attorneys for Defendants Governor Jay R. Inslee and Attorney General Robert W. Ferguson*

DEFENDANTS' OPPOSITION TO GEO'S
MOTION FOR FINAL JUDGMENT
NO. 3:23-CV-05626-BHS

24

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1

**CERTIFICATE OF SERVICE**

2

      I hereby declare that on this day I caused the foregoing document to be electronically

3

filed with the Clerk of the Court using the Court's CM/ECF System, which will serve a copy of

4

this document upon all counsel of record.

5

      DATED this 29th day of April 2024, at Olympia, Washington.

6

7

                            *s/ Kelsi Zweifel*
                           KELSI ZWEIFEL

8

                             *Confidential Secretary/Paralegal*
                           1125 Washington Street SE

9

                           PO Box 40100
                           Olympia, WA 98504-0100

10

                           (360) 753-4111
                           Kelsi.Zweifel@atg.wa.gov

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' OPPOSITION TO GEO'S     25     ATTORNEY GENERAL OF WASHINGTON
MOTION FOR FINAL JUDGMENT                 1125 Washington Street SE
NO. 3:23-CV-05626-BHS                       PO Box 40100
                                         Olympia, WA 98504-0100
                                         (360) 753-6200