The Honorable Benjamin H. Settle

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

THE GEO GROUP, INC.,

Plaintiff,

v.

ROBERT W. FERGUSON, in his official capacity as Governor of the State of Washington; NICHOLAS W. BROWN, in his official capacity as Attorney General of the State of Washington,

Defendants.

NO. 3:23-cv-05626-BHS

DEFENDANTS-COUNTERCLAIMANTS' MOTION FOR PRELIMINARY INJUNCTION

NOTE ON MOTION CALENDAR: MAY 26, 2026

ORAL ARGUMENT REQUESTED

**TABLE OF CONTENTS**

I.      INTRODUCTION.........................................................................................................1

II.     FACTS ......................................................................................................................1

        A.   GEO Sued to Enjoin HB 1470, but the Ninth Circuit Rejected Its Challenge ..........1

        B.   Following the Ninth Circuit's Reversal of the Preliminary Injunction, GEO
             Continues to Block Access to Its Tacoma Facility ....................................................5

III.    ARGUMENT .............................................................................................................6

        A.   Standard of Review...................................................................................................6

        B.   The State Is Likely to Succeed on the Merits Because GEO Is Violating
             Washington Law by Denying Inspection of Its Tacoma facility .............................7

             1.   GEO's refusal to permit Department of Health inspectors into its Tacoma
                  facility plainly violates Wash. Rev. Code § 70.395.050(2)(b).........................7

             2.   GEO has no defense to justify its disregard for Washington law .....................7

        C.   The State Will Be Irreparably Harmed Absent an Injunction ................................10

             1.   The State is being denied access to investigate complaints relating to
                  water, food, and air quality...............................................................................11

             2.   The State is being denied access to investigate complaints relating to
                  cleanliness, laundry, and living conditions .......................................................11

             3.   The State is being denied access to investigate complaints of lack of
                  attention to medical needs and assaults.............................................................12

        D.   Balance of Equities ................................................................................................13

             1.   Equity and the public interest favor ensuring the health, safety, and
                  security of people detained in private detention facilities................................13

                  a.   Private detention facilities increase the risk of assault ...........................14

                  b.   Private detention facilities lead to medical neglect .................................14

                  c.   Private detention facilities lead to unsafe and insufficient food
                       problems...................................................................................................16

                  d.   Private detention facilities lead to unsanitary conditions and lack of
                       hygiene supplies for the people detained.................................................19

             2.   Equity and the public interest favor improved transparency,
                  accountability, and oversight of detention facilities........................................19

IV.     CONCLUSION ........................................................................................................21

DEFENDANTS-COUNTERCLAIMANTS'
MOTION FOR PRELIMINARY
INJUNCTION
NO. 3:23-cv-05626-BHS

.

i

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

## TABLE OF AUTHORITIES

### <u>Cases</u>

*City & County of San Francisco v. U.S. Citizenship & Immigr. Servs.*,
  981 F.3d 742 (9th Cir. 2020) ................................................................... 13

*Conn. State Police Union v. Rovella*,
  494 F. Supp. 3d 210 (D. Conn. 2020) ...................................................... 19

*Dawson v. Steager*,
  586 U.S. 171 (2019) ................................................................................... 8

*Drakes Bay Oyster Co. v. Jewell*,
  747 F.3d 1073 (9th Cir. 2014) ................................................................. 13

*Maryland v. King*,
  567 U.S. 1301 (2012) ............................................................................... 10

*Nat'l Head Start Ass'n v. Dep't of Health & Hum. Servs.*,
  297 F. Supp. 2d 242 (D.D.C. 2004) ......................................................... 20

*Nwauzor v. The GEO Group, Inc.*,
  127 F.4th 750 (9th Cir. 2025) ................................................................ 3, 8

*Roman v. Wolf*,
  977 F.3d 935 (9th Cir. 2020) ................................................................... 13

*The GEO Group, Inc. v. Inslee*,
  151 F.4th 1107 (9th Cir. 2025) .......................................................... passim

*United States v. California*,
  921 F.3d 865 (9th Cir. 2019) ........................................................ 8, 10, 13

*United States v. Washington*,
  596 U.S. 832 (2022) ................................................................................... 8

*Valentine v. Collier*,
  978 F.3d 154 (5th Cir. 2020) ................................................................... 19

*Washington Dep't of Health v. The GEO Group, Inc.*,
  No. 3:24-cv-05639 BHS, (W.D. Wash. Aug. 16, 2024) ............................. 3

*Washington v. City of Sunnyside*,
  3 Wash.3d 279 (2024) ................................................................................ 7

*Washington v. United States*,
  460 U.S. 536 (1983) ................................................................................... 8

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ....................................................................................... 6

DEFENDANTS-COUNTERCLAIMANTS'
MOTION FOR PRELIMINARY
INJUNCTION
NO. 3:23-cv-05626-BHS

.

ii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

**Statutes**

Wash. Rev. Code § 43.10.030 ................................................................................................ 7

Wash. Rev. Code § 43.70.170 ................................................................................................ 9

Wash. Rev. Code § 70.395.010(1) ....................................................................................... 10

Wash. Rev. Code § 70.395.010(5) ....................................................................................... 20

Wash. Rev. Code § 70.395.020(6) ......................................................................................... 2

Wash. Rev. Code § 70.395.050(1) ......................................................................................... 9

Wash. Rev. Code § 70.395.050(2)(a) ................................................................................... 10

Wash. Rev. Code § 70.395.050(2)(b) ............................................................................ 7, 9, 10

Wash. Rev. Code § 70.395.050(6) ......................................................................................... 7

Wash. Rev. Code § 71.12.455(3) ........................................................................................... 9

Wash. Rev. Code § 71.12.510 ........................................................................................... 9, 10

Wash. Rev. Code § 71.12.520 ........................................................................................... 9, 10

**Rules**

Fed. R. Civ. P. 65 ................................................................................................................. 6

Wash. Admin. Code § 246-322-025(3) ................................................................................... 9

Wash. Admin. Code § 246-322-120 ....................................................................................... 2

**Other Authorities**

Bob Ortega,
*Migrants describe hunger and solitary confinement at for-profit detention center*,
CNN Investigates (July 11, 2018),
https://www.cnn.com/2018/07/11/us/northwest-immigrant-
detention-center-geo-group-invs/index.html ........................................................................ 21

Engrossed Second Substitute HB 1232,
69th Leg. Reg. Sess. (Wash. 2025) ........................................................................................ 2

Freddy Monares,
*ICE releases identity of latest death at Tacoma detention center*,
KNKX Public Radio (Oct. 30, 2024),
https://www.knkx.org/social-justice/2024-10-30/immigration-customs-enforcement-
releases-identity-second-death-tacoma-nw-processing-detention-center ............................... 3

DEFENDANTS-COUNTERCLAIMANTS'
MOTION FOR PRELIMINARY
INJUNCTION
NO. 3:23-cv-05626-BHS

iii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

James Austin & Garry Coventry,
    U.S. DOJ, Off. of Just. Programs, Bureau of Just. Assistance,
    *Emerging Issues on Privatized Prisons* (Feb. 2001),
    https://www.ojp.gov/pdffiles1/bja/181249.pdf......................................................................... 14

John V. Kelly, Office of the Inspector General,
    *Concerns about ICE Detainee Treatment and Care at Four
    Detention Facilities* (June 3, 2019), https://www.oig.dhs.gov/sites/default/files/
    assets/2019-06/OIG-19-47-Jun19.pdf ................................................................................ 16

John V. Kelly, Office of the Inspector General,
    *ICE's Inspections and Monitoring of Detention Facilities Do Not Lead to Sustained
    Compliance or Systemic Improvements* (June 26 2018),
    https://www.oig.dhs.gov/sites/default/files/assets/
    2018-06/OIG-18-67-Jun18.pdf..................................................................................... 20, 21

