THE HONORABLE BENJAMIN H. SETTLE

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT TACOMA

THE GEO GROUP, INC.,

                    Plaintiff,

          v.

ROBERT W. FERGUSON, in his official capacity as Governor of the State of Washington; NICHOLAS W. BROWN, in his official capacity as Attorney General of the State of Washington,

                    Defendants.

ROBERT W. FERGUSON, in his official capacity as Governor of the State of Washington; NICHOLAS W. BROWN, in his official capacity as Attorney General of the State of Washington,

                    Counterclaim-Plaintiffs,

          v.

THE GEO GROUP, INC.,

                    Counterclaim-Defendant.

No. 3:23-cv-05626-BHS

THE GEO GROUP, INC.'S MOTION TO DISMISS COUNTERCLAIM

NOTE ON MOTION CALENDAR: JULY 7, 2026

GEO GROUP, INC.'S MOTION TO DISMISS COUNTERCLAIM
(3:23-cv-05626-BHS) - i

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND ............................................................................................................ 2

    A. The Federal Government Controls Immigration Detention and Establishes National Uniform Standards. ............................................................. 2

    B. Washington's Repeated Attacks on Federal Immigration Detention. .................. 4

    C. The State Passes HB 1232 and Creates an Intake System that Allows Anonymous, Unverified Complaints About GEO by Anyone, Anywhere. ......... 5

    D. The Ninth Circuit Remands with a Limited Mandate. ........................................ 6

    E. GEO and ICE Enter a New Contract That Confirms Their Interpretation of Federal Supremacy and ICE Control Over NWIPC. ....................................... 6

    F. ICE Denies Access—Twice. ................................................................................ 7

    G. Contorting the Facts, the State Adds a Counterclaim Against GEO, Alleging GEO Denied Access. ............................................................................ 9

III. ARGUMENT ............................................................................................................... 10

    A. There Is No Article III Standing. ....................................................................... 10

    B. The Counterclaim Fails to State a Claim Under Rule 12(b)(6). ......................... 12

    C. ICE Is a Required Party under Rule 19(a)(1)(A) and the Counterclaim Must Be Dismissed Under Rule 12(b)(7). ............................................................ 14

        1. Rule 19(a)(1)(A): Complete Relief is Not Possible Without ICE. .......... 15

        2. ICE Has Legally Protected Interests This Action Would Impair. ........... 17

        3. Proceeding Without ICE Will Impair and Impede ICE's Interests. ........ 19

        4. Proceeding Without ICE Would Expose GEO to Inconsistent Obligations. ............................................................................................... 21

    D. After Concluding that ICE is a Necessary Party, the Court Should Dismiss. ............................................................................................................... 22

        1. ICE Cannot Be Joined Because Sovereign Immunity Bars Such Joinder. ..................................................................................................... 22

GEO GROUP, INC.'S MOTION TO DISMISS COUNTERCLAIM
(3:23-cv-05626-BHS) - ii

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

2.    Equity and Good Conscience Require Dismissal under
Rule 19(b). .......................................................................................... 23

IV.    CONCLUSION ................................................................................................ 24

GEO GROUP, INC.'S MOTION TO DISMISS COUNTERCLAIM
(3:23-cv-05626-BHS) - iii

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Am. Greyhound Racing, Inc. v. Hull*,
305 F.3d 1015 (9th Cir. 2002) ...............................................................................................19

*Amir v. Five Unnamed U.S.A. Immigr. Enf't & Custom Offs. in Vancouver Int'l Airport*,
2010 WL 2402910 (W.D. Wash. Mar. 30, 2010), *report and recommendation adopted*,
2010 WL 2402915 (W.D. Wash. June 10, 2010) .................................................................22

*Arizona v. United States*,
567 U.S. 387 (2012) ......................................................................................................17, 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................................................12, 13

*Campbell-Ewald Co. v. Gomez*,
577 U.S. 153 (2016) ..............................................................................................................14

*City of L.A. v. Lyons*,
461 U.S. 95 (1983) ................................................................................................................10

*Confederated Tribes of Chehalis Indian Rsrv. v. Lujan*,
928 F.2d 1496 (9th Cir. 1991) ..............................................................................................19

*CP Nat'l Corp. v. Bonneville Power Admin.*,
928 F.2d 905 (9th Cir. 1991) ................................................................................................15

*Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*,
276 F.3d 1150 (9th Cir. 2002) ..................................................................................17, 18, 21

*Dep't of Army v. Blue Fox, Inc.*,
525 U.S. 255 (1999) ......................................................................................................22, 23

*Diamond Alt. Energy, LLC v. EPA*,
606 U.S. 100 (2025) ..............................................................................................................11

*Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affairs*,
932 F.3d 843 (9th Cir. 2019) ....................................................................................17, 20, 23

*Doe 1 v. Guzman*,
2026 WL 274661 (W.D. Wash. Feb. 3, 2026) ....................................................................15

*Geo Group, Inc. v. Newsom*,
50 F.4th 745 (9th Cir. 2022) ...................................................................................................4

GEO GROUP, INC.'S MOTION TO DISMISS COUNTERCLAIM
(3:23-cv-05626-BHS) - iv

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Geo Grp., Inc. v. Inslee*,
     166 F.4th 1188 (9th Cir. 2026) ...................................................................................4

*GEO Grp., Inc. v. Menocal*,
     607 U.S. ---, 146 S. Ct. 774 (2026) .........................................................................13

*Hencely v. Fluor Corp.*,
     608 U.S. ---, 146 S. Ct. 1086 (2026) .......................................................................13

*Hines v. Davidowitz*,
     312 U.S. 52 (1941) ...............................................................................................2, 18

*Inland Tech. Inc. v. Allen Co.*,
     2026 WL 1501187 (W.D. Wash. May 29, 2026) ......................................................12

*Jamul Action Comm. v. Simermeyer*,
     974 F.3d 984 (9th Cir. 2020) ....................................................................................20

*L.A. All. for Hum. Rts. v. County of Los Angeles*,
     14 F.4th 947 (9th Cir. 2021) .....................................................................................17

*Lujan v. Defs. of Wildlife*,
     504 U.S. 555 (1992) ..................................................................................................10

*Marks v. United States*,
     2007 WL 3087157 (W.D. Wash. Oct. 19, 2007)........................................................22

*Mathews v. Diaz*,
     426 U.S. 67 (1976) ....................................................................................................20

*Maverick Gaming LLC v. United States*,
     123 F.4th 960 (9th Cir. 2024).................................................................14, 15, 20, 23

*McCarthy v. United States*,
     850 F.2d 558 (9th Cir. 1988) ....................................................................................11

*McShan v. Sherrill*,
     283 F.2d 462 (9th Cir. 1960) ....................................................................................15

*Minnesota v. United States*,
     305 U.S. 382 (1939) ..................................................................................................22

*Murthy v. Missouri*,
     603 U.S. 43 (2024) ..............................................................................................11, 16

*Quileute Indian Tribe v. Babbitt*,
     18 F.3d 1456 (9th Cir. 1994) ....................................................................................21

GEO GROUP, INC.'S MOTION TO DISMISS COUNTERCLAIM
(3:23-cv-05626-BHS) - v

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Raines v. Byrd*,
521 U.S. 811 (1997) ...........................................................................................................10

*Republic of Phil. v. Pimentel*,
553 U.S. 851 (2008) ..........................................................................................14, 15, 23, 24

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) ......................................................................................10, 11

*Sanders v. Brown*,
504 F.3d 903 (9th Cir. 2007) ..............................................................................................12

*Shermoen v. United States*,
982 F.2d 1312 (9th Cir. 1992) ............................................................................................17

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir.
2001)....................................................................................................................................12

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ..............................................................................................................11

*Trump v. Hawaii*,
585 U.S. 667 (2018) ..............................................................................................................2

*United States v. California*,
921 F.3d 865 (9th Cir. 2019) ................................................................................................6

