The Honorable Benjamin H. Settle

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT TACOMA

THE GEO GROUP, INC.,

Plaintiff,

v.

ROBERT W. FERGUSON, in his official capacity as Governor of the State of Washington; NICHOLAS W. BROWN, in his official capacity as Attorney General of the State of Washington,

Defendants.

ROBERT W. FERGUSON, in his official capacity as Governor of the State of Washington; NICHOLAS W. BROWN, in his official capacity as Attorney General of the State of Washington,

Counterclaim-Plaintiffs,

v.

THE GEO GROUP, INC.,

Counterclaim-Defendant.

NO. 3:23-cv-05626-BHS

DEFENDANTS-COUNTERCLAIMANTS' RESPONSE TO THE GEO GROUP, INC.'S MOTION TO DISMISS COUNTERCLAIM

NOTE ON MOTION CALENDAR: JULY 7, 2026

DEFENDANTS-COUNTERCLAIMANTS' RESPONSE TO THE GEO GROUP, INC.'S MOTION TO DISMISS COUNTERCLAIM NO. 3:23-cv-05626-BHS

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   FACTS ............................................................................................................... 2

      A.   GEO Sued to Enjoin Wash. Rev. Code § 70.395, but the Ninth Circuit
           Rejected Its Challenge ............................................................................. 2

      B.   After GEO Failed to Comply with Wash. Rev. Code § 70.395.050, the State
           Defendants Counterclaimed, Seeking a Preliminary Injunction ............................... 3

      C.   GEO's New Contract Requires Compliance with State Public Health Laws ............ 3

      D.   GEO Continues to Deny the Department of Health Access, While Allowing
           Other Inspections Without Any Pre-Clearance from ICE ........................................ 5

II.   LEGAL STANDARDS ...................................................................................... 6

IV.   ARGUMENT .................................................................................................... 7

      A.   The State Counterclaimants Have Standing .............................................. 7

      B.   Because GEO Is Not Immune from Washington Law, its Rule 12(b)(6)
           Motion Should be Denied ......................................................................... 8

      C.   ICE is Not a Required Party Under Rule 19(a) ........................................ 10

           1.   Complete relief is possible ........................................................... 11

           2.   ICE is not a required party because it has not claimed an interest .................. 12

                a.   Even so, GEO failed to demonstrate a legally protected interest on
                     ICE's behalf that would be impaired ........................................... 14

                b.   And GEO failed to demonstrate inconsistent obligations ........................ 18

      D.   Equity and Good Conscience Do Not Require Dismissal Under Rule 19(b) .......... 19

      E.   The Public Rights Exception Applies ..................................................... 20

V.    CONCLUSION ................................................................................................ 21

DEFENDANTS-COUNTERCLAIMANTS'
RESPONSE TO THE GEO GROUP, INC.'S
MOTION TO DISMISS COUNTERCLAIM
NO. 3:23-cv-05626-BHS

i

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

# TABLE OF AUTHORITIES

## Cases

*A. H. R. v. Wash. State Health Care Auth.*,
  469 F. Supp. 3d 1018 (W.D. Wash. 2016) .......................................................... 17

*ASARCO, LLC v. Union Pac. R.R. Co.*,
  765 F.3d 999 (9th Cir. 2014) ............................................................................. 7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .......................................................................................... 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .......................................................................................... 7

*Biagro W. Sales Inc. v. Helena Chem. Co.*,
  160 F. Supp. 2d 1136 (E.D. Cal. 2001) ............................................................. 7

*Bonnichsen v. United States*,
  367 F.3d 864 (9th Cir. 2004) .......................................................................... 7, 8

*Bradley, Gmelich & Wellerstein LLP v. Kay*,
  No. 2:25-cv-10471-AB-DFM, 2026 WL 712564 (C.D. Cal. Feb. 3, 2026) ......................... 13

*Cabalce v. Thomas E. Blanchard & Assocs.*,
  797 F.3d 720 (9th Cir. 2015) ............................................................................ 9

*Campbell-Ewald Co. v. Gomez*,
  577 U.S. 153 (2016) .......................................................................................... 9

*Citizen Band Potawatomi Indian Tribe of Oklahoma v. Collier*,
  17 F.3d 1292 (10th Cir. 1994) ........................................................................ 7, 14

*City of Seattle v. McCready*,
  877 P.2d 686 (Wash. 1994) ............................................................................... 11

*Clinton v. Babbit*,
  180 F.3d 1081 (9th Cir. 1999) ........................................................................... 17

*Conner v. Burford*,
  848 F.2d 1441 (9th Cir. 1988) ........................................................................... 20

*Courthouse News Serv. v. Planet*,
  750 F.3d 776 (9th Cir. 2014) ............................................................................. 6

*CP Nat'l Corp. v. Bonneville Power Admin.*,
  928 F.2d 905 (9th Cir. 1991) ............................................................................. 12

*Cramer v. Consol. Freightways Inc.*,
  255 F.3d 683 (9th Cir. 2001) ............................................................................. 18

DEFENDANTS-COUNTERCLAIMANTS'
RESPONSE TO THE GEO GROUP, INC.'S
MOTION TO DISMISS COUNTERCLAIM
NO. 3:23-cv-05626-BHS

ii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

*Dart Advantage Warehousing, Inc. v. United States*,
52 Fed. Cl. 694 (Fed. Cl. 2002) ........................................................................ 18

*Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*,
276 F.3d 1150 (9th Cir. 2002) .................................................................... 17, 19

*Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affairs*,
932 F.3d 843 (9th Cir. 2019) .......................................................................... 13

*Disabled Rights Action Comm. v. Las Vegas Events, Inc.*,
375 F.3d 861 (9th Cir. 2004) ................................................................ 11, 17, 19

*Hall v. Norton*,
266 F.3d 969 (9th Cir. 2001) ............................................................................ 8

*Harris v. Rand*,
682 F.3d 846 (9th Cir. 2012) ............................................................................ 6

*Ileto v. Glock Inc.*,
349 F.3d 1191 (9th Cir. 2003) .......................................................................... 6

*Kescoli v. Babbitt*,
101 F.3d 1304 (9th Cir. 1996) ........................................................................ 21

*L.T. v. ICE*,
No. 5:26-cv-00322 (C.D. Cal. Mar. 30, 2026) ................................................ 13

*March for Our Lives Idaho v. McGrane*,
697 F. Supp. 3d 1029 (D. Idaho 2023) ............................................................ 6

*Menocal v. The GEO Grp., Inc.*,
635 F. Supp. 3d 1151 (D. Colo. 2022) ............................................................ 19

*Mt. Hawley Ins. Co. v. Sandy Lake Properties, Inc.*,
425 F.3d 1308 (11th Cir. 2005) ...................................................................... 14

*NGV Gaming, Ltd. v. Upstream Point Molate, LLC*,
355 F. Supp. 2d 1061 (N.D. Cal. 2005) .......................................................... 11

*Northrop Corp. v. McDonnell Douglas Corp.*,
705 F.2d 1030 (9th Cir. 1983) ............................................................ 11, 12, 14

*Pharm. Research & Mfrs. of Am. v. Walsh*,
538 U.S. 644 (2003) ........................................................................................ 16

*Porter v. Jones*,
319 F.3d 483 (9th Cir. 2003) ............................................................................ 6

*Powers v. City of Seattle*,
242 F.R.D. 566 (W.D. Wash. 2007) ................................................................ 13

DEFENDANTS-COUNTERCLAIMANTS'
RESPONSE TO THE GEO GROUP, INC.'S
MOTION TO DISMISS COUNTERCLAIM
NO. 3:23-cv-05626-BHS

iii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

*Republic of Philippines v. Pimentel*,
  553 U.S. 851 (2008).............................................................................................. 19