Ken Klippenstein,
    *ICE Detainee Deaths Were Preventable: Document*, TYT (June 3, 2019),
    https://web.archive.org/web/20190619030205/http://tyt.com/stories/
    4vZLCHuQrYE4uKagy0oyMA/688s1LbTKvQKNCv2E9bu7h ........................................ 15

Letter from Rebecca Merton, National Independent Monitor for CIVIC & Christina
    Fialho, Co-Founder/Executive Director for CIVIC, to Thomas D. Homan, et al.,
    Director for Office of Detention Policy and Planning, ICE (Apr. 11, 2017),
    http://www.endisolation.org/wp-content/uploads/2017/05/
    CIVIC_SexualAssault_Complaint.pdf ...................................................................... 14

Melissa Hellmann,
    *Incarcerated and Infirmed: How Northwest Detention Center Is
    Failing Sick Inmates*, Seattle Weekly (Oct. 10, 2018),
    https://www.seattleweekly.com/news/incarcerated-and-infirmed-
    how-northwest-detention-center-is-failing-sick-inmates/...................................... 15

Multiple Agency Fiscal Note Summary, Engrossed Second Substitute HB 1232
    https://fnspublic.ofm.wa.gov/FNSPublicSearch/GetPDF?packageID=74955
    (last visited April 25, 2026) ................................................................................... 2, 8

Natalie Delgadillo,
    *Maggots With a Side of Dirt? What Privatization Does to Prison Food*,
    Governing.com (Jan. 26, 2018),
    https://www.governing.com/archive/gov-private-food-
    service-prisons-aramark-trinity-ohio-michigan.html............................................. 18

Seattle Univ. School of Law Int'l Human Rights Clinic & OneAmerica,
    *Voices from Detention: A Report on Human Rights Violations at the Northwest
    Detention Center in Tacoma, Washington* (July 2008),
    https://www.yumpu.com/en/document/read/48836345/voices-from-
    detention-a-report-on-human-rightsoneamerica ............................................. 17, 18

DEFENDANTS-COUNTERCLAIMANTS'
MOTION FOR PRELIMINARY
INJUNCTION
NO. 3:23-cv-05626-BHS

iv

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

.

Timothy Williams,
  *Inside a Private Prison: Blood, Suicide, and Poorly Paid Guards*,
  The N.Y. Times (Apr. 3, 2018),
  https://www.nytimes.com/2018/04/03/us/mississippi-private-prison-abuse.html................. 14

U.S. Dep't of Homeland Sec., Off. of Inspector Gen.,
  *Results of an Unannounced Inspection of Northwest ICE Processing Center in
  Tacoma, Washington 9-12* (May 22, 2023), https://www.oig.dhs.
  gov/sites/default/files/assets/2023-05/OIG-23-26-May23.pdf ............................................. 17

U.S. Dep't of Homeland Sec., Off. of the Inspector Gen.,
  *Capping Report: Observations of Unannounced Inspections of
  ICE Facilities in 2019* (July 1, 2020),
  https://www.oig.dhs.gov/sites/default/files/assets/2020-07/OIG-20-45-Jul20.pdf .............. 20

U.S. H.R., Comm. on Oversight and Reform and Subcomm.
  on Civil Rights and Civil Liberties,
  *The Trump Administration's Mistreatment of Detained Immigrants: Deaths and
  Deficient Medical Care by For-Profit Detention Contractors* (Sept. 2020),
  https://oversightdemocrats.house.gov/sites/democrats.oversight.house.gov/
  files/2020-09-24.%20Staff%20Report%20on%20ICE%20Contractors.pdf ................... 14, 15

Univ. of Wash. Ctr. for Human Rts.,
  *911 Call Logs Reveal Increase in Reports of Suicide Attempts at Northwest Detention
  Center in Tacoma, WA* (Apr. 9, 2024),
  https://jsis.washington.edu/humanrights/2024/04/09/press-release-
  911-calls-reveal-suicide-attempts-at-nwdc/ ........................................................................... 3

Univ. of Wash. Ctr. for Human Rts.,
  *Calls to nowhere: Reports of sexual abuse and assault go
  unanswered at the NWDC* (May 16, 2022),
  https://jsis.washington.edu/humanrights/2022/05/16/nwdc-assault-abuse-reporting/ ........... 14

Univ. of Wash. Ctr. for Human Rts.,
  *Conditions at the NWDC: Sanitation of Food & Laundry* (March 27, 2020),
  https://jsis.washington.edu/humanrights/2020/03/27/
  nwdc-sanitation-of-food-laundry/ ................................................................... 16, 19, 20

Univ. of Wash. Ctr. for Human Rts.,
  *Human Rights Conditions in the Northwest Detention Center* (April 16, 2020),
  https://jsis.washington.edu/humanrights/2020/04/16/nwdc-medical/ ............................ 15, 16

DEFENDANTS-COUNTERCLAIMANTS'
MOTION FOR PRELIMINARY
INJUNCTION
NO. 3:23-cv-05626-BHS

.

v

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

## I.    INTRODUCTION

After losing at the Ninth Circuit, The GEO Group is now openly defying Washington law. On March 4, the Ninth Circuit entered its mandate vacating the preliminary injunction against House Bill 1470 (HB 1470). Since the mandate issued, Washington's Department of Health has twice attempted to inspect GEO's Tacoma facility to investigate what is now more than *3,500* complaints alleging substandard conditions within the facility. These complaints paint a stunning portrait of neglect and outright cruelty—medical emergencies ignored, substandard and contaminated food, unsanitary conditions, and even assault by staff. But GEO has twice refused entry to Department inspectors, most recently on April 20. GEO's brazen disregard for Washington law is not only unlawful, it irreparably harms the State Defendants-Counterclaimants (the State) and the public interest by thwarting Washington's sovereign prerogative to protect the health and safety of people within its borders.

The State therefore requests a preliminary injunction to enjoin GEO from blocking the Department of Health from inspecting GEO's Tacoma facility.

## II.    FACTS

### A.    GEO Sued to Enjoin HB 1470, but the Ninth Circuit Rejected Its Challenge

In July 2023, GEO sued the State to enjoin enforcement of a then-newly enacted state law, HB 1470, which set basic public health and safety requirements for private detention facilities and directed Washington's Department of Health to inspect them. Dkt. # 1. Although this Court concluded that GEO's challenge to Section 4 was not ripe and that HB 1470 did not directly regulate the federal government and was not preempted, the Court nevertheless enjoined Sections 2, 3, 5, and 6 of HB 1470 (i.e., Wash. Rev. Code §§ 70.395.040, .050, .070, and .080, respectively). Wash. Rev. Code § 70.395.040 sets basic health and safety standards for private detention facilities, Wash. Rev. Code § 70.395.050 allows for unannounced health and safety inspections, and Wash. Rev. Code §§ 70.395.070 and .080 recognize a private right of action and civil penalties for any violation. The Court concluded those provisions violated the

DEFENDANTS-COUNTERCLAIMANTS'
MOTION FOR PRELIMINARY
INJUNCTION
NO. 3:23-cv-05626-BHS

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

discrimination prong of intergovernmental immunity on the theory that the requirements differed from those applicable to state prisons and jails and GEO's Tacoma facility was the only facility subject to its requirements. Dkt. # 35 at p. 32. The State appealed, arguing that HB 1470 did not discriminate against GEO because its requirements mirrored those that already apply to residential treatment facilities and similar facilities.