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ..............................................................................................13

*White v. Univ. of Cal.*,
765 F.3d 1010 (9th Cir. 2014) ................................................................................15, 20, 23

*Yearsley v. W.A. Ross Constr. Co.*,
309 U.S. 18 (1940) ........................................................................................................13, 14

**Federal Statutes**

6 U.S.C.
§ 112 ....................................................................................................................................23
§ 205 ...............................................................................................................................3, 19
§ 251 ......................................................................................................................................2
§ 252 ...........................................................................................................................3, 17, 19

8 U.S.C.
§ 1225 ....................................................................................................................3, 17, 19, 23
§ 1226 ..........................................................................................................................3, 17, 19
§ 1231 ....................................................................................................................3, 14, 17, 19

GEO GROUP, INC.'S MOTION TO DISMISS COUNTERCLAIM
(3:23-cv-05626-BHS) - vi

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

28 U.S.C. § 530C ....................................................................................................................23

FY2024 Appropriations Act,
    div. C, Title V, Pub. L. No. 118-47, 138 Stat. 460 (Mar. 23, 2024) ......................................3

Homeland Security Act of 2002,
    Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002) ..........................................................2

**State Statutes**

H.B. 1232, 69th Leg., Reg. Sess. (Wash. 2025) ...............................................................................5

H.B. 1470, 68th Leg., Reg. Sess. (Wash. 2023) .......................................................................4, 5, 6

RCW 70.395.030 ...............................................................................................................................4

RCW 70.395.050 ...............................................................................................................5, 7, 8, 23

**Rules**

Fed. R. Civ. P.
    12 ...............................................................................................................................................1
    12(b) ........................................................................................................................................13
    12(b)(1) .............................................................................................................................. *passim*
    12(b)(6) .............................................................................................................................. *passim*
    12(b)(7) ............................................................................................................1, 2, 14, 24
    19 .................................................................................................................................... *passim*
    19(a) ......................................................................................................................................1, 14
    19(a)(1)(A) ...........................................................................................................................14, 15
    19(a)(1)(B) ...........................................................................................................................15, 17
    19(a)(1)(B)(ii) ...........................................................................................................................22
    19(b) .................................................................................................................2, 14, 23, 24
    65(d)(2) .....................................................................................................................................16

**Regulations**

8 C.F.R. § 235.3(e) ...........................................................................................................................3

**Constitutional Provisions**

U.S. Const. art. I, § 8, Cl. 4 ...........................................................................................................14

U.S. Const. art. III, § 2 ...................................................................................................................10

**Other Authorities**

*Martin Hall Juvenile Detention Facility, Washington Inmate Search*,
    https://washington.mapjustice.org/martin-hall-juvenile-detention-facility-inmate-search
    (last visited June 8, 2026) ...............................................................................................................5

GEO GROUP, INC.'S MOTION TO DISMISS COUNTERCLAIM
(3:23-cv-05626-BHS) - vii

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

U.S. Immigr. & Customs Enf't, *National Detention Standards*,
    https://www.ice.gov/doclib/detention-standards/2025/nds2025.pdf (2025) ...........................3

GEO GROUP, INC.'S MOTION TO DISMISS COUNTERCLAIM
(3:23-cv-05626-BHS) - viii

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## I.    INTRODUCTION

The Counterclaim must be dismissed for three independent reasons. First, and most fundamentally, the Court must dismiss pursuant to Rule 12(b)(1) because Plaintiff has failed to allege redressability, an essential element of Article III standing. As a result, the Court lacks jurisdiction over the Counterclaim and must dismiss without prejudice at the outset. Article III of the U.S. Constitution requires a plaintiff to demonstrate (1) an injury that is (2) not only traceable to the challenged conduct of the defendant but also (3) likely to be redressed by a favorable judicial decision. Here, the alleged injury is the denial of access to secure portions of the Northwest ICE Processing Center ("NWIPC") to conduct certain inspections. But because GEO did not deny access—ICE did—and ICE retains exclusive control over access to the secure portions of NWIPC, the remedy that this Court would grant the State against GEO will not redress the alleged injury. This is a threshold, jurisdictional failure that, by itself, warrants summary denial of the Counterclaim.

Second, the Counterclaim must be dismissed under Rule 12(b)(6) because it fails to state a claim for relief. The Counterclaim alleges no facts of either inspection attempt—likely because alleging the facts would require the State to mention ICE's central role in denying access. But Rule 12 requires a Counterclaim to plead more than threadbare facts and legal conclusions. Additionally, the sparse pleading fails to plausibly allege a claim that GEO does not have a complete defense under *Yearsley*. The State's failure to plead its claim for relief warrants dismissal.

Third, the Counterclaim must be dismissed with prejudice pursuant to Rule 12(b)(7) and Rule 19 of the Federal Rules of Civil Procedure. ICE is a required party to the current action under Rule 19(a) because: 1) the contract between ICE and GEO grants ICE exclusive control over access decisions to NWIPC, and 2) ICE requires pre-clearance approval for any visitor who seeks to enter the secure portions of NWIPC. As a result, complete relief is not possible without ICE being made a party to the suit since ICE is the only party that can grant the State the relief it

GEO GROUP, INC.'S MOTION TO DISMISS COUNTERCLAIM
(3:23-cv-05626-BHS) - 1

seeks—i.e., entry to secure portions of NWIPC. Put simply, proceeding without ICE makes absolutely no sense here.

Joining ICE does not end the analysis, however. It is black-letter law that sovereign immunity bars the State from pressing its state law claims against a federal agency like ICE. In such actions where ICE is a necessary party but joinder is infeasible, the case must be dismissed with prejudice pursuant to Rule 19(b). The United States Supreme Court has recognized that dismissal under Rule 19(b) will mean, in some instances, that plaintiffs will be left without a forum for definitive resolution of their claims. That result is contemplated under the doctrine of sovereign immunity, and that result is equitable and just in the present circumstances. Accordingly, dismissal is proper because ICE is a necessary party to this dispute which is protected under a straightforward application of sovereign immunity.

Accordingly, GEO respectfully requests that the Court grant its motion to dismiss pursuant to Rule 12(b)(1), Rule 12(b)(6), and Rule 12(b)(7).

## II.    BACKGROUND

### A.    The Federal Government Controls Immigration Detention and Establishes National Uniform Standards.

The courts have long considered the federal government's authority over immigration as a "fundamental sovereign attribute[.]" *Trump v. Hawaii*, 585 U.S. 667, 702 (2018) (internal quotation marks & citation omitted). This stems, at least in part, from the intertwined nature of immigration and foreign policy. *See Hines v. Davidowitz*, 312 U.S. 52, 64 (1941) ("[o]ne of the most important and delicate of all international relationships ... has to do with the protection of the just rights of a country's own nationals when those nationals are in another country").

In exercising its authority over immigration, Congress created the Department of Homeland Security. Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002). Congress tasked DHS with the detention and removal program for individuals unlawfully present in the United States. 6 U.S.C. § 251(1) & (2). Congress created ICE as DHS's law enforcement body and directed the Assistant Secretary of ICE to "establish the policies for

GEO GROUP, INC.'S MOTION TO DISMISS COUNTERCLAIM
(3:23-cv-05626-BHS) - 2

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

performing" the "functions" transferred to ICE and to "oversee the administration of such policies." 6 U.S.C. § 252(a)(3)(A) & (B). ICE's Enforcement and Removal Operations (ERO) executes Congress's mandate that certain individuals be detained during removal proceedings or pending their removal. *See, e.g.*, 8 U.S.C. §§ 1225(b)(1)(B)(ii), 1225(b)(2)(A), 1226(c)(1), 1231(a)(2). Congress granted the Secretary of Homeland Security broad authority to identify "appropriate" facilities for detention, 8 U.S.C. § 1231(g)(1), and required DHS to favor using existing detention centers before initiating new construction, *id*. § 1231(g)(2).