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004) ............................................................................. 6

*Shermoen v. United States*,
  982 F.2d 1312 (9th Cir. 1992) ........................................................................... 13

*St. Clair v. City of Chico*,
  880 F.2d 199 (9th Cir. 1989) ............................................................................... 6

*The GEO Grp. Inc. v. Ferguson*,
  No. 24-2815, (9th Cir. July 25, 2024) ............................................................... 13

*The GEO Grp., Inc. v. Inslee*,
  151 F.4th 1107 (9th Cir. 2025) ..................................................................... 2, 14

*The GEO Grp., Inc. v. Menocal*,
  146 S. Ct. 774 (2026) ........................................................................................ 12

*The GEO Grp., Inc. v. Newsom*,
  50 F.4th 745 (9th Cir. 2022) ....................................................................... 14, 17

*United States v. Amdahl Corp.*,
  786 F.2d 387 (Fed. Cir. 1986) ........................................................................... 18

*United States v. Bowen*, 172 F.3d 682, 688 (9th Cir.1999) ........................................ 10, 12, 13

*United States v. California*,
  921 F.3d 865 (9th Cir. 2019) ............................................................................. 14

*Vera v. Wells Fargo Bank, N.A.*,
  No. 2:10-cv-01568 JWS, 2011 WL 334286 (D. Ariz. Jan. 31, 2011) ................................ 20

*Ward v. Apple Inc.*,
  791 F.3d 1041 (9th Cir. 2015) ........................................................................... 17

*Wash. Dep't of Health v. The GEO Grp., Inc*,
  No. 3:24-cv-05639-BHS (W.D. Wash. Mar. 10, 2026)................................................ 6, 10

*Wash. Dep't of Health v. The GEO Grp., Inc.*,
  No. 24-5880, 2025 WL 2986482 (9th Cir. Oct. 23, 2025) .................................................. 9

*Wash. Dep't of Lab. & Indus. v. GEO Secure Services., LLC.*,
  No. 3:24-cv-05095-BHS (W.D. Wash. Sept. 25, 2024) ......................................... 5, 8, 10, 12

*Wash. Dep't of Lab. & Indus. v. GEO Secure Servs., LLC*,
  No. 3:24-cv-05095-BHS, 2024 WL 3250426 (W.D. Wash. July 1, 2024) ................... passim

DEFENDANTS-COUNTERCLAIMANTS'
RESPONSE TO THE GEO GROUP, INC.'S
MOTION TO DISMISS COUNTERCLAIM
NO. 3:23-cv-05626-BHS

iv

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

*Washington v. The GEO Grp., Inc.*,
No. 3:17-cv-05806-RJB, 2018 WL 1963792 (W.D. Wash. April 26, 2018)......................... 20

*WhatsApp Inc. v. NSO Grp. Techs. Ltd.*,
472 F. Supp. 3d 649 (N.D. Cal. 2020) ..................................................................................... 7

*White v. Lee*,
227 F.3d 1214 (9th Cir. 2000) ................................................................................................. 6

*Yearsley v. W.A. Ross Const. Co.*,
309 U.S. 18 (1940).................................................................................................................. 9

*Yeend v. Akima Global Servs., LLC*,
347 F.R.D. 405 (N.D.N.Y. 2024) ............................................................................... 13, 18, 20

### Statutes

Wash. Rev. Code § 70.395.050(2)(b) ......................................................................................... 20

### Rules

Fed. R. Civ. P. 8(a)(2)................................................................................................................... 6

Fed. R. Civ. P. 12(b)(7) ................................................................................................................ 7

Fed. R. Civ. P. 19(a)(1)(A) ..................................................................................................... 10, 12

Fed. R. Civ. P. 19(a)(1)(B) ......................................................................................................... 10

Fed. R. Civ. P. 19(b) ................................................................................................................... 10

### Other Authorities

*Immigration Detention in California*,
Cal. Dep't of Justice (revised May 2025),
https://www.oag.ca.gov/system/files/media/immigration-detention-2025.pdf ....................... 5

*Northwest ICE Processing Center*,
Tacoma-Pierce County Health Department, https://tpchd.org/info/northwest-ice-processing-center/ (last accessed Jun. 17, 2026) ........................................................... 17

*OIDO Inspection of Northwest ICE Processing Center*,
Office of the Immigration Detention Ombudsman (Nov. 20, 2024),
https://www.dhs.gov/sites/default/files/2024-12/24_1120_oido_inspection-report-northwest-ice-processing-center.pdf ............................................................................... 11, 17

*'They Treat Us Like Dogs in Cages': Inside the Adelanto ICE Processing Center*,
Disability Rights California (July 17, 2025), https://www.disabilityrightsca.org/drc-advocacy/investigations/inside-the-adelanto-ice-processing-center ................................. 5, 17

DEFENDANTS-COUNTERCLAIMANTS'
RESPONSE TO THE GEO GROUP, INC.'S
MOTION TO DISMISS COUNTERCLAIM
NO. 3:23-cv-05626-BHS

v

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

Ximena Bustillo,
*DHS blames funding lapse for shutdown of internal detention oversight*,
NPR (May 7, 2026), https://www.npr.org/2026/05/07/g-s1-120834/trump-immigration-detention-ombudsman-shutdown.......................................................... 18

DEFENDANTS-COUNTERCLAIMANTS'
RESPONSE TO THE GEO GROUP, INC.'S
MOTION TO DISMISS COUNTERCLAIM
NO. 3:23-cv-05626-BHS

vi

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

## I.   INTRODUCTION

In its latest bid to avoid public health inspections under Washington law, GEO advances three arguments that courts have repeatedly rejected in this case and related cases against GEO. The Court should deny GEO's motion to dismiss and grant the State Counterclaimants' motion for preliminary injunction.

First, on Rule 12(b)(1), the State Counterclaimants have standing because their injuries are redressable. GEO's contract with ICE clearly sets out that GEO—not ICE—owns and operates the Tacoma facility and controls entry access. An injunction enjoining an owner and operator of a facility from state inspections would clearly redress the State Counterclaimants' current harms of not being able to enforce duly-enacted state law. *See, e.g.*, *Wash. Dep't of Lab. & Indus. v. GEO Secure Servs., LLC*, No. 3:24-cv-05095-BHS, 2024 WL 3250426, at \*12 (W.D. Wash. July 1, 2024) ("GEO's act of denying the agency access to the facility to inspect such conditions has already caused irreparable harm to the State.").

Second, on Rule 12(b)(6), the counterclaim sufficiently alleges GEO wrongly denied the Department of Health access to the Tacoma facility when the Department sought to inspect under Wash. Rev. Code § 70.395.050(2)(b). *See id.* GEO's *Yearsley* defense to the counterclaim fails because it has not shown that any order denying entry was validly conferred.

Finally, on Rule 12(b)(7), ICE is not a required party because the State Counterclaimants can get complete relief without ICE. Again, GEO's contract is clear: GEO (and GEO alone) controls all points of entry and exit from its own facility. If GEO were to stand aside and let the Department of Health enter the facility, the Department could perform its duty and inspect the Tacoma facility.

For all of these reasons, the Court should deny GEO's motion.

DEFENDANTS-COUNTERCLAIMANTS'
RESPONSE TO THE GEO GROUP, INC.'S
MOTION TO DISMISS COUNTERCLAIM
NO. 3:23-cv-05626-BHS

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

## II.    FACTS

### A.    GEO Sued to Enjoin Wash. Rev. Code § 70.395, but the Ninth Circuit Rejected Its Challenge

In July 2023, GEO sued the Governor and Attorney General to enjoin enforcement of a then-newly enacted state law, Wash. Rev. Code § 70.395, which set basic public health and safety requirements for private detention facilities and directed Washington's Department of Health to inspect them. Dkt. # 1. While rejecting GEO's direct regulation and preemption arguments, this Court concluded that certain provisions violated the discrimination prong of intergovernmental immunity on the theory that the requirements differed from those applicable to state prisons and jails and GEO's Tacoma facility was the only facility subject to its requirements. Dkt. # 35 at p. 32.