While the State's appeal of the preliminary injunction was pending, several events occurred. First, the Washington Legislature enacted House Bill 1232 (HB 1232), which amended several provisions of Wash. Rev. Code § 70.395. Relevant here, HB 1232 expanded the definition of "private detention facilities" to include both for-profit and non-profit organizations. *See* Engrossed Second Substitute HB 1232, 69th Leg. Reg. Sess. (Wash. 2025). As a result of the amendment, GEO's Tacoma facility is no longer the only "private detention facility" covered by the law. *See* Wash. Rev. Code § 70.395.020(6). Martin Hall Juvenile Detention Facility, for example, is now subject to Wash. Rev. Code § 70.395's requirements. Multiple Agency Fiscal Note Summary, Engrossed Second Substitute HB 1232, at 25–26, https://fnspublic.ofm.wa.gov/FNSPublicSearch/GetPDF?packageID=74955 (last visited April 25, 2026). Further, HB 1232 added substantive provisions to Wash. Rev. Code § 70.395.040 (i.e., Section 2) and Wash. Rev. Code § 70.395.050 (Section 3), requiring that private detention facilities accommodate detainees with physical and mental disabilities, ensure lighting and running water, and adequately equip utility areas and housekeeping closets. The added requirements were drawn directly from standards governing private psychiatric detention facilities. *See* Wash. Admin. Code § 246-322-120.

Second, there have now been over *3,500* complaints received by the Washington Department of Health (the Department) about the abhorrent conditions at GEO's Tacoma facility from people detained inside the facility. Declaration of Wendy Yomiko Nanto (Nanto Decl.) ¶ 4; *see also Washington Dep't of Health v. The GEO Group, Inc.*, No. 3:24-cv-05639 BHS, (W.D.

DEFENDANTS-COUNTERCLAIMANTS'
MOTION FOR PRELIMINARY
INJUNCTION
NO. 3:23-cv-05626-BHS

2

Wash. Aug. 16, 2024), Dkt. # 9 (Muñiz Declaration). Two people have died while detained inside the Tacoma facility[1] and six more have attempted suicide.[2]

Third, the Ninth Circuit issued its opinion in *Nwauzor v. The GEO Group, Inc.*, 127 F.4th 750 (9th Cir. 2025). There, GEO raised similar federal defenses for its failure to comply with Washington's minimum wage law and the Ninth Circuit rejected each one. Dispensing with GEO's direct regulation defense, the Ninth Circuit observed "[t]he government does not 'operate[] the detention facility,'" and Washington's minimum wage law did not interfere with the federal government's authority to use private contractors or otherwise control federal operations. *Id.* at 761–62. As for the discrimination prong of intergovernmental immunity, the Ninth Circuit recognized an exact comparator was unavailable because Washington does not rely on private contractors for its prisons, but still held there was no discrimination because Washington's minimum wage law treated private employers who would contract with the state and those who contract with the federal government equally. Specifically, the Ninth Circuit rejected the idea that the proper comparison was between public detention facilities and private ones, like GEO, noting that statutes and case law routinely distinguish between state regulation of government entities and private companies that contract with those entities. *Id.* at 765–67. Finally, the Ninth Circuit rejected GEO's preemption defenses because no federal law prohibited GEO from paying detainees Washington's minimum wage. *Id.* at 767–68.

Accordingly, in August 2025, the Ninth Circuit vacated the preliminary injunction in this case and remanded in part. The Ninth Circuit rejected GEO's claim that HB 1232's enactment mooted the appeal because "most of the questions presented to [the Ninth Circuit] remain[ed] unchanged by HB 1232." *The GEO Group, Inc. v. Inslee*, 151 F.4th 1107, 1113 (9th Cir. 2025).

---

[1] *See* Freddy Monares, *ICE releases identity of latest death at Tacoma detention center*, KNKX Public Radio (Oct. 30, 2024), https://www.knkx.org/social-justice/2024-10-30/immigration-customs-enforcement-releases-identity-second-death-tacoma-nw-processing-detention-center.

[2] S*ee* Univ. of Wash. Center for Human Rts., *911 Call Logs Reveal Increase in Reports of Suicide Attempts at Northwest Detention Center in Tacoma, WA* (Apr. 9, 2024), https://jsis.washington.edu/humanrights/2024/04/09/press-release-911-calls-reveal-suicide-attempts-at-nwdc/.

DEFENDANTS-COUNTERCLAIMANTS'
MOTION FOR PRELIMINARY
INJUNCTION
NO. 3:23-cv-05626-BHS

3

Additionally, the Ninth Circuit dismissed GEO's challenge to Wash. Rev. Code § 70.395.050, which creates a private right of action, concluding this claim was not justiciable in a lawsuit against the Governor and Attorney General. On the merits, the Ninth Circuit affirmed this Court's order dismissing GEO's direct regulation and preemption defenses, reasoning that Wash. Rev. Code § 70.395 did *not* give Washington virtual power of review over ICE detention facilities nor prevent ICE from detaining individuals at GEO's Tacoma facility. *Id.* at 1118. Regarding preemption, the Ninth Circuit "s[aw] no indication that Congress ha[d] demonstrated any intent, let alone a clear and manifest intent, to preempt Sections 2, 3, and 6 of HB 1470 and relevant portions of HB 1232." *Id.* at 1123. In other words, nothing in those sections prevents GEO from accomplishing any task that has been required by the federal government. *Id.* at 1124.

As for the discrimination prong, the Ninth Circuit concluded that the proper comparator was not state prisons or jails. *Id.* at 1119–20. While this Court had relied on *United States v. California*, 921 F.3d 865 (9th Cir. 2019), to compare immigration detention facilities to state prisons and jails, the Ninth Circuit concluded that *California*'s prison comparison did not control here. Instead, the Ninth Circuit recognized there is a "fundamental difference between civil detainees and those charged or convicted with crimes." *Id.* at 1119. Because the conditions of confinement are not "part of a penal regime," the Ninth Circuit concluded civil immigration facilities are more similar to civil detention facilities like residential treatment facilities or civil commitment centers, i.e., facilities where individuals are held in involuntary confinement, but not for punitive purposes. *Id.* at 1120. As such, the Ninth Circuit remanded for this Court to determine whether Washington regulates the conditions of confinement at GEO's Tacoma facility under Wash. Rev. Code § 70.395.040 differently from the way it regulates the conditions in civil detention facilities. *Id.* at 1122. Although the Ninth Circuit ultimately left it for this Court to make the comparison "in the first instance," it nevertheless observed that the vast majority of Wash. Rev. Code § 70.395.040's requirements appear to mirror those applicable to residential treatment facilities, i.e., Wash. Admin. Code §§ 246-337-001, -060, -111, -112, -124, -128, -135,

DEFENDANTS-COUNTERCLAIMANTS'
MOTION FOR PRELIMINARY
INJUNCTION
NO. 3:23-cv-05626-BHS

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

-146, or involuntary civil commitment centers, i.e., Wash. Rev. Code §§ 71.05.010–950, Wash. Admin. Code §§ 246-322-100, -120, -140, -160, -230, -240. *Id.* at 1121.

After GEO's petition for rehearing en banc was denied, GEO sought to stay the Ninth Circuit's mandate pending a petition for certiorari, due June 11, 2026. *See* Ninth Cir. Dkt. # 85.1. The Ninth Circuit denied GEO's requested stay and issued its mandate on March 4, 2026. Ninth Cir. Dkt. # 84.1 (also filed at Dkt. # 57) (ordering that the Ninth Circuit's judgment take effect March 4, 2026).

**B.      Following the Ninth Circuit's Reversal of the Preliminary Injunction, GEO Continues to Block Access to Its Tacoma Facility**

The Department continues to review frequent complaints received about the conditions inside GEO's Tacoma facility. Nanto Decl. ¶ 4. Common complaints reported include assault, medical concerns including infection control, living conditions and cleanliness, and food, water, and air quality. *Id.* After the Ninth Circuit issued its mandate, the Department sent employees to GEO's Tacoma facility in accordance with Wash. Rev. Code § 70.395.050(2)(b) to investigate complaints received relating to the facility. Declaration of Joseph D. Laxson (Laxson Decl.) ¶¶ 10, 11, 14.