DHS promulgated regulations that identify criteria for public or private providers of detention services. The primary requirement is that the provider "perform[] such service under contract in compliance with the Standard Statement of Work for Contract Detention Facilities." 8 C.F.R. § 235.3(e). GEO's contract with ICE requires compliance with the 232-page NDS, which outlines ***national*** standards over every aspect of federal contracted immigration detention services, including safety, security, and care. *See* U.S. Immigr. & Customs Enf't, *National Detention Standards* (2025), https://www.ice.gov/doclib/detention-standards/2025/nds2025.pdf ("NDS").

Congress has expressly addressed both ICE's security protocols and inspection regime. Congress specifically approved ICE's security protocol which imposes limits on visits to secure facilities. In fact, Congress imposed only a small carve-out for its own members and staff but did not otherwise alter ICE's mandate. *See* FY2024 Appropriations Act, div. C, title V, Pub. L. No. 118-47, 138 Stat. 460, 619 (Mar. 23, 2024). This is consistent with the NDS, which only permits "***authorized*** persons to visit detainees[,]" NDS § 5.5(I) (emphasis added), and tours from outside entities only "[i]n coordination with ICE/ERO" and "with appropriate notice[,]" *id*.

Congress similarly granted the DHS Office of the Immigration Detention Ombudsman ("OIDO") sole authority to conduct inspections and investigations of complaints regarding conditions at federal immigration detention. *See* 6 U.S.C. § 205(b)(1) (assigning the OIDO with responsibility to create a "process to receive, investigate, resolve, and provide redress" for complaints concerning the "rights of individuals in immigration detention"); *see also id.*

GEO GROUP, INC.'S MOTION TO DISMISS COUNTERCLAIM
(3:23-cv-05626-BHS) - 3

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

§ 205(b)(3) (granting OIDO authority to "[c]onduct unannounced inspections of detention facilities").

### B.    Washington's Repeated Attacks on Federal Immigration Detention.

The State has long disagreed with federal immigration policy and sought to curtail federal immigration activities within its borders. Because GEO services the sole federal ICE detention facility in the State, it has been a frequent State target. Dkt. 54 at 6; *see also Geo Grp., Inc. v. Inslee*, 166 F.4th 1188, 1191 (9th Cir. 2026) (Bumatay, J., dissenting from the denial of rehearing en banc) ("This case is merely the latest round in the State of Washington's crusade against the federal government's use of federal contractors to enforce immigration policy.").

In 2021, Washington passed Engrossed House Bill (EHB) 1090, which banned GEO from operating NWIPC. *See* Dkt. 35 at 6-7; *see also* RCW 70.395.030. GEO sued the State, which later conceded EHB 1090 was unconstitutional after the Ninth Circuit's decision in *Geo Group, Inc. v. Newsom*, 50 F.4th 745 (9th Cir. 2022) (en banc). Dkt. 35 at 6-7.

In 2023, the State enacted House Bill 1470, which purported to impose numerous requirements on private detention facilities in the State, but, through the design of its extensive exceptions, burdened only NWIPC. H.B. 1470, 68th Leg., Reg. Sess. (Wash. 2023); Dkt. 54 at 22. HB 1470 § 2 directed DOH to adopt rules to ensure NWIPC "compl[ies] with measurable standards providing sanitary, hygienic, and safe conditions" for federal immigration detainees. Section 4 imposed more requirements, but only for contracts entered after January 1, 2023. And, relevant here, Section 3(1) directed DOH inspectors to

(a) Conduct routine, unannounced inspections of private detention facilities including, but not limited to, inspection of food service and food handling, sanitation and hygiene, and nutrition[;]

(b) Conduct investigations of complaints received relating to any private detention facility located within the state[.]

*Id.* § 3(1)(a)-(b). The attorney general has authority to enforce violations of Sections 2-4 "on its own initiative or in response to complaints or violations." *Id.* §§ 2(2), 3(5), 4(3). Section 5 created

GEO GROUP, INC.'S MOTION TO DISMISS COUNTERCLAIM
(3:23-cv-05626-BHS) - 4

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

a private cause of action against GEO, and Section 6 provided for civil penalties and authorized DOH to "adopt by rule a penalty matrix[.]" *Id.* § 6(2).

GEO sued the State to prevent enforcement of HB 1470, asserting claims under the Supremacy Clause and the Contract Clause of the U.S. Constitution, Dkt. 1, and moved for a preliminary injunction, Dkt. 8. This Court held that GEO's challenge to Section 4 was not ripe, Dkt. 35 at 3, but preliminarily enjoined the State from enforcing Sections 2, 3, 5, and 6 on the grounds those provisions discriminated against GEO because of its status as a federal contractor in violation of the intergovernmental immunity doctrine. *Id.* at 3, 52-62. The Court dismissed GEO's claims that Section 2 "regulates federal activities directly in violation of the intergovernmental immunity doctrine, is field preempted, is conflict preempted, and violates the Contract Clause." *Id.* at 63. The State appealed. Dkt. 43.

C.    **The State Passes HB 1232 and Creates an Intake System that Allows Anonymous, Unverified Complaints About GEO by Anyone, Anywhere.**

While the Ninth Circuit was considering the appeal, DOH worked hand in glove with advocacy organizations, including those whose mission is to end federal immigration detention and deportations, to build out its NWIPC complaint process. *See* Dkt. 77 ("Declaration of Harry J. F. Korrell" or "Korrell Decl."), Ex. B. DOH eschewed a process that focused on accuracy and instead created an online form that allows anyone to submit a complaint about NWIPC—without any need for identification or attestations of truthfulness. *Id.*, Ex. C.

The State also passed HB 1232, amending certain provisions of HB 1470. HB 1232 authorizes DOH to inspect NWIPC "at any time … to determine whether it has failed or refused to comply with the requirements of this chapter …." RCW 70.395.050(1). The legislature also deleted "for-profit" from the definition of "[p]rivate detention facility" so the law would give the appearance of applying to one additional facility: a non-profit juvenile detention facility with a capacity of approximately 68. H.B. 1232, 69th Leg., Reg. Sess. (Wash. 2025) § 1(6). *See also* Korrell Decl., Ex. D at 2-3; MapJustice.org, *Martin Hall Juvenile Detention Facility, Washington Inmate Search*, https://washington.mapjustice.org/martin-hall-juvenile-detention-facility-

GEO GROUP, INC.'S MOTION TO DISMISS COUNTERCLAIM
(3:23-cv-05626-BHS) - 5

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

inmate-search (last visited June 8, 2026) (stating the current population is 13 inmates out of a capacity of 68). The purpose of this amendment was to try to improve the State's position in this litigation: less than a month after the Ninth Circuit's decision, DOH issued a preproposal to determine whether to create separate rules for Martin Hall. Korrell Decl., Ex. E.

### D. The Ninth Circuit Remands with a Limited Mandate.

The Ninth Circuit vacated the preliminary injunction and remanded for further proceedings. Addressing GEO's discriminatory-regulation theory, the Ninth Circuit clarified that HB 1470 §§ 2 and 3 must be evaluated using an appropriate comparator. Although this Court had followed guidance from *United States v. California*, 921 F.3d 865, 882 (9th Cir. 2019), in holding that the State's prisons and detention facilities were proper comparators, the Ninth Circuit rejected that framework, holding that private civil detention facilities are the proper comparators because NWIPC detainees are civil detainees, not criminal inmates. Dkt. 54 at 22-25. The panel declined to resolve whether HB 1470 §§ 2 and 3 are discriminatory and instead remanded with a mandate to this Court to conduct the inquiry. *Id.* at 28-29.[1] The panel rejected GEO's arguments on direct regulation intergovernmental immunity and both field and conflict preemption.

### E. GEO and ICE Enter a New Contract That Confirms Their Interpretation of Federal Supremacy and ICE Control Over NWIPC.