On appeal, the Ninth Circuit vacated GEO's preliminary injunction and remanded in part. *The GEO Grp., Inc. v. Inslee*, 151 F.4th 1107, 1116–24 (9th Cir. 2025). The Ninth Circuit affirmed this Court's order dismissing GEO's direct regulation and preemption defenses, reasoning that Wash. Rev. Code § 70.395 did *not* give Washington virtual power of review over ICE detention facilities nor prevent ICE from detaining individuals at GEO's Tacoma facility. *Id.* at 1118. Regarding preemption, the Ninth Circuit saw no indication that Congress had demonstrated any intent, let alone a clear and manifest intent, to preempt sections of Wash. Rev. Code § 70.395. *Id.* at 1123.

As for the discrimination prong, the Ninth Circuit remanded for this Court to determine whether Washington regulates the conditions of confinement at GEO's Tacoma facility under Wash. Rev. Code § 70.395.040 differently from the way it regulates the conditions in civil detention facilities. *Id.* at 1122.

The Ninth Circuit denied both GEO's petition for rehearing en banc and GEO's requested stay of the mandate, and issued its mandate on March 4, 2026, dissolving this Court's stay. Dkt. ## 56, 57, 69 at p. 2.

DEFENDANTS-COUNTERCLAIMANTS'
RESPONSE TO THE GEO GROUP, INC.'S
MOTION TO DISMISS COUNTERCLAIM
NO. 3:23-cv-05626-BHS

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

**B.      After GEO Failed to Comply with Wash. Rev. Code § 70.395.050, the State Defendants Counterclaimed, Seeking a Preliminary Injunction**

The Department of Health continues to receive frequent complaints about the conditions inside GEO's Tacoma facility. Dkt. # 65 ¶ 4. Common complaints reported include medical concerns including infection control, living conditions and cleanliness, and food, water, and air quality. *Id.* After the Ninth Circuit issued its mandate, the Department twice sent employees to GEO's Tacoma facility in accordance with Wash. Rev. Code § 70.395.050(2)(b) to investigate complaints received relating to the facility. Dkt. # 64 ¶¶ 10–14. These inspection attempts occurred on March 20, 2026, and again on April 20, 2026. Each time, Department employees Todd Philips and Joseph Laxson sought entry into the facility and were greeted by GEO employees, including GEO facility administrator Bruce Scott. *Id.* Each time, GEO employees would request ICE Assistant Field Office Director Matthew Cantrell to come to the Tacoma facility lobby and the Department would be denied access. *Id.*

Following GEO's second refusal to comply with the plain terms of Washington law, the Governor and Attorney General amended its answer to add a counterclaim for GEO's violation of state law and moved for preliminary injunction. Dkt. ## 62, 63.

**C.      GEO's New Contract Requires Compliance with State Public Health Laws**

At around this time, GEO entered a new contract with ICE to continue to provide "detention, transportation, and food services" for ICE. Dkt. # 77 at p. 46. The copy provided by GEO is incomplete.[1]

Regardless, this incomplete version of the contract requires that GEO comply with the 2025 National Detention Standards (NDS). *Id.* at p. 47. The NDS recognizes that GEO must comply with state and local fire codes, state water standards, state garbage and hazardous and

---

[1] For example, a page is magnified, cutting off the "Defense of Suit" paragraph and missing a few sentences. Dkt. # 77 at pp. 48–49. The State Counterclaimants do not object to the redactions in the publicly released contract; however, they do object to GEO's failure to provide this Court with a complete copy and under Federal Rules of Evidence 106, asks this Court to order GEO to produce a complete copy for this Court's consideration.

DEFENDANTS-COUNTERCLAIMANTS'
RESPONSE TO THE GEO GROUP, INC.'S
MOTION TO DISMISS COUNTERCLAIM
NO. 3:23-cv-05626-BHS

3

infectious waste disposal regulations, state and local food service authorities, state accessibility standards, state criminal mandatory reporting laws, and state public health reporting laws. Dkt. # 84-1 at pp. 11–12, 14, 38, 88, 107, 110, 112, 121, 126, 146, 147. It also expects GEO to submit to "state drinking water regulations (including monitoring requirements)." *Id.* at p. 11. And it implicitly recognizes broader state oversight authority by contemplating "adverse findings" in state citations or licensure actions pertaining to "state and local health, life, safety, and fire codes." *Id.* at p. 10.

Also, GEO maintains significant management responsibilities at the facility. For example, GEO "is responsible for management and actions necessary to meet the standards set forth in the contract." Dkt. # 77 at pp. 115–116. The contract also incorporates ICE's Quality Assurance Plan, which "is based on the premise that [GEO], and not the Government, is responsible for the day-to-day operation of the Federal facility and all the management and quality control actions required to meet the terms of the" contract. *Id.* at p. 168. Should GEO become the subject of a lawsuit, ICE must "promptly request" intervention by the Department of Justice when a lawsuit "contests the legality or propriety of [GEO's] performance of its obligations under the agreement" or is the "result of an alleged administrative error, omission, or intentional act of the Federal Government." *Id.* at p. 48.

Like its prior contract, GEO's new contract delineates between ICE Administrative Space and the rest of the GEO facility. *Compare* Dkt. # 10-1 at p. 89 *with* Dkt. # 77 at pp. 52–53. ICE exerts complete control over the "ICE Administrative Space," that houses ICE staff and information. Dkt. # 77 at pp. 52–53. GEO or even law enforcement must obtain pre-clearance before entering this space. *Id.* at pp. 52, 115. As for the remainder of GEO's private facility, GEO must "operate and control all designated points of ingress and egress on the site." *Id.* at p. 62. Members of the public that seek tours or visitation with detainees must submit to background checks as necessary. *Id.* at p. 115; Dkt. # 84-1 at p. 179. The contract does not

DEFENDANTS-COUNTERCLAIMANTS'
RESPONSE TO THE GEO GROUP, INC.'S
MOTION TO DISMISS COUNTERCLAIM
NO. 3:23-cv-05626-BHS

4

impose these requirements on state health inspectors, or, say, the local fire department in case of a fire. Dkt. # 77 at p. 115; Dkt. # 84-1 at p. 179.

**D.    GEO Continues to Deny the Department of Health Access, While Allowing Other Inspections Without Any Pre-Clearance from ICE**

Not only does the NDS require GEO to comply with state laws that protect the health and safety of detainees and workers, but GEO has also recognized these legal obligations in the past and complied. For instance, following this Court's entry of a preliminary injunction, GEO stipulated to allowing unannounced access for the Washington State Department of Labor & Industries (L&I) to conduct a comprehensive investigation at its facility. *See* Stip. Mot. & Order, *Wash. Dep't of Lab. & Indus. v. GEO Secure Services., LLC.*, No. 3:24-cv-05095-BHS (W.D. Wash. Sept. 25, 2024), Dkt. # 54 (permanently enjoining GEO from denying L&I access to inspect GEO's Tacoma facility).