On March 20, 2026, Department employees Joseph Laxson and Todd Phillips went to GEO's Tacoma facility to investigate complaints relating to the facility. *Id.* ¶ 11. They were greeted by a guard who then called the facility administrator, Bruce Scott. *Id.* The Department employees explained to Mr. Scott that they were there to investigate complaints from people detained in the facility about problems with drinking water, as well as complaints about the facility denying individuals the ability to attend religious services, in accordance with Wash. Rev. Code § 70.395. *Id.* Instead of allowing the Department employees entry, Mr. Scott had the employees fill out a form and then left to get an ICE agent. *Id.* The ICE agent, Matthew Cantrell, told the Department employees that they had to reach out to DHS's Seattle office

DEFENDANTS-COUNTERCLAIMANTS'
MOTION FOR PRELIMINARY
INJUNCTION
NO. 3:23-cv-05626-BHS

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

(Seattle office) at seattle.outreach@ice.dhs.gov to receive permission to access secure areas. *Id.* ¶ 12. The Department's employees were not permitted to access the Tacoma facility.

Following that denial, on April 3, 2026, Mr. Laxson emailed the Seattle office, reiterating the Department's request to access GEO's Tacoma facility to investigate ongoing complaints relating to the facility. Laxson Decl. ¶ 13. Mr. Laxson has yet to receive a response to his email. *Id.*

On April 20, 2026, Mr. Laxson and Mr. Phillips made another attempt to enter the Tacoma facility to investigate complaints relating to low quality drinking water at the facility. *Id.* ¶¶ 14–15. During this attempt, they were again greeted by a guard, and Mr. Scott was called down to speak with the Department employees. *Id.* The Department employees explained that they were there pursuant to Wash. Rev. Code § 70.390.050 to investigate complaints about drinking water at the facility. Instead of allowing the Department employees to enter the facility, Mr. Scott contacted an ICE agent to speak with the Department employees. *Id.* Mr. Cantrell came out and again told the Department employees that they are not allowed to enter secure areas without permission from the Seattle office. *Id.* The Department has still not received a response to their email sent to the Seattle office. *Id.* ¶ 15.

Following GEO's second refusal to comply with the plain terms of Washington law, the State seeks to amend its answer to add a counterclaim for GEO's violation of the law, lift the stay in this case, and move for preliminary injunction.

### III.    ARGUMENT

**A.    Standard of Review**

A preliminary injunction is warranted where the moving party establishes that (1) it is likely to succeed on the merits; (2) irreparable harm is likely in the absence of preliminary relief; (3) the balance of equities tips in the movant's favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); Fed. R. Civ. P. 65. Here, all four factors strongly favor the State.

DEFENDANTS-COUNTERCLAIMANTS'
MOTION FOR PRELIMINARY
INJUNCTION
NO. 3:23-cv-05626-BHS

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

**B.     The State Is Likely to Succeed on the Merits Because GEO Is Violating Washington Law by Denying Inspection of Its Tacoma facility**

**1.     GEO's refusal to permit Department of Health inspectors into its Tacoma facility plainly violates Wash. Rev. Code § 70.395.050(2)(b)**

Enacted as Section 3 of HB 1470, Wash. Rev. Code § 70.395.050 requires Washington's Department of Health to inspect private detention facilities in Washington. As relevant here, Wash. Rev. Code § 70.395.050(2)(b) provides that "The [D]epartment of [H]ealth shall . . . [c]onduct investigations of complaints received relating to any private detention facility located within the state[.]" The statute further provides that "[t]he office of the attorney general may enforce violations of this section." Wash. Rev. Code § 70.395.050(6).[3]

The analysis here is straightforward. After the Ninth Circuit vacated GEO's preliminary injunction against Wash. Rev. Code § 70.395.050, the Department of Health twice sought to inspect GEO's facility in response to more than 3,500 complaints it received. These complaints ran the gamut from inadequate medical care to substandard food to unsanitary conditions to assault. Nanto Decl. ¶ 4. Twice, GEO refused. Laxson Decl. ¶¶ 11, 14. Because GEO's refusal plainly violates the statute, the State is likely to succeed unless GEO can show it was somehow excused from complying with the law. It cannot.

**2.     GEO has no defense to justify its disregard for Washington law**

Following the Ninth Circuit's rejection of nearly all of GEO's defenses, its only possible defense is that Wash. Rev. Code § 70.395.050 violates the doctrine of intergovernmental immunity by discriminating against GEO as a federal contractor. *See The GEO Group, Inc.*, 151 F.4th at 1116–24. In other words, GEO can only succeed if it shows that Wash. Rev. Code § 70.395.050 treats state-contracted, privately owned and operated

---

[3] Additionally, the attorney general has broad authority to both "[a]ppear for and represent the state . . . in all cases in which the state is interested" and "[i]nstitute and prosecute all actions and proceedings . . . which may be necessary in the execution of the duties of any state officer[.]" Wash. Rev. Code § 43.10.030. *See also Washington v. City of Sunnyside*, 3 Wash.3d 279, 319–20 (2024) (concluding the state attorney general "[was] authorized to bring an action under RCW 43.10.030(1) because th[e] case involve[d] matters of public concern in which the State has an interest").

DEFENDANTS-COUNTERCLAIMANTS'
MOTION FOR PRELIMINARY
INJUNCTION
NO. 3:23-cv-05626-BHS

7

civil detention facilities more favorably than it treats GEO's Tacoma facility. *Id.* at 1118–20; *see also Nwauzor*, 127 F.4th at 772.

Through all its prior briefing, GEO has never argued that the inspection requirement discriminated against it. Dkt. # 8 (GEO Prelim. Inj. Mot.) at 20–23; Dkt. # 25-1 (GEO Mot. To Dismiss Opp'n) at 15–20; *The GEO Group, Inc.*, 151 F.4th at 1118 ("In the portion of its brief arguing that HB 1470 is an impermissible discriminatory regulation, GEO . . . does not make a separate argument directed to the inspection . . . provision[] in Sections 3."). Nor could it.

As the Ninth Circuit explained, "[a] state law or regulation impermissibly discriminates against the federal government if it treats a state entity more favorably than it treats a comparable federal entity." *The GEO Group, Inc.*, 151 F.4th at 1118 (citing *Dawson v. Steager*, 586 U.S. 171, 175–76 (2019)). "The 'important consideration' is whether the state has 'singled out contractors who work for the United States for discriminatory treatment.'" *Id.* (quoting *Washington v. United States*, 460 U.S. 536, 544 (1983)). "A state law or regulation that burdens only a federal contractor is not impermissibly discriminatory if it 'duplicate[s] requirements otherwise mandated under' state law that are imposed on similarly situated state contractors." *Id.* (quoting *California*, 921 F.3d at 873).

Here, GEO's discrimination argument fails twice over. First, as amended by HB 1232, Wash. Rev. Code § 70.395.050 applies to private facilities beyond GEO's, including facilities that do not contract with the federal government. Multiple Agency Fiscal Note Summary, Engrossed Second Substitute HB 1232, at 25–26, https://fnspublic. ofm.wa.gov/FNSPublicSearch/GetPDF?packageID=74955 (last visited April 25, 2026). Accordingly, GEO cannot show the law, as amended, "'single[s them] out' for less favorable 'treatment[.]'" *United States v. Washington*, 596 U.S. 832, 839 (2022) (quoting *Washington*, 460 U.S. at 546) (alteration in original). For this reason alone, their intergovernmental immunity argument fails.