On March 27, 2026, after the Ninth Circuit opinion, GEO and ICE entered a new contract for the provision of detention, transportation, and food services for ICE detainees at NWIPC in support of the ICE ERO Seattle Field Office. *See* Korrell Decl., Ex. F. The contract is consistent with how both contracting parties—GEO and ICE—interpreted the original contract regarding authority over access to the facility and the primacy of federal requirements. Korrell Decl., Ex. G (Declaration of Matthew Cantrell in support of *Washington v. The GEO Group, Inc.*, No. 24-05639 "Cantrell DOH Decl."). The new contract confirms the parties' mutual understanding as to these requirements in important ways.

---

[1] The United States filed an amicus brief in support of GEO addressing intergovernmental-immunity principles.

GEO GROUP, INC.'S MOTION TO DISMISS COUNTERCLAIM
(3:23-cv-05626-BHS) - 6

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Control Over Facility Access. The "ICE/ERO Control Over Facility Access" (§ 40.0), provision of the new contract lays out control and access requirements for the secure portion of NWIPC: "Pre-clearance approvals are required for access to ICE field staff, facilities and information," "[p]ublic contact is prohibited unless authorized in advance by the COR or an ICE-designated official[,]" and requests by state and local government agencies "must be submitted in writing to the local ICE/ERO Field Office supervising the facility[.]" Korrell Decl., Ex. F at 71. This language is consistent with past contracts and comports with GEO and ICE's common understanding. *See* Cantrell DOH Decl. ¶¶ 8-9 ("ICE has final authority and control over access to the secure portions of the NWIPC" and "all [visitors] require authorization, coordination, and/or approval by the ERO Field Office as well as pre-clearance approvals and background checks as necessary.").

Supremacy of Federal Standards. The contract also clarifies the parties' intent regarding what 'applicable' state law means: "If any conflicts between federal, state, or local laws or rules arise, the federal rules shall be followed.… Otherwise, applicable or more stringent state or local laws or regulations shall not apply to the performance under this contract when they would directly or indirectly regulate, dictate, or control" GEO's performance. Korrell Decl., Ex. F at 4. The plain language of the new contract is unambiguous: the federal government does not require its contractor to comply with state inspection regimes like RCW 70.395.050 if they conflict with federal laws or would regulate, dictate, or control the contractor's performance. This is consistent with how the United States interpreted the original contract. *See* Korrell Decl., Ex. H at 15-16 (United States stating the prior contract did not waive intergovernmental immunity.). And it is entirely consistent with GEO's position throughout this suit.

### F.    ICE Denies Access—Twice.

On March 20, 2026, Todd Phillips and Joseph Laxson with the Washington State Department of Health arrived unannounced at NWIPC, stating that they sought to inspect the secure portion of NWIPC pursuant to RCW 70.395.050. *See* Korrell Decl., Ex. I, ¶ 14 ("Cantrell Decl."); *see also* Dkt. 64 ("Laxson Decl."), ¶ 11. GEO provided the DOH inspectors visitor

GEO GROUP, INC.'S MOTION TO DISMISS COUNTERCLAIM
(3:23-cv-05626-BHS) - 7

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

badges and screened them through security and into the secure lobby. Dkt. 78 ("Decl. of Bruce Scott in Support of Opp'n. to Mot. for Prelim. Injunction" also "Scott Decl."), Ex. B. Facility Administrator ("FA") Bruce Scott asked the inspectors to complete an Inspection Access Form. Scott Decl. ¶ 13, Exs. A-B.

Pursuant to GEO's contractual requirements, FA Scott informed ICE Assistant Field Office Director Matthew Cantrell that DOH inspectors sought access to the secure portion of NWIPC and provided him the Inspection Access Form. Cantrell Decl. ¶¶ 15-16; Scott Decl. ¶¶ 13-14. AFOD Cantrell went to the lobby without any GEO representative, denied DOH access on behalf of ICE, and noted that determination on the Inspection Access Form. Cantrell Decl. ¶¶ 16-20; Scott Decl. ¶¶ 15-16, Ex. A. AFOD Cantrell instructed the DOH inspectors "to contact the Seattle office to gain access to secure areas." Laxson Decl. ¶ 12. When ICE denied access, the DOH inspectors walked back through security, returned their GEO-issued visitor badges, and left NWIPC. Scott Decl., Ex. B. Mr. Laxson emailed ICE's Seattle Field Office on April 3, 2026, requesting access to the secure portion of NWIPC and had not received a response by April 28, 2026. Laxson Decl. ¶ 13.

AFOD Cantrell's denial was "consistent with ICE ERO's security protocols and within the scope of [his] responsibilities." Cantrell Decl. ¶ 21. ICE has confirmed that GEO did not deny access to the DOH inspectors and that it would violate GEO's federal contract for GEO to allow DOH inspectors into the facility and coordinate with the requested inspection over ICE's access denial. Cantrell Decl. ¶¶ 30-32.

The April 20, 2026, inspection followed the same pattern. Mr. Phillips and Mr. Laxson arrived unannounced at NWIPC, stating that they sought to inspect the secure portion of NWIPC pursuant to RCW 70.395.050. *See* Laxson Decl. ¶ 14; Cantrell Decl. ¶ 22; Scott Decl. ¶¶ 20-22. GEO provided the inspectors visitor badges and screened them through security, and FA Scott asked the inspectors to complete an Inspection Access Form. Scott Decl. ¶ 23, Exs. C-D. Following the requirements of GEO's federal contract and standard operating procedures for

GEO GROUP, INC.'S MOTION TO DISMISS COUNTERCLAIM
(3:23-cv-05626-BHS) - 8

these types of visits to the secure portion of NWIPC, FA Scott brought the Inspection Access Form to AFOD Cantrell. *Id.* ¶ 24; Cantrell Decl. ¶ 23.

After reviewing the form, AFOD Cantrell went down to the lobby without a GEO representative and denied DOH's access on behalf of ICE, again informing the DOH inspectors they needed approval from the Seattle Field Office. Cantrell Decl. ¶¶ 24-27; Scott Decl. ¶¶ 25-27. AFOD Cantrell again marked "ICE's denial of access on the Inspection Access Form and signed the form on behalf of ICE." Cantrell Decl. ¶ 29; Scott Decl., Ex. C. The DOH inspectors stated that they had "not received a response from the Seattle [Field] Office" and AFOD Cantrell suggested they "email the ICE Seattle Office again and consider visiting the ICE Seattle Office in person." Laxson Decl. ¶ 15. Presumably DOH has not followed this suggestion, as there is no evidence of that in the record.

GEO did not deny access on April 20, 2026, ICE did. Cantrell Decl. ¶ 31. AFOD Cantrell's "decision to deny access to DOH's inspectors was consistent with ICE ERO's security protocols and within the scope of [his] responsibilities." Cantrell Decl. ¶ 30. GEO would violate its contract if it "allowed DOH inspectors into the facility and coordinated with DOH's requested inspections over ICE's access denial." Cantrell Decl. ¶ 32; Scott Decl. ¶¶ 8-11.

### G. Contorting the Facts, the State Adds a Counterclaim Against GEO, Alleging GEO Denied Access.

While the Ninth Circuit issued a mandate to this Court to conduct an inquiry into GEO's intergovernmental immunity discrimination claim, the State changed the nature and scope of the case on April 28, 2026, by moving for leave to file a counterclaim against GEO concerning the DOH inspection attempts.