Additionally, the Tacoma-Pierce County Health Department (TPCHD) routinely inspects GEO's workplace without impediment and has done so since 2004, up through to its last inspection on May 28, 2026. Range Decl., Ex. 1 ¶ 5, Ex. 2 ¶ 5, Ex. 3 ¶¶ 4–6. This last inspection on May 28, 2026, occurred after GEO entered its March 27, 2026, contract with ICE. Dkt. # 77 ¶ 8. When TPCHD conducts a food safety inspection at the facility, they do not call ahead or make appointments—TPCHD requires unannounced inspections. Range Decl., Ex. 1 ¶ 7, Ex. 2 ¶ 7. GEO has never required TPCHD staff to undergo a background check before performing their inspection. Range Decl., Ex. 1 ¶ 9, Ex. 2 ¶ 10, Ex. 3 ¶ 6.

At its other facilities too, GEO appears to have no trouble permitting inspections. *See Immigration Detention in California*, Cal. Dep't of Justice (revised May 2025), https://www.oag.ca.gov/system/files/media/immigration-detention-2025.pdf; *'They Treat Us Like Dogs in Cages': Inside the Adelanto ICE Processing Center*, Disability Rights California (July 17, 2025), https://www.disabilityrightsca.org/drc-advocacy/investigations/inside-the-adelanto-ice-processing-center (touring medical area at a private detention facility owned and

DEFENDANTS-COUNTERCLAIMANTS'
RESPONSE TO THE GEO GROUP, INC.'S
MOTION TO DISMISS COUNTERCLAIM
NO. 3:23-cv-05626-BHS

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

operated by GEO); Chien Decl., Ex. 4, *Wash. Dep't of Health v. The GEO Grp., Inc*, No. 3:24-cv-05639-BHS (W.D. Wash. Mar. 10, 2026), Dkt. # 43-4 (Colorado's Department of Public Health and Environment inspection report of Aurora Processing Center, owned by GEO).

### III.    LEGAL STANDARDS

*Rule 12(b)(1)*. A Rule 12(b)(1) jurisdictional attack may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (citation omitted). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "A factual attack requires a factual dispute." *March for Our Lives Idaho v. McGrane*, 697 F. Supp. 3d 1029, 1038 (D. Idaho 2023). The defendant must provide affidavits or other evidence "contest[ing] the truth of the complaint's allegations." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 (9th Cir. 2014). When the defendant raises a factual attack by providing evidence contesting the truth of the complaint's allegations, the plaintiff bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met. *Harris v. Rand*, 682 F.3d 846, 851 (9th Cir. 2012). The court may permit discovery before requiring that plaintiff demonstrate the requisite jurisdictional facts. *St. Clair v. City of Chico,* 880 F.2d 199, 200–02 (9th Cir. 1989).

*Rule 12(b)(6)*. A motion to dismiss under Rule 12(b)(6) tests the *legal* sufficiency of the claim stated in the complaint. *Ileto v. Glock Inc.*, 349 F.3d 1191, 1199–1200 (9th Cir. 2003) (emphasis added). "To survive a motion to dismiss . . . under Rule 12(b)(6), a complaint generally must satisfy only the minimal notice pleading requirements of Rule 8(a)(2)." *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2); *Porter*, 319 F.3d at 494. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

DEFENDANTS-COUNTERCLAIMANTS'
RESPONSE TO THE GEO GROUP, INC.'S
MOTION TO DISMISS COUNTERCLAIM
NO. 3:23-cv-05626-BHS

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "[D]ismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint." *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014).

*Rule 12(b)(7)*. A party may move for dismissal of a complaint under Rule 12(b)(7) for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). The moving party bears the burden of proof and persuasion. *Biagro W. Sales Inc. v. Helena Chem. Co.*, 160 F. Supp. 2d 1136, 1141 (E.D. Cal. 2001); *WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 472 F. Supp. 3d 649, 663 (N.D. Cal. 2020). "The proponent's burden can be satisfied by providing 'affidavits of persons having knowledge of these interests as well as other relevant extra-pleading evidence.'" *Citizen Band Potawatomi Indian Tribe of Oklahoma v. Collier*, 17 F.3d 1292, 1293 (10th Cir. 1994) (quoting Wright & Miller). In reviewing, a court must accept all factual allegations in the complaint as true and draw inferences in favor of the non-moving party. *WhatsApp Inc.*, 472 F. Supp. 3d at 663.

## IV.    ARGUMENT

### A.    The State Counterclaimants Have Standing

GEO argues that the counterclaim is not redressable because the State Counterclaimants cannot obtain relief from GEO. Dkt # 88 at pp. 19–20. This argument is wrong. To determine whether the counterclaim is redressable, the question "is not whether a *favorable decision* is likely but whether a favorable decision *likely will redress* a plaintiff's injury." *Bonnichsen v. United States*, 367 F.3d 864, 873 (9th Cir. 2004). "In deciding whether a plaintiff's injury is redressable, courts assume that plaintiff's claim has legal merit." *Id.*

Here, the State Counterclaimants seek to enjoin GEO from denying or refusing access to its Tacoma facility. Should the Court assume Wash. Rev. Code § 70.395.050(2)(b) requires GEO to allow the Department inspectors entry into GEO's Tacoma facility, a preliminary injunction enjoining GEO from denying or refusing access would redress the State's harm. *See e.g.*,

DEFENDANTS-COUNTERCLAIMANTS' RESPONSE TO THE GEO GROUP, INC.'S MOTION TO DISMISS COUNTERCLAIM NO. 3:23-cv-05626-BHS

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

Stip. Mot. & Order, *Wash. Dep't of Lab. & Indus.*, No. 3:24-cv-05095-BHS, Dkt. # 54 (permanently enjoining GEO from denying the Department of Labor and Industries access to inspect GEO's Tacoma facility); *see also Hall v. Norton*, 266 F.3d 969, 976–77 (9th Cir. 2001) ("The purpose of the standing doctrine is to ensure that the plaintiff has a concrete dispute with the defendant, not that the plaintiff will ultimately prevail against the defendant."). The State Counterclaimants readily establish the redressability prong for standing, given that this Court's correction of GEO's misconduct will relieve the injury GEO has caused. *See Bonnichsen*, 367 F.3d at 873.

Although GEO claims that it has put on a factual attack, Dkt. # 88 at p. 19, GEO's declarations do not create a dispute of material fact. GEO's evidence does not contest the State Counterclaimants' allegations, rather it introduces additional evidence that as a matter of law is irrelevant. *Wash. Dep't of Lab. & Indus.*, 2024 WL 3250426, at *11. GEO's declarations do not deny that GEO did not allow the Department to enter, made Department employees sit in the lobby, while it told ICE, and then an ICE employee told the Department they could not enter. Dkt. # 77 at pp. 221–25; Dkt. # 78. In asking this Court to side with it, GEO implicitly asks this Court to decide a legal issue (who had the right to deny entry) not appropriate for a 12(b)(1) dismissal. *See Bonnichsen*, 367 F.3d at 873.

**B.   Because GEO Is Not Immune from Washington Law, its Rule 12(b)(6) Motion Should be Denied**

GEO's Rule 12(b)(6) argument is a retread of the argument it raised in opposing the State Counterclaimants' Motion for Leave to Amend, which this Court already rejected. They contend Counterclaimants try to elide "who denied access" by which they of course mean ICE. Dkt. # 88 at p. 21. As this Court has done before, it should reject this argument. *See Wash. Dep't Lab. & Indus.*, 2024 WL 3250426, at *11 ("It is of no consequence that [an ICE representative], not [GEO], was the person who expressly informed the L&I officials of this decision.").

DEFENDANTS-COUNTERCLAIMANTS'
RESPONSE TO THE GEO GROUP, INC.'S
MOTION TO DISMISS COUNTERCLAIM
NO. 3:23-cv-05626-BHS

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

It is true enough that when State inspectors arrive at GEO's facility, GEO usually leaves and gets an ICE agent and has them purport to deny access. But GEO cannot hide behind this agent's purported denial to duck its obligations under Washington state law.