DEFENDANTS-COUNTERCLAIMANTS'
MOTION FOR PRELIMINARY
INJUNCTION
NO. 3:23-cv-05626-BHS

8

Second, even if Wash. Rev. Code § 70.395.050 only applied to GEO, it cannot show it is being singled out for less favorable treatment because its inspection requirement is no different than that applicable to comparable facilities in Washington. As the Ninth Circuit held, the proper comparators for GEO's civil immigration detention facility are "residential treatment facilities and civil commitment facilities[.]" *The GEO Group, Inc.*, 151 F.4th at 1119. But even a cursory glance at Washington statutes shows that Section 3's inspection requirements are no more burdensome than those imposed on these other civil detention facilities. For both residential treatment facilities and civil commitment facilities, "[t]he [D]epartment of [H]ealth may at any time cause any" facility "to be visited and examined," and "[e]ach such visit may include an inspection of every part of each establishment," as well as "an examination of all records," and "any person confined therein." Wash. Rev. Code §§ 71.12.510–.520; *see also id.* at § .455(3) (defining scope of § .510 and § .520); Wash. Admin. Code § 246-322-025(3) ("The department [of health] shall . . . [c]onduct on-site inspections [of private psychiatric hospitals] at any time to determine compliance with chapter 71.12 RCW[.]"). Beyond this, the Department has long enjoyed the authority to inspect "all buildings, yards, warehouses, storage and transportation facilities or *any other place*" upon receipt of a complaint indicating "a threat to the public health." Wash. Rev. Code § 43.70.170. These broad requirements for Department of Health inspection are, if anything, more burdensome than the Department's requirement to "[c]onduct investigations of complaints[.]" Wash. Rev. Code § 70.395.050(2)(b).

To be sure, Wash. Rev. Code § 70.395.050 (as amended by HB 1232) also permits the Department to inspect private detention facilities "at any time" to determine whether the facilities have complied with "the requirements of this chapter" or similar standards. Wash. Rev. Code § 70.395.050(1). However, because the Department has yet to promulgate final rules under this chapter, the Department does not currently seek to inspect on this basis.[4] And even if it did, such

---

[4] Moreover, while Section 3 directs the Department to "[c]onduct routine, unannounced inspections of private detention facilities including, but not limited to, inspection of food service and food handling, sanitation and

DEFENDANTS-COUNTERCLAIMANTS'
MOTION FOR PRELIMINARY
INJUNCTION
NO. 3:23-cv-05626-BHS

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

an inspection would still be no broader than the "at any time" visits required of comparable civil detention facilities. Wash. Rev. Code §§ 71.12.510–.520. This is particularly so because, as the State already explained, the substantive requirements of HB 1470 are no more burdensome than those already imposed on residential treatment facilities and civil detention facilities. *See* Dkt # 44 at pp. 22–25.

In any event, for purposes of this motion, the sole dispositive question is whether Section 3's requirement that the Department investigate complaints in private detention facilities singles out GEO for discriminatory treatment. It plainly does not. Thus, because "Washington law treats similarly situated entities in the same manner HB 1470 treats [GEO's Tacoma facility], [Section 3 of] HB 1470 is not impermissibly discriminatory." *The GEO Group, Inc.*, 151 F.4th at 1119. The State is likely to succeed on the merits of its claim.

**C.     The State Will Be Irreparably Harmed Absent an Injunction**

The Washington State Legislature found that "all people confined in prisons and detention facilities in Washington deserve basic health care, nutrition, and safety." Wash. Rev. Code § 70.395.010(1). The State possesses "the general authority to ensure the health and welfare of inmates and detainees in facilities within its borders." *The GEO Group, Inc.*, 151 F.4th at 1112 (citing *California*, 921 F.3d at 886); *see also California*, 921 F.3d at 894 ("California retains an historic—and, since the federal government's contracts with immigration detainee facilities explicitly contemplate the application of state regulations, undisputed— authority to regulate the conditions of detainees housed within its borders."). The State will suffer irreparable harm if the Department is not allowed to investigate complaints relating to the deplorable conditions in GEO's Tacoma facility. *Cf. Maryland v. King*, 567 U.S. 1301, 1303 (2012) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.") (citation modified).

---

hygiene, and nutrition," Wash. Rev. Code § 70.395.050(2)(a), the Department's inspections here are focused on investigating the many, many complaints it has received. *Id.* at .050(2)(b); Laxson Decl. ¶¶ 10, 11, 14.

DEFENDANTS-COUNTERCLAIMANTS'
MOTION FOR PRELIMINARY
INJUNCTION
NO. 3:23-cv-05626-BHS

10

### 1.    The State is being denied access to investigate complaints relating to water, food, and air quality

Of the 3,500 complaints received from people detained in the Tacoma facility, over 990 relate to water, food, and air quality. Nanto Decl. ¶ 10, Ex. A. Detainees have complained that the food provided has contained foreign objects, such as burned plastic, metal string, rope, splinters, hair, and worms. *Id.* ¶ 6. Detained individuals state that food often tastes bad, smells bad, and they do not receive enough. *Id.* For example, one complaint reported that "[y]esterday for dinner, they served us raw meat. You can see the blood inside the meat. Many of us in the unit (54 people) chose to throw it away, but others made the decision to still eat it because they were hungry. Today, around 15 people woke up sick due to the food from last night." *Id.* ¶ 10, Ex. A. The Department has also received complaints about drinking water, for example, that the "water tastes disgusting, it does not taste like normal water you usually drink, which makes sense because all the staff here bring in their own water bottles because they know the water here is not safe to drink." *Id.* There are also complaints about the air quality and that there is a "bad smell [] coming from the vents" and that it "smells like sewer." *Id.* The State is being denied access to investigate these complaints pursuant to Wash. Rev. Code § 70.390.050(2)(b).

### 2.    The State is being denied access to investigate complaints relating to cleanliness, laundry, and living conditions

The Department has received over 650 complaints from people detained at GEO's Tacoma facility relating to unsanitary conditions. Nanto Decl. ¶ 10, Ex. A. People detained at the Tacoma facility have complained it is unsanitary: bathrooms are rarely cleaned, floors go unswept, and the facility smells like a dirty bathroom. *Id.* ¶ 7. There are reports of black mold in the showers. *Id.* A recent complaint stated that at one point there were only two working bathrooms for around 100 people to use. *Id.*

The people detained at GEO's facility have also reported they are unable to care for basic personal hygiene needs. Nanto Decl. ¶ 8. They are not given access to launder their own clothes, but the facility rarely changes or launders clothing, sheets, and blankets. *Id.* And when clothes

DEFENDANTS-COUNTERCLAIMANTS'
MOTION FOR PRELIMINARY
INJUNCTION
NO. 3:23-cv-05626-BHS

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

are laundered, they are returned wet and dirtier than before. *Id.* For example, one person reported that a "few days ago, I asked them to change my boxers, and they brought me ones that were dirty and belonged to someone else. The socks are also used and smell bad." *Id.* ¶ 10, Ex. A. It is a common complaint that clothes come back wet. *Id.* ¶ 8. To make it worse, GEO does not allow people to hang up clothes to dry. *Id.* They are forced to wear wet clothes that then begin to smell moldy. *Id.* Clothing is also not replaced; detainees have only one change of clothes. *Id.* There are reports that sheets are not washed after someone has been sick with an infectious disease such as chicken pox or COVID. *Id.* A detainee with mental health issues had soiled their clothing but was refused clean clothing by one of the guards. *Id.* The State is being denied access to investigate these complaints pursuant to Wash. Rev. Code § 70.390.050(2)(b).