At every juncture, the State's Counterclaim conceals from this Court the seminal facts that DOH seeks to inspect a federal facility and that ICE denied the requested access (indeed, the only time the claim mentions ICE is for the unremarkable proposition that GEO contracts with ICE, Dkt. 62-1 ¶ 10). According to the Counterclaim, DOH inspectors sought to inspect NWIPC on March 20 and April 20, but "were denied access" and "stymied" because "GEO denied access

on both occasions." *Id.* ¶¶ 13-15, 22. The State, thus, makes the patently false and conclusory allegation that "GEO's refusal to permit inspections in response to detainee complaints violates [RCW] 70.395.050(2)(b)." *Id.* ¶ 23. The Counterclaim omits that AFOD Cantrell spoke to the DOH inspectors alone, that AFOD Cantrell denied access on behalf of ICE, or that DOH contacted the ICE Seattle Field Office to request access. *See* Cantrell Decl. ¶¶ 14-32; Laxson Decl. ¶¶ 11-15. Relying on these core omissions, the Counterclaim requests "a preliminary and permanent injunction enjoining [GEO] from denying DOH inspectors access to [NWIPC] under [RCW] 70.395.050." Dkt. 62-1 at 18.

The Court granted the State leave to amend on May 26, 2026. *See* Dkt. 82.

### III.    ARGUMENT

#### A.    There Is No Article III Standing.

Article III of the United States Constitution limits the jurisdiction of federal courts to the resolution of "[c]ases" and "[c]ontroversies." U.S. Const. art. III, § 2; *see City of L.A. v. Lyons*, 461 U.S. 95, 101 (1983) ("It goes without saying that those who seek to invoke the jurisdiction of the federal courts must satisfy the thres[]hold requirement imposed by Article III of the Constitution by alleging an actual case or controversy."). One aspect of this case-or-controversy requirement is that the party invoking the jurisdiction of the federal judiciary must establish "standing" to sue. *Raines v. Byrd*, 521 U.S. 811, 818 (1997).

Standing consists of three "irreducible" constitutional elements: (1) an "injury in fact"; (2) "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court"; and (3) a showing that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (citation modified).

A party may bring a "factual" or "facial" challenge to Article III standing under Rule 12(b)(1). *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A factual attack "disputes the truth of the allegations that, by themselves, would otherwise invoke federal

GEO GROUP, INC.'S MOTION TO DISMISS COUNTERCLAIM
(3:23-cv-05626-BHS) - 10

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

jurisdiction." *Id.* In evaluating a factual challenge, a "district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony[.]" *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

In this case, the State cannot meet its burden to establish that its requested relief will address its alleged injury. "[I]t is a bedrock principle that a federal court cannot redress 'injury that results from the independent action of some third party not before the court.'" *Murthy v. Missouri*, 603 U.S. 43, 57 (2024) (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40-41 (1976)). Redressability requires the Plaintiff to "'show a predictable chain of events' that would likely result from judicial relief and redress [its] injury." *Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 121 (2025) (quoting *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 385 (2024)). "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998). It is not enough that Plaintiff dislikes GEO or is frustrated by ICE's approval process. *See id.* ("psychic satisfaction is not an acceptable Article III remedy because it does not redress a cognizable Article III injury").

The Counterclaim alleges GEO denied access to the DOH inspectors, *see* Dkt. 62-1, Countercl. at 18, and seeks injunctive relief preventing GEO "from denying DOH inspectors access to GEO's Tacoma facility under [RCW] 70.395.050[,]" *id.* But the Counterclaim is factually inaccurate. It omits all the material facts about ICE, except for the one unremarkable proposition that GEO operates NWIPC pursuant to its contract with ICE. *Id.* at 17.

ICE, however, is central to the State's allegations, its alleged injury, and, most importantly, its requested relief. First, ICE denied access alone and without GEO present for both inspection attempts. *See* Cantrell Decl. ¶¶ 10-32. AFOD Cantrell provided sworn testimony in this case that he alone denied access on behalf of ICE, and the CCTV footage shows the same. Cantrell Decl. ¶¶ 30-32; Scott Decl. Exs. B & D. Second, ICE, not GEO, retains ultimate authority over decisions to grant or deny access to the secure portions of NWIPC. *See* Korrell Decl., Ex. F at 71; *see also* Cantrell Decl. ¶¶ 10-32. GEO is without authority to grant access to

GEO GROUP, INC.'S MOTION TO DISMISS COUNTERCLAIM
(3:23-cv-05626-BHS) - 11

the secure portions of NWIPC over ICE's denial. *See id*. And ICE denied access because it required the State to coordinate with and receive pre-clearance approval from the Seattle ICE/ERO field office for any inspection attempts. *See id*. The State has acknowledged in other papers—but not in the Counterclaim—that it sought ICE approval, and ICE has not yet acted on the State's request. Laxson Decl. ¶ 13 (stating Mr. Laxson emailed ICE's Seattle Field Office on April 3, 2026, and had not yet received a response as of April 28, 2026). The pleadings are, therefore, factually incorrect in their assertions that GEO denied access and that GEO can provide access without ICE approval.

An injunction against GEO alone will not redress the State's alleged injury because ICE is denying access. The State, therefore, lacks Article III standing to seek that futile relief and the Counterclaim should be dismissed under Rule 12(b)(1).

**B.      The Counterclaim Fails to State a Claim Under Rule 12(b)(6).**

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has 'facial plausibility' when the party seeking relief 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Inland Tech. Inc. v. Allen Co.*, 2026 WL 1501187, at \*3 (W.D. Wash. May 29, 2026) (quoting *Iqbal*, 556 U.S. at 678). "Conclusory allegations and unreasonable inferences, however, are insufficient to defeat a motion to dismiss." *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007); *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) (holding courts will not accept allegations that "are merely conclusory, unwarranted deductions of fact, or unreasonable inferences"). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks & citation omitted). Thus, a Plaintiff must plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (*citing Twombly*, 550 U.S. at 555).

GEO GROUP, INC.'S MOTION TO DISMISS COUNTERCLAIM
(3:23-cv-05626-BHS) - 12

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

The Counterclaim fails to state a claim under Rule 12(b)(6) because it provides bare-bones factual allegations and conclusory assertions. The Counterclaim skips over all the facts of both inspection attempts. The State alleges that "DOH inspectors sought to inspect GEO's Tacoma facility on March 20, 2026, but were denied access." Dkt. 62-1, Countercl. at 17. And it alleges that "DOH inspectors again sought to investigate on April 20, 2026, but were once again denied access[,]" which resulted in the State being "stymied[.]" *Id.* Both accounts of the inspection attempts intentionally turn to the passive tense to mask who denied access. The Counterclaim pleads no more facts about either inspection attempt. Rather, it later jumps to the allegation that "GEO denied access on both occasions" and that "GEO's refusal to permit inspections … violates [RCW] 70.395.050(2)(b)." *Id.* at 18. But the Counterclaim never alleges what happened during either inspection attempt. A mere allegation that an inspection was denied and so GEO is liable, is exactly the type of "the-defendant-unlawfully-harmed-me accusation" that cannot survive Rule 12(b). *Iqbal*, 556 U.S. at 678.

Second, the Counterclaim fails because *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18 (1940), provides GEO a complete defense. *Yearsley* protects a contractor who has "received a lawful authorization and acted according to its terms—meaning, when the contractor has acted within legal bounds." *GEO Grp., Inc. v. Menocal*, 607 U.S. ---, 146 S. Ct. 774, 784 (2026); *Hencely v. Fluor Corp.*, 608 U.S. ---, 146 S. Ct. 1086, 1099 (2026). Contractors fall outside *Yearsley* protection only where they either acted under an illegal authorization or exceeded the scope of a valid one. *Menocal*, 146 S. Ct. at 784.

The State alleges GEO operates NWIPC pursuant to a contract with ICE, Dkt. 62-1 at 17,[2] and the contract requires all visitors obtain pre-clearance approval to access secure portions of NWIPC, Korrell Decl., Ex. F at 71. The Counterclaim states DOH inspectors "were denied" access, and concludes that GEO denied access, but it pleads no allegations that could lead to the

---

[2] GEO requests the Court take judicial notice of the contract, which is incorporated by reference because the Counterclaim refers to it and GEO's performance under the contract forms the basis of the State's Counterclaim. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

GEO GROUP, INC.'S MOTION TO DISMISS COUNTERCLAIM
(3:23-cv-05626-BHS) - 13

reasonable inference that ICE did not receive lawful authorization from Congress or that GEO did not act according to ICE's lawful direction.