GEO turns to *Yearsley* as justification for its refusal to follow Washington law. But to succeed on this defense, GEO must show that its failure to permit inspectors was both "'authorized and directed by the Government of the United States' and 'performed pursuant to [an] Act of Congress.'" *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 167 (2016) (quoting *Yearsley v. W.A. Ross Const. Co.*, 309 U.S. 18, 20 (1940)). Thus, GEO can only ignore state law if Congress authorized it to do so—by, for example, preempting state laws. And even then, GEO would also have to show that it "had no discretion . . . and completely followed government specifications." *Cabalce v. Thomas E. Blanchard & Assocs.*, 797 F.3d 720, 732 (9th Cir. 2015) (citation omitted); *see also Wash. Dep't of Health v. The GEO Grp., Inc.*, No. 24-5880, 2025 WL 2986482, at *2 (9th Cir. Oct. 23, 2025) (derivative sovereign immunity defense requires GEO to show "the ICE employee was acting within the scope of ICE's authority when he instructed GEO Group to deny access").

GEO cannot meet this burden in either respect. To start, "GEO fails to identify *any* federal law prohibiting state legislatures from imposing generally applicable safety and health laws . . . on private immigration detention facilities." *Wash. Dep't of Lab. & Indus.*, 2024 WL 3250426, at *11. "GEO similarly fails to identify any federal law authorizing ICE and, in turn, GEO from denying [the Department] access to the NWIPC." *Id.* As the Ninth Circuit put it, "GEO Group has pointed to no authority suggesting that an ICE employee's verbal directive carries preemptive effect in the absence of any indication of Congressional intent that it should." *Wash. Dep't of Health*, 2025 WL 2986482, at *3.

Nor can GEO claim that it "had no discretion" to admit Department of Health inspectors when the undisputed evidence shows that GEO has long admitted state and local government

DEFENDANTS-COUNTERCLAIMANTS'
RESPONSE TO THE GEO GROUP, INC.'S
MOTION TO DISMISS COUNTERCLAIM
NO. 3:23-cv-05626-BHS

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

inspectors—including from the TPCHD under GEO's new contract.[2] Range Decl., Ex. 1 ¶ 5, Ex. 2 ¶ 5, Ex. 3 ¶¶ 4–6. In fact, it is permanently enjoined from denying L&I inspections, even though they are not announced beforehand and inspectors do not submit to ICE background checks that GEO insists are mandatory. *See* Stip. Mot. & Order, *Wash. Dep't of Lab. & Indus.*, No. 3:24-cv-05095-BHS, Dkt # 54.

Because GEO lacks a legal basis for hiding behind ICE's purported denial, its Rule 12(b)(6) motion should be denied.

## C.     ICE is Not a Required Party Under Rule 19(a)

The Court should also dismiss GEO's motion under Rule 12(b)(7). A motion to dismiss under Rule 12(b)(7) requires that the court conducts three successive inquiries. *United States v. Bowen*, 172 F.3d 682, 688 (9th Cir.1999). First, courts determine whether the absent party is "required" under Rule 19(a). Fed. R. Civ. P. 19(a). A party is required if the court cannot provide complete relief in their absence or that person claims an interest relating to the action and proceeding without that person may impair the interest or expose an existing party to inconsistent obligations. Fed. R. Civ. P. 19(a)(1)(A), (B). Second, if the absent party is required, courts then "determine whether joinder of that party is feasible." *Bowen*, 172 F.3d at 688. Third, if joinder is infeasible, courts must then determine whether the party is indispensable under Rule 19(b). Fed. R. Civ. P. 19(b). A party is not indispensable, if "in equity and good conscience, the action should proceed among the existing parties" rather than being dismissed. *Id.* All three inquiries establish ICE is not required here.

---

[2] For reasons the Department of Health and the Department of Labor and Industries detailed elsewhere, GEO's renewed contract with ICE does not change the analysis here. *See* Pl.'s Supp. Br. Re: GEO's ICE Contract at 10–12, *Wash. Dep't of Health*, No. 3:24-cv-05639-BHS, Dkt. # 55; *Wash. Dep't of Lab. & Indus.*, 2024 WL 3250426, at *12 (concluding that L&I was entitled to inspect GEO's Tacoma facility "regardless of [GEO's] contract, . . . absent any federal law prohibiting state legislatures from imposing such generally applicable laws on private immigration detention facilities").

DEFENDANTS-COUNTERCLAIMANTS'
RESPONSE TO THE GEO GROUP, INC.'S
MOTION TO DISMISS COUNTERCLAIM
NO. 3:23-cv-05626-BHS

10

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

### 1.  Complete relief is possible

In conducting a Rule 19(a)(1)(A) analysis, courts ask whether the absence of the nonparty party would preclude the court from fashioning meaningful relief as between the parties. *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1044 (9th Cir. 1983). This prong only concerns current parties to the action. *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 879 (9th Cir. 2004); *see also NGV Gaming, Ltd. v. Upstream Point Molate, LLC*, 355 F. Supp. 2d 1061, 1068 (N.D. Cal. 2005) ("The effect a decision may have on the absent party is not material." (internal quotation marks and citation omitted)).

As the owner of a private detention facility, GEO alone possesses the property rights to allow or deny entry. *See City of Seattle v. McCready*, 877 P.2d 686, 689 (Wash. 1994) (limiting right to deny inspections to persons with possession rights). And as an operator of a private detention facility, GEO has the duty under Wash. Rev. Code §§ 70.395.020, .55(2)(b), to permit the Department entry and this permission would provide the State Counterclaimants with complete relief. Should it comply with this duty, the Department would enter GEO's facility and fulfill its statutory duties, inspecting portions of the facility that threaten the health of detainees, GEO's employees, and the surrounding community. Based on the complaints, the portions of the facility that would be inspected include those relating to  water, air, food, laundry, and medical.[3] GEO would be able to allow access to these portions of the facility despite the objections from ICE because ICE only reserves rights over a small portion of the facility, the ICE Administrative Space—that space is of no interest to the Department.

---

[3] The contract states that ICE Health Services Corps provides medical services, Dkt. # 77 at 67; however, as recent as 2024, ICE provides these services through a private contractor. *See OIDO Inspection of Northwest ICE Processing Center*, Office of the Immigration Detention Ombudsman (Nov. 20, 2024), https://www.dhs.gov/sites/default/files/2024-12/24_1120_oido_inspection-report-northwest-ice-processing-center.pdf, at 3, 26 (acknowledging that private contractor, STG International, provides healthcare services at NWIPC). The Department should be able to verify whether a private entity continues to provide these services. Nonetheless, GEO retains responsibility for facilitating detainee access to medical services. Dkt. # 77 at pp. 59, 60, 68, 135–136. And unlike the ICE Administrative Space, ICE has not retained exclusive control over access to the space where those services are provided; that space is owned, provided, and maintained by GEO and is therefore subject to Department inspection. *Id.* at pp. 52 (describing provision), 56 (describing maintenance), 62 (describing security and control).