### 3. The State is being denied access to investigate complaints of lack of attention to medical needs and assaults

Over 900 complaints received from people detained at GEO's Tacoma facility are about the lack of attention to their medical needs. Nanto Decl. ¶ 10, Ex. A. Detainees have reported that they have suffered strokes, paralysis, heart conditions, internal bleeding, and asthma, and that these complaints were not addressed by the facility. *Id.* ¶ 5. Detainees have likewise complained that GEO has been denying access to necessary medication. *Id.* For example, the Department received a report about a detained individual who was transferred to the hospital for a medical emergency, but when he was released from the hospital the facility refused to give him the medication prescribed. *Id.* Instead, they gave him ibuprofen, leaving his condition to continue to worsen. *Id.* Other detained individuals report that they are only allowed to be seen for a single illness and are denied dental care unless they have been detained for over a year. *Id.* The State is being denied access to investigate these complaints pursuant to Wash. Rev. Code § 70.390.050(2)(b).

Additionally, some detained individuals have reported being victims of abuse and sexual assault. Nanto Decl. ¶ 9. For example, one person reported she was sexually assaulted by an officer in her unit, and that she was not the only one. *Id.* ¶ 10, Ex. A. Another person reported that

DEFENDANTS-COUNTERCLAIMANTS'
MOTION FOR PRELIMINARY
INJUNCTION
NO. 3:23-cv-05626-BHS

12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

she was a victim of abuse three times and had become depressed and scared that it could happen again. *Id.* The State is being denied access to investigate these complaints pursuant to Wash. Rev. Code § 70.390.050(2)(b).

## D. Balance of Equities

The final two *Winter* factors—the balance of the equities and the public interest—weigh heavily in the State's favor. Where the government is a party, these factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). Here, the equities and public interest tip sharply in the State's favor. GEO is forcing human beings to live in squalid conditions because it is profitable for the company's shareholders. This is intolerable.

### 1. Equity and the public interest favor ensuring the health, safety, and security of people detained in private detention facilities

Concerns about the health and safety impacts of private detention facilities are central to this Court's inquiry into equity and the public interest. As the Ninth Circuit confirmed, "health and safety" risks to immigrant detainees are a critical part of the preliminary injunction analysis in suits involving conditions at private detention facilities. *Roman v. Wolf*, 977 F.3d 935, 942–44 (9th Cir. 2020). That is because "adverse effects on the health and welfare of the immigrant as well as general population" are inconsistent with the "equities and public interest[.]" *City & County of San Francisco v. U.S. Citizenship & Immigr. Servs.*, 981 F.3d 742, 762 (9th Cir. 2020). Indeed, evidence of "egregious conditions in facilities housing civil detainees" should weigh significantly in the analysis. *California*, 921 F.3d at 894 (citation and internal quotation marks omitted); *see also Roman*, 977 F.3d at 944 (concluding "that the equities and public interest tipped in . . . favor" of immigrant detainees challenging facility's failure to implement COVID protocols, "particularly in light of the lack of criminal records of many of the detainees and the alternative means available to prevent them from absconding if they were released, such as electronic monitoring[ ]").

DEFENDANTS-COUNTERCLAIMANTS'
MOTION FOR PRELIMINARY
INJUNCTION
NO. 3:23-cv-05626-BHS

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

### a.   Private detention facilities increase the risk of assault

In 2001, a DOJ report found private detention facilities are responsible for "a significantly higher rate" of "critical incidents" like inmate assaults when compared with publicly run institutions.[5] According to one report, the five immigrant detention facilities with the most sexual assault complaints were *all* privately owned—three by GEO, including its Tacoma facility at number four[6] And despite—or perhaps because of—the high rate of complaints at GEO's Tacoma facility, a 2022 University of Washington Center for Human Rights report found that complaints of sexual harassment and abuse at that facility are routinely dismissed or outright ignored.[7] And when inmates in private detention facilities report violence, their complaints are sometimes ignored or mocked.[8] As reported, this is happening at GEO's Tacoma facility. Nanto Decl. ¶ 9. Shielding GEO from *any* State oversight of its facilities, including its efforts to address violence and sexual assault, plainly undermines equity and the public interest.

### b.   Private detention facilities lead to medical neglect

Allegations of medical neglect inside private detention facilities have been rampant. The U.S. House of Representatives Committee on Oversight and Reform issued a report chronicling multiple instances where private detention providers—including GEO—failed to take detainee health complaints seriously or permit timely access to medical care.[9] The year-long study

---

[5] James Austin & Garry Coventry, U.S. DOJ, Off. of Just. Programs, Bureau of Just. Assistance, *Emerging Issues on Privatized Prisons* at 11 (Feb. 2001), https://www.ojp.gov/pdffiles1/bja/181249.pdf.

[6] Letter from Rebecca Merton, National Independent Monitor for CIVIC & Christina Fialho, Co-Founder/Executive Director for CIVIC, to Thomas D. Homan, et al., Director for Office of Detention Policy and Planning, ICE (Apr. 11, 2017), http://www.endisolation.org/wp-content/uploads/2017/05/CIVIC_SexualAssault_Complaint.pdf.

[7] Univ. of Wash. Ctr. for Human Rts., *Calls to nowhere: Reports of sexual abuse and assault go unanswered at the NWDC* (May 16, 2022), https://jsis.washington.edu/humanrights/2022/05/16/nwdc-assault-abuse-reporting/.

[8] Timothy Williams, *Inside a Private Prison: Blood, Suicide, and Poorly Paid Guards*, The N.Y. Times (Apr. 3, 2018), https://www.nytimes.com/2018/04/03/us/mississippi-private-prison-abuse.html.

[9] U.S. H.R., Comm. on Oversight and Reform and Subcomm. on Civil Rights and Civil Liberties, *The Trump Administration's Mistreatment of Detained Immigrants: Deaths and Deficient Medical Care by For-Profit Detention Contractors* at 12-27, 30-31 (Sept. 2020), https://oversightdemocrats.house.gov/sites/democrats.oversight.house.gov/files/2020-09-24.%20Staff%20Report%20on%20ICE%20Contractors.pdf.

---

DEFENDANTS-COUNTERCLAIMANTS'
MOTION FOR PRELIMINARY
INJUNCTION
NO. 3:23-cv-05626-BHS

14

showed that contractors made detainees wait days or weeks to visit the medical clinic, failed to notice that detainees were unconscious in their living quarters, placed sick detainees in solitary confinement where their conditions worsened, and failed to distribute prescribed medications.[10] The delay and denial of care had devastating results, including permanent hearing loss, permanent paralysis, and death.[11] Based on hundreds of complaints, this is happening at GEO's Tacoma facility. Nanto Decl. ¶ 5; *Id.*, Ex. A.

Whistleblowers within DHS have documented GEO's Tacoma facility as having a detainee health care system that is "severely dysfunctional," resulting in "preventable harm and death to detainees."[12] Medical documents, detainee interviews, and court records reveal "a multitude of complaints about insufficient medical care, including tumors that grew exponentially while in custody, the denial of surgery for hernias, several-month delays on the stocking of medical devices such as catheters, . . . and forced isolation of people with mental health issues."[13] Since 2023, there have been over 900 complaints from people detained at the Tacoma facility regarding lack of medical attention. Nanto Decl. ¶ 10, Ex. A at 4.

The University of Washington's review of more than 3,500 pages of grievances spanning six years revealed that "allegations of medical neglect" were the most common type of complaint regarding detention conditions at the Tacoma facility.[14] While reviewers did not have access to the medical records or circumstances underlying the grievances, their review showed "detained people at [GEO's Tacoma facility] routinely report[ed] that when seeking access to medical care,

---

[10] *Id.*

[11] *Id.*

[12] Ken Klippenstein, *ICE Detainee Deaths Were Preventable: Document*, TYT (June 3, 2019), https://web.archive.org/web/20190619030205/http://tyt.com/stories/4vZLCHuQrYE4uKagy0oyMA/688s1LbTKv QKNCv2E9bu7h (memo to Mathew Albence, Deputy Dir. of ICE (Dec. 3, 2018), alerting ICE leadership to dozens of incidents, including a "[d]elay in referral to higher level of care at Tacoma Facility which lead to a ruptured appendix[ ]").