Nor could it. GEO plainly satisfies the *Yearsley* requirements. ICE has lawful authorization to both grant and deny access to its federal immigration detention facilities like NWIPC. In assessing this element, courts ask whether "the Government's authority to carry out the project was validly conferred, that is, if what was done was within the constitutional power of Congress." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 167 (2016). Maintaining security over a federal immigration detention facility is within the constitutional power of Congress. *See* U.S. Const. art. I, § 8, Cl. 4; *see also* 8 U.S.C. § 1231(g)(1) (directing DHS to arrange for appropriate places of detention through contracts with private entities). And GEO merely deferred the access decision to ICE pursuant to ICE's direction. The Counterclaim's allegations are precisely the kind of conduct *Yearsley* protects.

The Counterclaim, thus, must be dismissed under Rule 12(b)(6) both because the threadbare pleading fails to plausibly allege a claim, and because *Yearsley* is a complete defense.

### C. ICE Is a Required Party under Rule 19(a)(1)(A) and the Counterclaim Must Be Dismissed Under Rule 12(b)(7).

Under Rule 12(b)(7), a party may move to dismiss a case for failure to join a required party, as defined by Rule 19. The Rule 19 analysis asks whether the absent party is required under Rule 19(a), whether joinder is feasible, and, if joinder is not feasible, whether the case should proceed in equity and good conscience under Rule 19(b). *Maverick Gaming LLC v. United States*, 123 F.4th 960, 972-83 (9th Cir. 2024) (affirming Rule 19 dismissal because absent tribe was required, immune from joinder, and indispensable); *Republic of Phil. v. Pimentel*, 553 U.S. 851, 862-72 (2008) (ordering dismissal where absent sovereign entities claimed interests and could not be joined).

A person is a required party in two circumstances: if, "in that person's absence, the court cannot accord complete relief among existing parties," Fed. R. Civ. P. 19(a)(1)(A), or if the person claims an interest relating to the action and proceeding without that person may impair

GEO GROUP, INC.'S MOTION TO DISMISS COUNTERCLAIM
(3:23-cv-05626-BHS) - 14

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

the interest or expose an existing party to inconsistent obligations, *id.* at 19(a)(1)(B). When the absent required party is an immune sovereign and its interests may be impaired, dismissal is ordinarily required. *Pimentel*, 553 U.S. at 867-72; *Maverick Gaming*, 123 F.4th at 981-83; *White v. Univ. of Cal.*, 765 F.3d 1010, 1027-28 (9th Cir. 2014) (affirming dismissal where absent tribes' sovereign interests could not be protected in their absence).

The analysis is practical and remedy-specific. The Court must identify the absent party's legally protected interests in relation to the relief requested, not merely its general connection to the dispute. Further, a court may consider evidence outside the pleadings to determine whether an absent person should be joined. *See McShan v. Sherrill*, 283 F.2d 462, 464 (9th Cir. 1960).

Here, the State seeks secure-area access to a federal immigration detention facility. That remedy cannot be evaluated without deciding the scope and effect of ICE's retained and exercised access-control authority.

### 1.     Rule 19(a)(1)(A): Complete Relief is Not Possible Without ICE.

A court is able to afford "complete relief" for purposes of Rule 19 when a party's absence does not prevent a plaintiff from receiving its requested relief. Fed. R. Civ. P. 19(a)(1)(A); *Doe 1 v. Guzman*, 2026 WL 274661 (W.D. Wash. Feb. 3, 2026) (denying mandatory joinder where non-party was not needed to accord complete relief). The purpose of Rule 19 is not only to further the interests of the parties, but also those "of the public in avoiding repeated lawsuits on the same essential subject matter." *CP Nat'l Corp. v. Bonneville Power Admin.*, 928 F.2d 905, 912 (9th Cir. 1991) (quoting Fed. R. Civ. P. 19 Advisory Committee Notes).

The Court here cannot grant "complete relief" among the existing parties in ICE's absence. Plaintiff seeks an order preventing GEO from denying access to DOH inspectors to the secure areas of NWIPC. Only ICE can grant this relief, however. ICE has sole authority to grant or deny access to the secure portions of NWIPC, and GEO is without authority to grant access absent ICE's approval.

The contract requires pre-clearance for access to ICE field staff, facilities, and information, routes requests by state and local governmental agencies through ICE, limits full

GEO GROUP, INC.'S MOTION TO DISMISS COUNTERCLAIM
(3:23-cv-05626-BHS) - 15

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

inspection access to DHS, ICE, federal entities, and ICE-approved third-party inspectors, and gives ICE control over federal records, detainee information, and facility-security decisions. Korrell Decl., Ex. F at 4-5, 71. A judgment against GEO alone would therefore be hollow relief: it would not bind the agency that controls secure-area access and could withhold, deny, or countermand entry.

The facts show ICE, not GEO, exercised that authority. On March 20 and April 20, 2026, DOH inspectors arrived at NWIPC requesting entry under state law. GEO had them complete access forms and routed the requests to AFOD Cantrell. AFOD Cantrell told the DOH inspectors that secure-area access required ICE Seattle Field Office approval. Cantrell Decl. ¶¶ 11-17. He denied access on behalf of ICE, marked the denial on the access forms, and signed them as the ICE decisionmaker. Scott Decl. ¶¶ 14-18, 24-29; Cantrell Decl. ¶¶ 23-32.

Under these circumstances, relief enjoining GEO "from denying DOH inspectors access" cannot be effective where ICE both denied and continues to deny access. An injunction against GEO will not bind ICE. Fed. R. Civ. P. 65(d)(2); *see also Murthy*, 603 U.S. at 73 (holding that plaintiffs lacked standing for injunctive relief in part because an injunction against the Government Defendants would not redress censorship injuries where social media platforms were nonparties not bound by an injunction). GEO cannot compel ICE to approve access, cannot authorize disclosure of federal records or detainee information, and cannot decide whether a particular inspection request implicates federal security, detainee custody, medical operations, or law-enforcement information. And there is no evidence that an injunction against GEO will change how ICE, an independent decisionmaker, "will exercise [its] judgment." *Id.* at 57-58 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413 (2013)).

The problem is not merely that GEO lacks independent authority to grant or deny access. It is that any order requiring GEO to refrain from denying access to secure portions of NWIPC would not produce the meaningful, ongoing inspection access DOH seeks. ICE personnel and security protocols inside the secure perimeter mean entry without ICE approval would not be durable. ICE could direct the immediate removal of inspectors or treat the entry as a breach of

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

facility security. The Court cannot craft an injunction against GEO alone that actually affords the State usable access to housing units, medical areas operated by IHSC, and other secure spaces without binding ICE.

Under these circumstances, an order compelling GEO—but not ICE—to grant the State's requested access would serve absolutely no purpose. The Court cannot accord "complete relief" among the existing parties absent the inclusion of ICE as a party. *See, e.g.*, *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1155-56 (9th Cir. 2002) (affirming dismissal where the requested relief would have impaired an absent sovereign's contractual interests and exposed the defendant to conflicting obligations); *L.A. All. for Hum. Rts. v. County of Los Angeles*, 14 F.4th 947, 956 (9th Cir. 2021) (vacating injunction that extended beyond the parties and claims before the court).

### 2.    ICE Has Legally Protected Interests This Action Would Impair.

ICE's interests are concrete, not background or abstract. ICE has claimed and exercised its access-control interests in this dispute. AFOD Cantrell testified under oath that he denied access on ICE's behalf, consistent with ICE's authority and security protocols. Cantrell Decl. ¶¶ 23-32. The contract also memorializes ICE's retained access-control authority. Korrell Decl., Ex. F at 71. Rule 19(a)(1)(B) does not require the absent sovereign to appear before the Court may recognize that its legally protected interests are at stake. *See Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affairs*, 932 F.3d 843, 852-57 (9th Cir. 2019) (affirming Rule 19 dismissal based on absent Navajo Nation's protected interests); *Shermoen v. United States*, 982 F.2d 1312, 1318-20 (9th Cir. 1992) (affirming Rule 19 dismissal where absent tribes' interests would be impaired).