DEFENDANTS-COUNTERCLAIMANTS'
RESPONSE TO THE GEO GROUP, INC.'S
MOTION TO DISMISS COUNTERCLAIM
NO. 3:23-cv-05626-BHS

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

This lawsuit is not futile. Nor does the State Counterclaimants' enforcement action suggest a risk of repeated lawsuits on the same subject. Dkt. # 88 at p. 23 (quoting *CP Nat'l Corp. v. Bonneville Power Admin.*, 928 F.2d 905, 912 (9th Cir. 1991)). As fully briefed elsewhere, ICE cannot require GEO to defy State law. *See* Dkt. # 80 at pp. 4–6; Dkt. # 83 at pp. 13–14; *see also The GEO Grp., Inc. v. Menocal*, 146 S. Ct. 774, 785 (2026) ("A private contractor cannot obtain '[i]mmunity from suit' by 'reason of a contract' it made with the [federal] Government."). GEO's contracts past and present, and its own practices all confirm that GEO can allow Department inspectors to enter its facility without ICE's permission. *Cf.* Range Decl. Exs. 1–3. In other words, the Court can accord complete relief without ICE. Fed. R. Civ. P. 19(a)(1)(A). In fact, this Court has already done so once when it granted L&I's request to investigate complaints at GEO's Tacoma facility without any suggestion that ICE was a necessary party. *See Wash. Dep't of Lab. & Indus.*, 2024 WL 3250426, at *12. There, GEO even acquiesced to L&I inspections—again without any participation from ICE. *See* Stip. Mot. & Order, *Wash. Dep't of Lab. & Indus.*, No. 3:24-cv-05095-BHS, Dkt. # 54.

Given GEO's longstanding and recent history of allowing other public health officials entry, the Court should hold that the State Counterclaimants' counterclaim will afford it complete relief.

## 2. ICE is not a required party because it has not claimed an interest

Under Ninth Circuit precedent, parties who are aware of an action and choose not to intervene need not be considered required parties because they have not *claimed* an interest in the litigation. *See Bowen*, 172 F.3d at 689 (collecting Ninth Circuit cases); *Northrop Corp.*, 705 F.2d at 1043 (explaining that the subparts of Rule 19(a)(2) "are contingent, however, upon an initial requirement that the absent party claim a legally protected interest relating to the subject matter of the action"). The Ninth Circuit interprets this aspect of Rule 19 to require that an absent party personally assert a legally protected interest, rather than permitting a third party to do so on their behalf. *Bowen,* 172 F.3d at 689 ("[I]t is inappropriate for one defendant to attempt to

DEFENDANTS-COUNTERCLAIMANTS'
RESPONSE TO THE GEO GROUP, INC.'S
MOTION TO DISMISS COUNTERCLAIM
NO. 3:23-cv-05626-BHS

12

champion the absent party's interests . . . . "). "In other words, it is not enough for a current party to the case to claim that an absent party has an interest; the absent party themselves must actively and affirmatively assert an interest in the subject matter of the litigation." *Bradley, Gmelich & Wellerstein LLP v. Kay*, No. 2:25-cv-10471-AB-DFM, 2026 WL 712564, at *5 (C.D. Cal. Feb. 3, 2026); *Powers v. City of Seattle*, 242 F.R.D. 566, 568 (W.D. Wash. 2007); *see also Yeend v. Akima Global Servs., LLC*, 347 F.R.D. 405, 413 (N.D.N.Y. 2024) (denying 12(b)(7) where the federal government had declined to intervene in action against private detention facility).

Here, ICE has not claimed any legal interest in keeping Department of Health inspectors out of GEO's private facility. Thus far, DOJ has declined to intervene, suggesting that GEO, in denying the Department access, was not performing "its obligations under the agreement" and that GEO's failure to allow the Department access was not the "result of an . . . act of the Federal Government." *See* Dkt. # 77 at p. 48. On appeal, when the federal government filed an amicus brief, it conceded that the Ninth Circuit allows for state inspections of private detention facilities. *See* U.S. Amicus Br. at 20, *The GEO Grp. Inc. v. Ferguson*, No. 24-2815, (9th Cir. July 25, 2024), DktEntry # 34.1. Indeed, in other litigation challenging detention conditions, ICE has adamantly argued that GEO—not ICE—is the proper defendant. *See* Def.'s Opp'n to Pl.'s Mot. for Prelim. Inj. at 13, *L.T. v. ICE*, No. 5:26-cv-00322 (C.D. Cal. Mar. 30, 2026), Dkt. # 54 ("Plaintiffs' dispute is centered around GEO, not [ICE.]"); *id.* at 8–9, 13–16.

GEO argues ICE does not have to appear to claim an interest, Dkt. # 88 at p. 25, but the cases it cites for this proposition are inapposite. In both cases, the "absent" party had intervened. *See Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affairs*, 932 F.3d 843, 852 (9th Cir. 2019) (NTEC intervening); *Shermoen v. United States*, 982 F.2d 1312, 1316 (9th Cir. 1992) (Hoopa Valley Tribal Council intervening).

As it is inappropriate for GEO to challenge ICE's interests on ICE's behalf, this Court should find that ICE has not claimed an interest and therefore is not a required party under Rule 19(a)(1)(B). *See Bowen*, 172 F.3d at 689.

DEFENDANTS-COUNTERCLAIMANTS'
RESPONSE TO THE GEO GROUP, INC.'S
MOTION TO DISMISS COUNTERCLAIM
NO. 3:23-cv-05626-BHS

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

### a. Even so, GEO failed to demonstrate a legally protected interest on ICE's behalf that would be impaired

Should the Court consider the six interests GEO identified on ICE's behalf, Dkt. # 88 at pp. 25–27, these fail to demonstrate a legally protected interest. "[A] legally protectable interest is an interest that derives from a legal right." *Mt. Hawley Ins. Co. v. Sandy Lake Properties, Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005). At the very least, legally protected interests must be supported by affidavits from the non-party, explaining how these interests are impaired. *Citizen Band Potawatomi Indian Tribe of Oklahoma*, 17 F.3d at 1293. Any interest may not be vague possibilities based on speculation by the moving party. *See Northrop Corp.*, 705 F.2d at 1046 (holding the person's interests cannot be based on the moving party's speculation of future events). And it should go without saying that unlawful interests, such as turning away public health officials to hide deleterious conditions at private detention facilities in violation of state law, are not legally protected. *Cf. Mt. Hawley Ins. Co.*, 425 F.3d at 1311.

*First*, GEO claims that the Department's inspections would impair ICE's sovereign and operational interest in federal immigration detention. Dkt. # 88 at pp. 25–26. But the Ninth Circuit already rejected a version of this argument, finding that nothing in HB 1470's inspection regime "frustrates the federal government's ability to detain individuals at the NWIPC." *Inslee*, 151 F.4th at 1123; *see also United States v. California*, 921 F.3d 865, 885 (9th Cir. 2019) (concluding that California's inspection regime did not frustrate the federal government's interest in detention because it "does not regulate whether or where an immigration detainee may be confined, require that federal detention decisions or removal proceedings conform to state law, or mandate that ICE contractors obtain a state license"). GEO's argument to the contrary does not cite any evidence or testimony from the federal government. In any event, the law is clear: a state's exercise of its traditional power to protect the health and safety of those locked in a private detention facility within its borders does not impair any federal interest. *The GEO Grp., Inc. v. Newsom*, 50 F.4th 745, 755 (9th Cir. 2022) (en banc) ("[T]he Supremacy Clause therefore

DEFENDANTS-COUNTERCLAIMANTS'
RESPONSE TO THE GEO GROUP, INC.'S
MOTION TO DISMISS COUNTERCLAIM
NO. 3:23-cv-05626-BHS

14

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

leaves considerable room for states to enforce their generally applicable laws against federal contractors.").

**Second**, GEO claims that state health inspections would interfere with ICE's interest in a secure facility, insofar as "the contract expressly reserves to ICE pre-clearance authority over access to ICE facilities and information, routes state governmental access requests through ICE, requires GEO to comply with ICE security plans, and requires GEO to detect and report unauthorized access." Dkt. # 88 at p. 26. But it doesn't. As State Counterclaimants have repeatedly explained, GEO's contract with ICE does not require ICE pre-clearance of government inspectors, nor otherwise cede control of access to GEO's private facility to ICE. *See* Dkt. # 83 at pp. 12–13.