[13] Melissa Hellmann, *Incarcerated and Infirmed: How Northwest Detention Center Is Failing Sick Inmates*, Seattle Weekly (Oct. 10, 2018), https://www.seattleweekly.com/news/incarcerated-and-infirmed-how-northwest-detention-center-is-failing-sick-inmates/.

[14] Univ. of Wash. Ctr. for Human Rts., *Human Rights Conditions in the Northwest Detention Center* (April 16, 2020), https://jsis.washington.edu/humanrights/2020/04/16/nwdc-medical/.

DEFENDANTS-COUNTERCLAIMANTS'
MOTION FOR PRELIMINARY
INJUNCTION
NO. 3:23-cv-05626-BHS

15

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

their concerns are ignored, either because GEO guards deny them permission to visit the medical clinic" or because "the medical staff belittles their concerns."[15] People detained at the Tacoma facility reported long waits for care, even for acute conditions like cancer, injuries requiring surgery, and liver failure.[16] Some complaints for detained people state that dental care is not available unless someone has been detained more than a year. Nanto Decl. ¶ 5. Complaints received by the Department confirm that detainees at the Tacoma facility are routinely denied adequate medical care. *Id.*

Finally, when detainees complained about insufficient medical care, their concerns often are labeled "not a grievance."[17] A lack of access to detainee medical care at GEO's Tacoma facility—coupled with an inability to raise complaints about medical issues—is a dangerous mix that runs contrary to equity and the public interest.

### c. Private detention facilities lead to unsafe and insufficient food problems

Private detention facilities have, for years, been plagued with serious problems related to inadequate and unsafe food. For example, during unannounced inspections at three GEO immigration detention centers in 2018, DHS inspectors found "food service issues at all facilities [that] endanger detainee health and welfare."[18] Inspectors labeled some conditions "egregious," and cited GEO for "unwrapped and unlabeled" meat, "chicken [that] smelled foul and appeared to be spoiled," and "food in the freezer [that] was expired."[19] In recent years, the Tacoma-Pierce County Health Department has received "multiple complaints about rotten food and maggots in the food at [the Tacoma facility]."[20] In a 2022 inspection of GEO's Tacoma facility, DHS Office

---

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] John V. Kelly, Office of the Inspector General, *Concerns about ICE Detainee Treatment and Care at Four Detention Facilities* (June 3, 2019), https://www.oig.dhs.gov/sites/default/files/assets/2019-06/OIG-19-47-Jun19.pdf (original capitalization removed).

[19] *Id.* at 4.

[20] Univ. of Wash. Ctr. for Human Rts., *Conditions at the NWDC: Sanitation of Food & Laundry* (March 27, 2020), https://jsis.washington.edu/humanrights/2020/03/27/nwdc-sanitation-of-food-laundry/.

DEFENDANTS-COUNTERCLAIMANTS'
MOTION FOR PRELIMINARY
INJUNCTION
NO. 3:23-cv-05626-BHS

16

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

of Inspector General found long-expired food on shelves and boxes of meat left open and exposed to the air.[21] In May 2025, after a large volume of complaints concerning food-related illnesses, the Tacoma Pierce County Health Department conducted an inspection that detected *Bacillus cereus*, a bacteria that causes food poisoning, in collard greens the Tacoma facility had served detainees. Nanto Decl. ¶ 6. The symptoms complained of included stomachache, bloating, and diarrhea with blood. *Id.*

Other evidence shows that individuals held in private detention frequently go hungry. In a report summarizing nearly fifty interviews of people detained at GEO's Tacoma facility conducted by the Seattle University School of Law, "[a]bout 80% of the detainees interviewed stated they received an insufficient quantity of food and were often hungry after meals."[22] As a former GEO Kitchen Supervisor testified at a June 2021 trial involving conditions at the facility, GEO budgets 97 cents per detainee, per meal. Dkt. # 19-1 at pp. 332, 354 (Testimony of John Patrick Griffin (Griffin Testimony) at 41:2–10, 63:4–19 (June 3, 2021)). When asked whether GEO was able to prepare and serve adequate meals within that budget, the witness conceded, "I would say, in my experience, no," and further admitted that "[m]y understanding is that [the detainees] seemed to be pretty hungry." *Id.* at pp. 353–54 (Griffin Testimony at 63:22, 62:23–25).

The food is also poor quality. The same Kitchen Supervisor described menu items as "low-grade products," "cheap products," and "spongy meats." *Id.* at pp. 374, 376 (Griffin Testimony at 83:2–15, 85:16–18). He testified that "80 percent of the products that were served either was beans [or] soy-based meats" like "soy-based beef granules, soy-based Salisbury steak, soy-based burger patties." *Id.* at pp. 373–75, 378 (Griffin Testimony at 82:13–84:12, 87:14). The

---

[21] U.S. Dep't of Homeland Sec., Off. of Inspector Gen., *Results of an Unannounced Inspection of Northwest ICE Processing Center in Tacoma, Washington 9-12* (May 22, 2023), https://www.oig.dhs.gov/sites/default/files/assets/2023-05/OIG-23-26-May23.pdf.

[22] Seattle Univ. School of Law Int'l Human Rights Clinic & OneAmerica, *Voices from Detention: A Report on Human Rights Violations at the Northwest Detention Center in Tacoma, Washington* (July 2008), https://www.yumpu.com/en/document/read/48836345/voices-from-detention-a-report-on-human-rightsoneamerica.

DEFENDANTS-COUNTERCLAIMANTS'
MOTION FOR PRELIMINARY
INJUNCTION
NO. 3:23-cv-05626-BHS

17

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

Kitchen Supervisor later described ingredients including "substandard quality food in cans[ ] . . . [s]ometimes . . . mixed with spiders or grasshoppers[ ]" and a product called "[p]ink chicken," a "50-pound block" of unidentifiable "chicken pieces." *Id.* at p. 110 (Griffin Testimony at 154:2–24). According to the Seattle University report, unless a specialized diet has been approved, "detainees do not receive fresh fruit and only rarely receive fresh vegetables."[23] Sometimes the canned vegetables have bugs like "grasshoppers" in them, and it is the job of the kitchen staff to "make sure [detainees] didn't get one of those." *Id.* at p. 374 (Griffin Testimony at 83:11–16). Detainee complaints received by the Department indicate that the food tastes of "burned plastic" and contains "metal string" and "splinters." Nanto Decl. ¶ 6. Detainee interviews describe the food as "bad, watery, tasteless, rotten, poor quality, low quantity, overcooked, repetitive, and cold. A few detainees who previously spent time incarcerated mentioned that the food was much better and more plentiful in prison."[24] Other detainees reported that the food "appears rotten, has been served on dirty trays, and contains bugs."[25] These findings are consistent with national findings that, because "[p]rivate providers have a business incentive to keep costs as low as possible," the end result is "lower-quality food."[26] Complaints received by the Department confirm that people detained inside the Tacoma facility receive extremely low-quality food— food that has contained foreign objects like burned plastic, metal string, rope, splinters, hair, and worms. Nanto Decl. ¶ 6.

Equity and the public interest are not served by stripping the State's oversight of GEO's business model of profiting by serving unsafe and insufficient food to people detained at the Tacoma facility.

---

[23] *Id.* at 50; *see also* Dkt. # 19-1 at pp. 129–130 (Griffin Testimony at 173:24-174:1) (detainees did "not often" receive fresh foods).