First, ICE has a sovereign and operational interest in federal immigration detention. Congress assigned DHS and ICE responsibility for detention and removal operations. *See* 6 U.S.C. § 252; 8 U.S.C. §§ 1225, 1226, 1231; 8 U.S.C. § 1231(g)(1). Federal immigration detention implicates national sovereign interests. *Arizona v. United States*, 567 U.S. 387, 394-97 (2012) (invalidating state immigration provisions that intruded on federal immigration authority);

GEO GROUP, INC.'S MOTION TO DISMISS COUNTERCLAIM
(3:23-cv-05626-BHS) - 17

*Hines*, 312 U.S. at 66-74 (invalidating state alien-registration law in light of federal immigration authority).

Second, ICE has a security and access-control interest in a secure federal facility. The contract expressly reserves to ICE pre-clearance authority over access to ICE facilities and information, routes state-governmental access requests through ICE, requires GEO to comply with ICE security plans, and requires GEO to detect and report unauthorized access. Korrell Decl., Ex. F at 71; *see also id.* at 18 ("The Service Provider shall attempt to detect anyone attempting to gain unauthorized access to the site(s) identified in this contract, and notify both ICE and local law enforcement."). The State's requested injunction would adjudicate and override that access-control regime.

Third, ICE has interests in federal records, Controlled Unclassified Information, Privacy Act information, Sensitive Security Information, immigration-status information, medical information, detainee records, and physical-security information located in or associated with NWIPC. *Id.* at 30-35. DOH seeks access to areas and information that may implicate those federal records and disclosure restrictions. GEO cannot decide whether federal information may be accessed or disclosed to state inspectors.

Fourth, ICE has interests in medical and detainee-welfare operations. The contract states that IHSC provides detainee health care and is the final health authority on health-related matters. *Id.* at 23; *accord* Cantrell Decl. ¶ 7. The State seeks to inspect medical issues and medical areas. Dkt. 62-1, Countercl. at 17 ("These complaints have run the gamut from inadequate medical care …."). That access directly implicates IHSC operations, detainee health information, and federal medical decisions.

Fifth, ICE has legally protected interests in the access-control regime it negotiated and has exercised under the contract. ICE negotiated and retained access-control, security, records, inspection, and operational provisions in the contract. A court order requiring GEO to provide access over ICE's denial would alter that regime and impair ICE's contractual rights. *See Dawavendewa*, 276 F.3d at 1156-57 (absent tribe required where relief would impair contractual

GEO GROUP, INC.'S MOTION TO DISMISS COUNTERCLAIM
(3:23-cv-05626-BHS) - 18

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

rights); *Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1023-25 (9th Cir. 2002) (affirming Rule 19 dismissal where absent tribes had protected compact rights); *Confederated Tribes of Chehalis Indian Rsrv. v. Lujan*, 928 F.2d 1496, 1498-1500 (9th Cir. 1991) (affirming dismissal where absent tribe's interests would be impaired).

Finally, Congress has created a federal inspection and complaint process for immigration detention. The Office of the Immigration Detention Ombudsman is responsible for receiving and investigating complaints concerning individuals in immigration detention and may conduct unannounced inspections of detention facilities. 6 U.S.C. § 205(b)(1), (3). The State's requested state-law access to federal detention areas would require the Court to adjudicate how that federal process interacts with ICE's access controls. ICE has a direct interest in that adjudication.

The State cannot avoid Rule 19 by characterizing these interests as mere contract friction. This case does not merely involve a contract to which ICE is a party. DOH asks the Court to decide whether ICE's denial is legally irrelevant, whether the contract applies to state inspectors, whether a state health inspection is exempt from ICE's access-control provision, whether GEO can admit inspectors into secure areas over ICE's objection, and whether federal records, detainee information, IHSC medical operations, and secure-facility protocols must yield to state inspection demands. There can be no question that those rulings would affect ICE's operational, security, and contractual rights directly—not incidentally.

### 3. Proceeding Without ICE Will Impair and Impede ICE's Interests.

GEO cannot adequately protect ICE's interests. The State's likely answer—that GEO and ICE both oppose unapproved access—mistakes a shared litigation position for representation of a sovereign. GEO is a private contractor seeking to avoid state liability, inconsistent commands, and breach of contract. ICE is a federal sovereign charged by Congress with both the responsibility for and administration of immigration detention operations. *See* 6 U.S.C. § 252; 8 U.S.C. §§ 1225, 1226, 1231; 8 U.S.C. § 1231(g)(1). Those interests are different in kind.

Proceeding in this case without ICE to represent and address dominant federal interests with foreign policy implications would undoubtedly impair and impede those interests. *See*

GEO GROUP, INC.'S MOTION TO DISMISS COUNTERCLAIM
(3:23-cv-05626-BHS) - 19

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Arizona*, 567 U.S. at 394-95; *see also Mathews v. Diaz*, 426 U.S. 67, 81 n.17 (1976) ("Any policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations[.]").

More specifically, here, GEO cannot waive or assert ICE's sovereign immunity. GEO cannot bind ICE to a court-ordered access protocol. GEO cannot decide whether ICE will grant pre-clearance. GEO cannot speak for DHS or ICE concerning national security, law-enforcement, detainee custody, protected federal information, IHSC operations, the Office of the Immigration Detention Ombudsman process, or federal detention policy. GEO cannot appeal, settle, or compromise on ICE's behalf. And GEO cannot change the contract or agree to impair ICE's retained rights under it.

GEO's interests also may diverge from ICE's. ICE may insist on strict access control even if that increases GEO's litigation exposure. ICE may object to disclosure or access terms GEO would accept to reduce risk. ICE may treat unapproved access as a security incident or contract breach. ICE may prefer to litigate these issues through DOJ or not at all. GEO cannot make those choices for the United States.

The Ninth Circuit's required-party cases reject the premise that an existing party adequately represents an absent sovereign simply because their immediate positions overlap. *See Maverick Gaming*, 123 F.4th at 979-81 (affirming dismissal and rejecting argument that federal and state defendants adequately represented absent tribe); *Dine Citizens*, 932 F.3d at 852-57 (affirming dismissal and holding federal defendants did not adequately represent absent tribe); *White*, 765 F.3d at 1027-28 (affirming dismissal and rejecting adequate-representation argument); *Jamul Action Comm. v. Simermeyer*, 974 F.3d 984, 996-99 (9th Cir. 2020) (affirming dismissal where absent tribe's sovereign and contractual interests could not be protected). The same principle applies here. GEO can explain why it cannot provide access over ICE's denial. It cannot protect ICE's independent right to control secure access, interpret its own contract, and determine whether state officials may enter its facility.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

That DOJ has not intervened does not change the analysis. The contract expressly preserves DOJ's discretion on litigation matters. Korrell Decl. Ex. F, at 4-5. A sovereign's decision not to intervene in a related preliminary-injunction dispute is not consent to adjudication of its interests, not a waiver of immunity, and not a concession that a private contractor may adequately represent the United States.

### 4.      Proceeding Without ICE Would Expose GEO to Inconsistent Obligations.

Proceeding without ICE would both impair ICE's interests and expose GEO to inconsistent obligations. The Counterclaim necessarily asks the Court to decide the legality of core issues of ICE's contract and protocols: whether ICE's access-control provisions apply, whether ICE's denial matters, whether state health inspectors may bypass ICE pre-clearance, and whether GEO may be ordered to open secure areas despite ICE's refusal or nonresponse. Those are ICE's interests and ICE's decisions.