Moreover, the notion that admitting state health inspectors would undermine facility security makes no sense on its face. Department inspectors are trained public servants whose mission is to protect the health and safety of all people in Washington State. In fact, GEO has not identified a single security breach despite admitting other state and local inspectors for over twenty years. If GEO has legitimate concerns, it can accompany Department inspectors. *Cf.* Range Decl., Ex.1 ¶ 8. But GEO may not rely on flimsy security justifications to shield its operations from state oversight.

**Third**, GEO insists that the Department "seeks access to areas and information that *may* implicate" certain confidential "federal records and disclosure restrictions." Dkt. # 88 at p. 26 (emphasis added). But this argument is entirely speculative. GEO has not shown that it actually maintains any of the records outlined in the contract in the parts of the facility that the Department seeks to access (as opposed to ICE's office within the facility). GEO's contract defines a fairly narrow, discrete set of "Controlled Unclassified Information" in which the federal government has an interest and GEO an obligation to safeguard. Dkt. # 77 at pp. 74–77. Most of this information relates to physical and IT security of the facility and DHS personnel and is unlikely to be in the sort of places the Department would need to inspect to investigate

DEFENDANTS-COUNTERCLAIMANTS'
RESPONSE TO THE GEO GROUP, INC.'S
MOTION TO DISMISS COUNTERCLAIM
NO. 3:23-cv-05626-BHS

15

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

complaints of, e.g., poor nutrition and inadequate laundry. GEO has not shown that the Department has, or is ever likely to, request or demand any of this information.[4]

The only information that may potentially be exposed is personally identifiable information of detainees. *See id.* at pp. 76–77. Under the contract, GEO must prevent "unauthorized access and disclosure" of this information. *Id.* at p. 78. But, as relevant here, this information belongs to the detainees, not ICE. And so, it is the detainees' interests, not ICE's, that may be implicated. Moreover, there is no real risk of unauthorized access or disclosure because the Department seeks access to investigate complaints by the detainees whose information is at issue. Those detainees are in the best possible position to authorize (or withhold) disclosure of their own personally identifiable information to facilitate (or not) the Department's investigation of their complaints. This process need not implicate or even involve ICE in the least.

*Fourth*, GEO claims that "ICE has interests in medical and detainee-welfare operations." Dkt. # 88 at p. 26. That may be. But GEO makes no effort to show how an inspection by the Department would impair those operations. *Cf. Pharm. Research & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 666 (2003) ("The presumption against federal pre-emption of a state statute designed to foster public health has special force when it appears . . . that the two governments are pursuing common purposes[.]") (quotation and internal citation omitted). GEO seems to suggest that inspection of NWIPC medical facilities might amount to direct regulation of the federal government, Dkt. # 88 at p. 26, but it makes no effort to develop this argument. And such an argument would lose given DHS' public acknowledgment that it provides healthcare services at NWIPC through a contractor, STG International. *See OIDO Inspection of Northwest ICE Processing Center*, Office of the Immigration Detention Ombudsman (Nov. 20, 2024), https://www.dhs.gov/sites/default/files/2024-12/24_1120_oido_inspection-report-northwest-ice

---

[4] In the unlikely event that there are disputes regarding the Department's access to information, GEO has offered no reason to think those disputes cannot be handled as they arise.

DEFENDANTS-COUNTERCLAIMANTS'
RESPONSE TO THE GEO GROUP, INC.'S
MOTION TO DISMISS COUNTERCLAIM
NO. 3:23-cv-05626-BHS

16

-processing-center.pdf, at 3, 26; *see also Newsom*, 50 F.4th at 755 ("The scope of a federal contractor's protection from state law under the Supremacy Clause is substantially narrower than that of a federal employee or other federal instrumentality."). Moreover, GEO cannot honestly claim that the medical areas at its Tacoma facility are a third rail for non-federal inspectors when the Tacoma-Pierce County Health Department has conducted regular "inspection[s] of [GEO's] medical care facility" since 2004 "at its request." *Northwest ICE Processing Center*, Tacoma-Pierce County Health Department, https://tpchd.org/info/northwest-ice-processing-center/ (last accessed Jun. 17, 2026); *see also, e.g., 'They Treat Us Like Dogs in Cages': Inside the Adelanto ICE Processing Center*, Disability Rights California (July 17, 2025), https://www.disabilityrightsca.org/drc-advocacy/investigations/inside-the-adelanto-ice-process ing-center (touring medical area at a private detention facility owned and operated by GEO).

*Fifth*, the fact that GEO and ICE are in a contractual relationship concerning the provision of detainee services, in of itself, does not suffice as a "legally protected interest." *Cf. A. H. R. v. Wash. State Health Care Auth.*, 469 F. Supp. 3d 1018, 1036 (W.D. Wash. 2016). Although GEO suggests that contracted parties are necessary parties, Dkt. # 88 at pp. 26–27, the Ninth Circuit has narrowed holdings in cases GEO cites, such as *Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, 276 F.3d 1150, 1157 (9th Cir. 2002), to "action[s] to set aside a contract," "an attack on the terms of a negotiated agreement," *Clinton v. Babbit*, 180 F.3d 1081, 1088 (9th Cir. 1999), or "litigation seeking to decimate a contract," *Dawavendewa*, 276 F.3d at 1157. *See Disabled Rights Action Comm.*, 375 F.3d at 881. Here, State Counterclaimants are not trying to do any of these things. They assert only a claim for injunctive relief with respect to GEO's obligation to provide the Department with access to its facility. They do not seek to set aside or in any way attack GEO's contract with ICE. *See Ward v. Apple Inc.*, 791 F.3d 1041, 1053 (9th Cir. 2015) (mere implication of contractual rights does not create legally protected interest) (abrogated on other grounds); *A. H. R.*, 469 F. Supp. 3d at 1036 (finding no legally protected interest where "Plaintiffs' suit may tangentially relate to HCA's contracts with" non-

DEFENDANTS-COUNTERCLAIMANTS'
RESPONSE TO THE GEO GROUP, INC.'S
MOTION TO DISMISS COUNTERCLAIM
NO. 3:23-cv-05626-BHS

17

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

parties, but "does not represent an attack on those contracts or seek to set them aside"); *Yeend*, 347 F.R.D. at 414 ("The Court is skeptical that an adverse judgment would result in a breach of the ICE-AGS Contract, but even assuming such breach arises, an adverse judgment here would not foreclose AGS or ICE from litigating a breach of contract issue in a future litigation.").

***Finally***, GEO notes that "[t]he Office of the Immigration Detention Ombudsman is responsible for receiving and investigating complaints concerning individuals in immigration detention" and claims that "[t]he State's requested state-law access to federal detention areas would require the Court to adjudicate how that federal process interacts with ICE's access controls." Dkt. # 88 at p. 27. GEO entirely fails to explain why this is so, or how it implicates the work of the Ombudsman, which has been shuttered in any event. Ximena Bustillo, *DHS blames funding lapse for shutdown of internal detention oversight*, NPR (May 7, 2026), https://www.npr.org/2026/05/07/g-s1-120834/trump-immigration-detention-ombudsman-shutdown. Regardless, nothing in this litigation requires this Court to adjudicate any overlap between Washington's statute and "ICE's access controls," however defined. Accordingly, the Court should conclude that GEO has failed to identify any "legally protected interest" of ICE that would be impaired, requiring joinder under Rule 19(a)(1)(B)(i).