[24] *Voices from Detention*, *supra* note 22, at 50.

[25] *Id.*

[26] Natalie Delgadillo, *Maggots With a Side of Dirt? What Privatization Does to Prison Food*, Governing.com (Jan. 26, 2018), https://www.governing.com/archive/gov-private-food-service-prisons-aramark-trinity-ohio-michigan.html.

DEFENDANTS-COUNTERCLAIMANTS'
MOTION FOR PRELIMINARY
INJUNCTION
NO. 3:23-cv-05626-BHS

18

**d.      Private detention facilities lead to unsanitary conditions and lack of hygiene supplies for the people detained**

Private detention facilities also provide insufficient access to personal hygiene items and clean laundry. Access to clean laundry has also been a persistent problem at the Tacoma facility, leading to hunger strikes in 2014 and 2017, and the filing of hundreds of grievances.[27] Detainees complained that their clothes are washed in the same machines as the dirty mop heads used to wash the floors, with the result that clothes come back from the laundry gray and foul-smelling.[28] The University of Washington documented multiple grievances related to women's underwear, with detainees begging for clean panties instead of "old yellow stained disgusting panties" or "yellow or brown used panties" that are "filthy" and "disgusting and unsanitary."[29] The response has been to mark such complaints as "[n]ot a grievance."[30] As recent complaints attest, these problems have continued unabated. Nanto Decl. ¶ 7. A lack of concern for the hygiene of detained people is inconsistent with the public interest or principles of equity.

Given the significant risks to detainee health, safety, and security at GEO's Tacoma facility, equity and the public interest weigh in the State's favor.

**2.      Equity and the public interest favor improved transparency, accountability, and oversight of detention facilities**

Permitting the Department access to GEO's Tacoma facility to investigate complaints pursuant to Wash. Rev. Code § 70.395.050 would also promote the public's interest in accountability. Improved public oversight and accountability further the public interest. *See, e.g.*, *Valentine v. Collier*, 978 F.3d 154, 166 (5th Cir. 2020) ("the public interest favors having politically accountable officials . . . determine how to allocate resources[ ]" in the prison context); *Conn. State Police Union v. Rovella*, 494 F. Supp. 3d 210, 224–25, 230 (D. Conn. 2020) (denying preliminary injunction because public interest and equity supported "the state's

---

[27] *Conditions at the NWDC: Sanitation of Food & Laundry*, *supra* note 20.
[28] *Id.*
[29] *Id.*
[30] *Id.*

DEFENDANTS-COUNTERCLAIMANTS'
MOTION FOR PRELIMINARY
INJUNCTION
NO. 3:23-cv-05626-BHS

19

salutary efforts to enhance transparency and promote accountability in law enforcement[ ]"); *Nat'l Head Start Ass'n v. Dep't of Health & Hum. Servs.*, 297 F. Supp. 2d 242, 251 (D.D.C. 2004) (denying temporary restraining order where granting it would thwart "[t]he public['s] . . . strong interest in the effective and transparent administration of [taxpayer-funded] programs[ ]"). But the Legislature has found "that private prisons and detention centers are less accountable for what happens inside those facilities than state-run facilities." Wash. Rev. Code § 70.395.010(5).

Enforcement of Wash. Rev. Code § 70.395.050 benefits transparency and accountability by allowing more daylight into detention facilities—including at the Tacoma facility. GEO's recordkeeping has been glaringly poor, making it difficult for regulators to confirm that detainees are safe and well. GEO has a poor record of documenting and responding to detainee grievances, even though its Tacoma facility "had the highest grievance volume of the facilities [ICE] inspected" in 2019.[31] GEO itself will not even turn over grievances or other records about its operations—it "decline[s] to respond to FOIA requests, citing its status as a private company."[32] Of course, the DHS Inspector General has access to GEO's records, and that office concluded that GEO violates ICE's requirements for "maintain[ing] grievance logs," that almost half of detainee grievances received no response during the mandatory five-day response window, and that almost a third went unaddressed far longer.[33]

But the DHS Inspector General's visit to GEO's Tacoma facility is a rare event, and ICE itself inspects only "[a]bout once every three years."[34] More often, inspections are conducted by one of ICE's contract inspectors. The DHS Inspector General itself is skeptical of ICE's contract inspectors, and cited "examples of inspectors contracted by ICE submitting false information

---

[31] U.S. DHS, Off. of the Inspector Gen., *Capping Report: Observations of Unannounced Inspections of ICE Facilities in 2019*, at 8 (July 1, 2020), https://www.oig.dhs.gov/sites/default/files/assets/2020-07/OIG-20-45-Jul20.pdf.

[32] *Conditions at the NWDC: Solitary Confinement*, *supra* note 20.

[33] *Capping Report: Observations of Unannounced Inspections of ICE Facilities in 2019*, *supra* note 31, at 7–8.

[34] John V. Kelly, Office of the Inspector General, *ICE's Inspections and Monitoring of Detention Facilities Do Not Lead to Sustained Compliance or Systemic Improvements*, at 3 (June 26 2018), https://www.oig.dhs.gov/sites/default/files/assets/2018-06/OIG-18-67-Jun18.pdf.

DEFENDANTS-COUNTERCLAIMANTS'
MOTION FOR PRELIMINARY
INJUNCTION
NO. 3:23-cv-05626-BHS

20

that made detention facilities look like they were following regulations when they weren't," private facilities "failing to notify ICE about alleged or proven sexual assaults," and contract staff "conducting strip searches with no reasonable suspicion."[35] Indeed, ICE's own employees express the view that inspections conducted by private contractors are "useless" and "very, very, very difficult to fail."[36]

Taken together, the poor recordkeeping, lack of records access, and unreliable inspections mean that lawmakers, state and local regulators, and the public are in the dark about what goes on inside private detention facilities. Enforcement of Wash. Rev. Code § 70.395.050 furthers the public interest by increasing facility accountability.

## IV.   CONCLUSION

For the foregoing reasons, the State Defendants-Counterclaimants respectfully request that this Court preliminarily enjoin The GEO Group from denying access to its Tacoma facility by Washington Department of Health inspectors.

---

[35] Bob Ortega, *Migrants describe hunger and solitary confinement at for-profit detention center*, CNN Investigates (July 11, 2018), https://www.cnn.com/2018/07/11/us/northwest-immigrant-detention-center-geo-group-invs/index.html.

[36] *ICE's Inspections and Monitoring of Detention Facilities Do Not Lead to Sustained Compliance or Systemic Improvements*, *supra* note 34, at 7–8 & n.12.

DEFENDANTS-COUNTERCLAIMANTS'
MOTION FOR PRELIMINARY
INJUNCTION
NO. 3:23-cv-05626-BHS

21

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

DATED this 28th day of April 2026.

The signing attorney certifies that the foregoing document contains 7172 words in compliance with Local Civil Rules.

NICHOLAS W. BROWN
   *Attorney General*

*/s/ Andrew Hughes*
ELLEN RANGE, WSBA No. 51334
ANDREW HUGHES, WSBA No. 49515
MINA SHAHIN, WSBA No. 46661
   *Assistant Attorneys General*
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744
Ellen.Range@atg.wa.gov
Andrew.Hughes@atg.wa.gov
Mina.Shahin@atg.wa.gov

MARSHA CHIEN, WSBA No. 47020
   *Worker Rights Unit Chief*
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744
Marsha.Chien@atg.wa.gov

CRISTINA SEPE, WSBA No. 53609
   *Deputy Solicitor General*
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
360-753-6200
Cristina.Sepe@atg.wa.gov

*Counsel for Defendants-Counterclaimants*

DEFENDANTS-COUNTERCLAIMANTS'
MOTION FOR PRELIMINARY
INJUNCTION
NO. 3:23-cv-05626-BHS

22

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744