The inconsistent-obligations risk is concrete. ICE's position, reflected in the contract and in the facts underlying the Counterclaim, is that secure-area access requires ICE approval. But here, the requested injunctive relief would command GEO to provide access without that approval. If GEO complies with DOH's requested order, it risks violating the contract, ICE security plans, and ICE's express access decisions. If GEO follows ICE, it risks contempt or state-law enforcement. Rule 19 exists to prevent precisely this "rock and a hard place." *See Dawavendewa*, 276 F.3d at 1156-57; *Quileute Indian Tribe v. Babbitt*, 18 F.3d 1456, 1460-61 (9th Cir. 1994) (affirming Rule 19 dismissal where proceeding would impair absent tribes' treaty rights and risk inconsistent obligations).

The briefing on the State's Motion for Preliminary Injunction in this case illustrates that exact problem. The State seeks an order enjoining GEO from "denying or refusing access" and "otherwise interfering" with DOH enforcement, and requiring GEO to provide notice to all facility employees. Dkt. 63-1 at 2. At the same time, DOH's own declarant stated that ICE required Seattle Field Office approval and that DOH had not received any response. Laxson Decl.

GEO GROUP, INC.'S MOTION TO DISMISS COUNTERCLAIM
(3:23-cv-05626-BHS) - 21

¶¶ 11-17. GEO's evidence confirms that AFOD Cantrell denied access and signed the forms on behalf of ICE. Scott Decl. ¶¶ 14-29 & Exs. A-D; Cantrell Decl. ¶¶ 23-32. An injunction against GEO alone would not solve that conflict. It would create it.

Proceeding without ICE may force GEO into an untenable position of having to mediate directly conflicting orders from ICE and this Court. And certainly, the State will undertake enforcement actions against GEO to further the State's long-standing crusade against federal immigration policy. The circumstances of the present case satisfy the requirements of Rule 19(a)(1)(B)(ii).

**D.      After Concluding that ICE is a Necessary Party, the Court Should Dismiss.**

**1.      ICE Cannot Be Joined Because Sovereign Immunity Bars Such Joinder.**

Joinder is not feasible in this context because it is black-letter law that ICE is immune from suit under the doctrine of sovereign immunity.

Federal agencies are immune from suit unless Congress unequivocally waives immunity. *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 260-61 (1999) (affirming dismissal because sovereign immunity barred requested equitable lien against federal funds); *Minnesota v. United States*, 305 U.S. 382, 386-89 (1939) (holding United States was indispensable and could not be sued absent consent). To that end, this Court has repeatedly held that ICE is immune from civil suits. *See Amir v. Five Unnamed U.S.A. Immigr. Enf't & Custom Offs. in Vancouver Int'l Airport*, 2010 WL 2402910, at *3 (W.D. Wash. Mar. 30, 2010), *report and recommendation adopted*, 2010 WL 2402915 (W.D. Wash. June 10, 2010) (Dismissing claim against ICE because ICE had not waived sovereign immunity); *Marks v. United States*, 2007 WL 3087157, at *3 (W.D. Wash. Oct. 19, 2007) (same).

Thus, "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Blue Fox, Inc.*, 525 U.S. at 260 (quoting *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)). Waivers of sovereign immunity must be "unequivocally expressed" in statutory text, and the waiver of sovereign immunity is to be strictly construed, in terms of its scope, in favor

GEO GROUP, INC.'S MOTION TO DISMISS COUNTERCLAIM
(3:23-cv-05626-BHS) - 22

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

of the sovereign. *Id.* at 261. The State identifies no waiver allowing it to sue ICE under RCW 70.395.050 to compel state-law inspection access to secure portions of a federal immigration detention facility. GEO is unaware of any such waiver. To the contrary, Congress specifically assigned responsibility to address the conditions of immigration detention to the discretion of DHS and ICE. *See* 6 U.S.C. § 112(b)(2); 28 U.S.C. § 530C(a)(4); 8 U.S.C. §§ 1225(b); 1226(e).

If DOH believes ICE is unlawfully withholding access, that confirms the problem. The dispute is with ICE's access decision and access-control regime, not with GEO alone. DOH cannot obtain the functional equivalent of relief against ICE by suing GEO and asking the Court to declare ICE's denial irrelevant in ICE's absence. For the foregoing reasons, ICE is immune from the State's claims.

### 2. Equity and Good Conscience Require Dismissal under Rule 19(b).

Because ICE is required and cannot be joined, Rule 19(b) compels the Court to determine whether the case should proceed in equity and good conscience. It should not. When an immune sovereign has a nonfrivolous interest that may be injured, dismissal is the ordinary result. *Pimentel*, 553 U.S. at 867-72; *Maverick Gaming*, 123 F.4th at 981-83; *Dine Citizens*, 932 F.3d at 857-61. Indeed, the *White* court concluded this "wall of circuit authority" compelled dismissal without balancing under Rule 19(b) when the required sovereign party was immune from suit. *White*, 765 F.3d at 1028-29.

Moreover, even if this Court examined each of the factors in Rule 19(b), dismissal would be required.

First, as detailed in Section III.C.3 *supra*, a judgment in ICE's absence would prejudice ICE and GEO. It would adjudicate ICE's access-control regime, security interests, contract rights, federal records, detainee information, and medical operations without ICE. And it would prejudice GEO by placing it between ICE's access requirements and a state-law injunction.

Second, the prejudice cannot be avoided through shaping. A narrow order requiring GEO merely to cooperate, route requests, or refrain from independent obstruction would be hollow relief. ICE remains unbound and may continue to deny or withhold approval. But a broader order

GEO GROUP, INC.'S MOTION TO DISMISS COUNTERCLAIM
(3:23-cv-05626-BHS) - 23

requiring GEO to provide access without ICE approval would impair ICE's security and contractual interests and force GEO into an operational conflict. Rule 19 does not permit the Court to avoid ICE's absence by choosing between ineffective relief and prejudicial relief.

Third, the absence of an alternative state-law forum does not override sovereign immunity. *Pimentel* recognizes that dismissal may leave a plaintiff without a forum for definitive resolution, but that result is part of sovereign immunity. 553 U.S. at 872. The State may seek access through ICE's channels or pursue whatever federal process Congress has authorized. It may not obtain indirect relief against ICE by suing GEO alone.

## IV.    CONCLUSION

For the foregoing reasons, GEO respectfully requests that the Court dismiss Counterclaim-Plaintiffs' Counterclaim for lack of standing under Rule 12(b)(1), for failure to state a claim under Rule 12(b)(6), or, in the alternative, order that ICE is a necessary party to this action pursuant to Rule 12(b)(7) and Rule 19 of the Federal Rules of Civil Procedure and thereafter dismiss the Counterclaim with prejudice pursuant to Rule 19(b) after concluding that joinder of ICE is infeasible due to the doctrine of sovereign immunity.

///

///

///

GEO GROUP, INC.'S MOTION TO DISMISS COUNTERCLAIM
(3:23-cv-05626-BHS) - 24

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

DATED this 9th day of June, 2026.

*I hereby certify this memorandum contains 8,365 words in compliance with the Local Civil Rules.*

Davis Wright Tremaine LLP
Attorneys for Plaintiff The GEO Group, Inc.

By ___*s/ Harry Korrell*_____.
  Harry J. F. Korrell, WSBA #23173
  920 Fifth Avenue, Suite 3300
  Seattle, WA  98104-1610
  Telephone: 206-622-3150
  Email: HarryKorrell@dwt.com

The GEO Group, Inc.

By __*s/ Scott Schipma*_____
  Scott Schipma (Admitted *pro hac vice*)
  4955 Technology Way
  Boca Raton, FL 33431
  Phone: 561-999-7615
  Email: scott.schipma@geogroup.com

GEO GROUP, INC.'S MOTION TO DISMISS COUNTERCLAIM
(3:23-cv-05626-BHS) - 25