### b.    And GEO failed to demonstrate inconsistent obligations

As detailed above, GEO does not face inconsistent obligations. And nothing in GEO's contract authorizes it to ignore state law, nor can it.[5] Additionally, nothing in GEO's contract requires ICE's pre-approval for state inspectors to access the Tacoma facility. In fact, GEO's contract clearly indicates that GEO is the one responsible for all points of entry and exit from the facility. Consequently, the cases cited by GEO in which the contract is central to the dispute

---

[5] Any contractual provision that enables GEO to defy a non-preempted state law is illegal and should be excised from the contract. *See, e.g.*, *Cramer v. Consol. Freightways Inc.*, 255 F.3d 683, 695–96 (9th Cir. 2001); *United States v. Amdahl Corp.*, 786 F.2d 387, 392 (Fed. Cir. 1986); *Dart Advantage Warehousing, Inc. v. United States*, 52 Fed. Cl. 694, 700 (Fed. Cl. 2002).

DEFENDANTS-COUNTERCLAIMANTS'
RESPONSE TO THE GEO GROUP, INC.'S
MOTION TO DISMISS COUNTERCLAIM
NO. 3:23-cv-05626-BHS

18

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

are inapposite. *Disabled Rights Action Comm.*, 375 F.3d at 881; *Menocal v. The GEO Grp., Inc.*, 635 F. Supp. 3d 1151, 1180 (D. Colo. 2022) (drawing the same distinction).

Regardless, GEO's reliance on *Dawavendewa* is unpersuasive. In *Dawavendewa*, the plaintiff sought to invalidate a hiring preference that was required as a term of the employer's lease of land owned by the Navajo Nation. 276 F.3d at 1158. As the Ninth Circuit observed, any injunction would be ineffective because if the employer invalidated the hiring preference, the Navajo Nation could move to evict the employer from the reservation. *Id.* Here, GEO owns the Tacoma facility—both the building and the land that it sits on. GEO is not in danger of any eviction. Even assuming a single ICE employee (who is not the contracting officer) could authorize GEO to refuse state inspectors' access to GEO's private facility, that would not be enough to show an inconsistent obligation. *See Disabled Rights Action Comm.*, 375 F.3d at 880 (observing a licensing agreement subjecting a party to liquidated damages in the event of a contract breach did not render the non-party to the contract a necessary party to the litigation).

GEO is not between any rock or hard place. GEO must allow for public health inspections of its private facility as required by state law.

**D.    Equity and Good Conscience Do Not Require Dismissal Under Rule 19(b)**

ICE is not a required party. However, even if ICE's participation is necessary "[u]nder Rule 19(a), nonjoinder even of a required [party] does not always result in dismissal." *Republic of Philippines v. Pimentel*, 553 U.S. 851, 853 (2008). When a necessary party cannot be joined the Court considers whether the absent party is indispensable. "A party is indispensable if in 'equity and good conscience,' the court should not allow the action to proceed in its absence." *Dawavendewa*, 276 F.3d at 1161 (citing Fed. R. Civ. P. 19(b)). To make this determination, the Court balances four factors: (1) the prejudice to any party or to the absent party; (2) whether relief can be shaped to lessen prejudice; (3) whether an adequate remedy, even if not complete, can be awarded without the absent party; and (4) whether there exists an alternative forum. *Id.* at 1161–62. The evaluation is practical and fact specific. *Vera v. Wells Fargo Bank, N.A.*,

DEFENDANTS-COUNTERCLAIMANTS'
RESPONSE TO THE GEO GROUP, INC.'S
MOTION TO DISMISS COUNTERCLAIM
NO. 3:23-cv-05626-BHS

19

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

No. 2:10-cv-01568 JWS, 2011 WL 334286 (D. Ariz. Jan. 31, 2011). Here a dismissal is not appropriate since ICE is not indispensable.

Neither GEO nor ICE would be prejudiced by proceeding without ICE as a joined party. ICE would not be prejudiced because, as discussed above, the State Counterclaimants do not seek any relief or judgment against ICE, nor would a judgement against GEO implicate ICE's rights or interests. *Cf. Yeend*, 347 F.R.D. at 415; *Washington v. The GEO Grp., Inc.*, No. 3:17-cv-05806-RJB, 2018 WL 1963792, at *5 (W.D. Wash. April 26, 2018). The State Counterclaimants seek relief for the Department to enter the facility and inspect for health and safety concerns—such as water, food, and air quality. Unless GEO is contending that ICE has an interest in concealing health and safety concerns inside the Tacoma facility, an inspection does not harm or implicate any of ICE's rights or interests. Similarly, since the State Counterclaimants seek relief from GEO alone, ICE's absence does not prejudice GEO. Washington law directs GEO, not ICE, to allow inspectors entry. Wash. Rev. Code § 70.395.050(2)(b). The relief sought would not change even if ICE were a party.

Finally, since ICE's approval is not necessary for GEO to allow an inspector entry, adequate remedy can be granted without the need to shape the order to lessen prejudice. Thus, the weight of the first three factors tips the scale strongly in favor of the conclusion that ICE is not an indispensable party.

**E.    The Public Rights Exception Applies**

Regardless, even if joinder were otherwise required, the public rights exception to Rule 19 applies. "In a proceeding . . . narrowly restricted to the protection and enforcement of public rights, there is little scope or need for the traditional rules governing the joinder of parties in litigation determining private rights." *Conner v. Burford*, 848 F.2d 1441, 1459 (9th Cir. 1988) (alteration in original) (emphasis omitted) (citation omitted); *see also Washington*, 2018 WL 1963792, at *5. The public rights exception to Rule 19 applies where: (1) the litigation transcends the private interests of the litigants and seeks to vindicate a public right, and

DEFENDANTS-COUNTERCLAIMANTS'
RESPONSE TO THE GEO GROUP, INC.'S
MOTION TO DISMISS COUNTERCLAIM
NO. 3:23-cv-05626-BHS

20

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744

(2) although the litigation may adversely affect the absent parties' interests, the litigation does not destroy the legal entitlements of the absent parties. *See Kescoli v. Babbitt*, 101 F.3d 1304, 1311 (9th Cir. 1996). Here, the State Counterclaimants seek to vindicate public rights guaranteed by Chapter 70.395. They seek no relief that would alter any legal rights of ICE. Thus, there is no basis to join ICE under Rule 19.

## V.    CONCLUSION

This Court should deny GEO's motion to dismiss, have this case proceed, and grant the Governor's and Attorney General's preliminary injunction.

DATED this 30th day of June 2026.

I certify that the foregoing memorandum contains 7354 words in compliance with Local Civil Rules.

NICHOLAS W. BROWN
   *Attorney General*

*/s/ Ellen Range*
ELLEN RANGE, WSBA No. 51334
ANDREW HUGHES, WSBA No. 49515
MINA SHAHIN, WSBA No. 46661
   *Assistant Attorneys General*
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744
Ellen.Range@atg.wa.gov
Andrew.Hughes@atg.wa.gov
Mina.Shahin@atg.wa.gov

MARSHA CHIEN, WSBA No. 47020
   *Worker Rights Unit Chief*
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744
Marsha.Chien@atg.wa.gov

CRISTINA SEPE, WSBA No. 53609
   *Deputy Solicitor General*
1125 Washington Street SE
PO Box 40100

DEFENDANTS-COUNTERCLAIMANTS'
RESPONSE TO THE GEO GROUP, INC.'S
MOTION TO DISMISS COUNTERCLAIM
NO. 3:23-cv-05626-BHS

21

Olympia, WA 98504-0100
360-753-6200
Cristina.Sepe@atg.wa.gov

*Counsel for Defendants-Counterclaimants*

DEFENDANTS-COUNTERCLAIMANTS'
RESPONSE TO THE GEO GROUP, INC.'S
MOTION TO DISMISS COUNTERCLAIM
NO. 3:23-cv-05626-BHS

22

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
206-464-7744